**ORIGINAL** ●

 ● 

1 FREDERICK A. BLACK
  United States Attorney
2 EDWARD J. LYNCH
  Special Assistant U.S. Attorney
3 Sirena Plaza, Suite 500
  108 Hernan Cortez Avenue
4 Hagatna, Guam 96910
  Tel: (671) 472-7332
5 Fax: (671) 472-7215

6 Attorneys for the United States of America

F I L E D
DISTRICT COURT OF GUAM

APR 1 4 2003

MARY L. M. MORAN
CLERK OF COURT

18

7

8              IN THE UNITED STATES DISTRICT COURT

9

10                FOR THE TERRITORY OF GUAM

11

12

13
   JERRY EDWARDS,                     )    CIVIL CASE NO. 02-00003
14                                     )
          Plaintiff,                   )
15                                     )
          v.                           )
16                                     )    **DEFENDANT'S MEMORANDUM**
   GORDON ENGLAND, SECRETARY           )    **IN SUPPORT OF SUMMARY**
17 OF THE NAVY,                        )    **JUDGMENT**
                                       )
18        Defendant.                   )
   ────────────────────────────────────)
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .. 1

II.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..4

    A.  Appellant's Complaint Fails To State A Sufficient Claim As To Any Constitutional Deprivations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..... 5

    B.  Commanding Officer Has Broad Desecration To Bar Individuals From His Installation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    C.  The Commanding Officer's Actions Were Based Upon Workplace Safety Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    D.  Edwards Can Not Present Any Evidence To Demonstrate Pretext . . . . .9

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

- i -

# TABLE OF AUTHORITIES

CASES

*Beck Oil Co., Inc. v. Texaco Ref. & Mktg., Inc.,*
    25 F.3d 559, 561 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bridges v. Davis,*
    443 F.2d 970 (9th Cir. 1971)
    *cert. denied* (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brown v. Palmer,*
    944 F.2d 732 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cafeteria Restaurant Workers Union v. McElroy,*
    367 U.S. 886, 893 (1961), reh'g denied,
    368 U.S. 869 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Estate of Cole by Pardue v. Fromm,*
    94 F.3d 254, 257 (7th Cir. 1996), *cert. denied,*
    519 U.S. 1109 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Greer v. Spock,*
    424 U.S. 828 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Kralman v. Illinois Department of Veterans' Affairs,*
    23 F.3d 150, 156 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Medina v. United States,*
    709 F.2d 104 (1st Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mills v. First Federal Sav. & Loan Ass'n of Belvidere,*
    83 F.3d 833, 840 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schneider v. Laird,*
    453 F.2d 345, 347 (10th Cir. 1972), *cert denied,*
    407 U.S. 914 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Secretary of the Navy v. Huff*,
   444 U.S. 453 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tokar v. Hearne*,
   699 F.2d 753, 756 (5th Cir.),
   *cert. denied*, 464 U.S. 844 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Albertini*,
   472 U.S. 675, 687, 105 S.Ct. 2897, 2905 (1985) . . . . . . . . . . . . . . . . . . . . . 6,7

*United States v. Gourley*,
   502 F.2d 785, 786-87 (10th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . .5, 7

*United States v. Jelinski*,
   411 F.2d 476, 477-78 (5th Cir.),
   *cert. denied*, 396 U.S. 943 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. May*,
   622 F.2d 1000, 1006 (9th Cir. 1980),
   *cert. denied*, *sub nom* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Venters v. City of Delphi*,
   123 F.3d 956 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Walker v. Shansky*,
   28 F.3d 666, 671, appeal after remand,
   51 F.3d 276 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Weissman v. United States,*
   387 F.2d 271 (10th Cir.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


FEDERAL STATUES

Title VII, Civil Rights Act of 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5

Title 18, United States Code, Section 1382. . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7

Title 10, United States Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Title 50, United States Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

-iii-

FEDERAL RULES

32 C.F.R. Section 809a.1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

OTHER AUTHORITIES

Department of Defense Directive 5200.8,
*Security of Military Installations and Resources*, ¶3.2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

-iv-

1  FREDERICK A. BLACK
   United States Attorney
2  EDWARD J. LYNCH
   Special Assistant U.S. Attorney
3  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
4  Hagatna, Guam 96910
   Tel: (671) 472-7332
5  Fax: (671) 472-7215

6  Attorneys for the United States of America

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE TERRITORY OF GUAM

9

| | | |
|---|---|---|
| 10 | JERRY EDWARDS, ) | CIVIL CASE NO. 02-00003 |
| 11 | Plaintiff, ) | |
| 12 | v. ) | **DEFENDANT'S MEMORANDUM** |
| 13 | GORDON ENGLAND, SECRETARY ) OF THE NAVY, ) | **IN SUPPORT OF SUMMARY** **JUDGMENT** |
| 14 | Defendant. ) | |
| 15 | _____) | |

16

## I. **INTRODUCTION**

17

18    This is an employment discrimination action in which Plaintiff, JERRY

19  EDWARDS  (Edwards), a civilian employee of the Department of the Navy at Fleet

20  Activities Japan, Yokosuka, Japan, (military base) has brought claims of Title VII Race

21  Discrimination and Retaliation.  Edwards was barred from the military base in accordance

22  with local procedures because of an off-base altercation with military security forces.

23

24  United  States military bases in Japan have individualized procedures for debarment of

25  personnel from a particular installation by order of the installation's Commanding

26  Officer.  A  Commanding Officer's decision to ban an individual from a particular base is

27  an individual decision of each base commanding officer, though a reciprocal agreement

28

does exist (Exhibit 1). It is an undisputed fact that the Commanding Officer Fleet Activities Japan barred Mr. Edwards from his base as a result of an altercation off - base with military security forces.(Exhibit 2)   Said administrative action was appealed and the appeal was denied. (Exhibit 3)   It is also undisputed by the parties that this incident when reviewed by other base or installation commanders resulted in his debarment from other military installations in Japan. (Exhibit 4)   This debarment effectively terminated his employment at  the Morale and Welfare Department of Fleet Activities Yokosuka and limited his ability to obtain employment with any other military units in Japan.

The parties are in agreement that  material facts demonstrate that removal from the base in Yokosuka was a decision made by the Commanding Officer of the base upon recommendation of the  Security officer and Judge Advocate assigned to Commander Fleet Activities Yokosuka (CFAY).(Exhibit 5)

The Plaintiff seeks relief from what he asserts was a systematic procedure where the inherent authority and discretion of the Commanding Officer granted under Title 10 and Title 50, United States Code,  and enforced under Title 18, United States Code, Section 1382,   restricting  access to installations under his military control, was manipulated by the security officer, Master Chief  Master at Arms Moore (E-9) MAMC Moore)  for discriminatory purposes.  The complaint couches the alleged violation in terms of an Title VII employment rights discrimination case presumely  because the Plaintiff was employed  by the United States at the time of the incident.  Neither party however,  alleges that debarment  occurred as a result of any work place activity.   The

- 2 -

debarment was the result of an off-base, after hours, altercation with police - the defacto result of the debarment was the loss of his employment at CFAY.

## II. <u>FACTUAL BACKGROUND</u>

At all times relevant to the matters, Plaintiff was employed by the United States Navy's Morale, Welfare and Recreation Department, Commander Fleet Activities, Yokosuka Naval Base, Japan, as a recreation aid assigned to the Thew Gymnasium. On or about January 1999, Commanding Officer, Captain James Wylie, United States Navy, Commander Fleet Activities Japan issued an order barring Edwards from Naval Base Yokosuka for two years.(Exhibit 2)   The basis of this order was a military base security (master at arms)  investigation into an incident which occurred on 11 January 1999, where Plaintiff had been detained off-base by military shore-patrol  (Exhibit 5).  The detention off base was initiated when Mr. Edwards was observed with an open bottle of alcohol on the street in front of a local establishment.  When confronted by shore-patrol concerning the open container, Plaintiff communicated a verbal threat towards the military shore-patrol officer  in violation of Commander U.S. Naval Forces Japan (CNFJ) host tenant nation policy enacted as a result of heightened tensions caused by alcohol related incidents between military personnel and host nation nationals. (Exhibit 6 a & b)  Plaintiff was detained and charged by military security forces with drunk and disorderly conduct and communicating a threat in accordance with host nations agreement and local procedures.(Exhibit 7)   Plaintiff was detained in the custody of the United States military in accordance with the bi-lateral treaty commonly known as the  Status of Forces

- 3 -

Agreement with Japan (SOFA)(Exhibit 8). Plaintiff was never adjudicated by a Court for any offense because of the situs of the offense. The SOFA Agreement includes an agreement permitting the United States to handle misdemeanor offenses administratively as part of the foreign criminal jurisdiction agreement. Said Agreement covers both military and civilian employees working for the military in Japan. The SOFA provides among other things the authority for civilian U.S. nationals to be employed in Japan without the usual Japanese governmental approvals including work visas. These U.S. military employees are commonly known as SOFA status employees. Plaintiff employment status in Japan was pursuant to the SOFA Agreement.(Exhibit 8)

## III. ARGUMENT

On a Motion for Summary Judgment, the Court must draw all reasonable inferences in favor of the nonmovant. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). Nonetheless, the nonmovant must present more than a scintilla of evidence to successfully oppose the motion. *Walker v. Shansky*, 28 F.3d 666, 671, appeal after remand, 51 F.3d 276 (7th Cir. 1994). To avoid summary judgment, (s)he must designate specific facts, rather than conclusory allegations, showing a genuine issue that might affect the outcome of the suit. *Beck Oil Co., Inc. v. Texaco Ref. & Mktg., Inc.*, 25 F.3d 559, 561 (7th Cir. 1994); *see also Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996) (conclusory allegations are insufficient to create a genuine issue of material fact). In this case, Edwards cannot present any evidence raising a genuine issue of material fact

- 4 -

precluding summary judgment for a defendant as defendant had a rationale basis upon which the discretionary action of the Commanding Officer was based. Plaintiff cannot carry his burden of proving improper racially motivated actions on the part of the Commanding Officer, the federal authority who debarred Mr. Edwards from the installation.

### A. Appellant's Complaint Fails To State A Sufficient Claim As To Any Constitutional Deprivations.

It is assumed from Plaintiff's complaint, that he alleges a Title VII Employment Discrimination action based upon his loss of his SOFA employment status as a result of the decision of the Commanding Officer. The loss of his economic interests in his on-base employment, however does not provide Plaintiff with a different standard or higher standard of review than any other order of a commanding officer baring an individual from his installation.

### B. Commanding Officer Has Broad Desecration To Bar Individuals From His Installation.

It is "well recognized that the commander of a military installation has and must have the broad authority and discretion to summarily exclude persons therefrom" *Cafeteria Restaurant Workers Union v. McElroy*, 367 U.S. 886, 893 (1961), *reh'g denied*, 368 U.S. 869; *United States v. Gourley*, 502 F.2d 785, 786-87 (10th Cir. 1973). The term "summarily" has been interpreted to mean there is no requirement for a hearing or even notice to the barred individual before taking such action. *Tokar v. Hearne*, 699 F.2d 753, 756 (5th Cir.), *cert. denied*, 464 U.S. 844 (1983); *United States v. Jelinski*, 411 F.2d 476, 477-78 (5th Cir.), *cert. denied*, 396 U.S. 943 (1969). This extensive authority is not diminished when the individual had previously been routinely permitted to enter the base to take advantage of shopping privileges, etc. *Tokar*, 699 F.2d 753, at 756, relying on

- 5 -

*Cafeteria Workers*, 367 U.S. 886.

In  Tokar, the plaintiff tried to assert a "property interest" in her access privilege to the base from which she was barred.  The Fifth Circuit affirmed that district court's denial of relief and in balancing the relative interests, found the government's interest in protecting the integrity of military installations overrode the plaintiff's lost opportunity to "save money" by using the base facilities.  Likewise in  *Medina v. United States*, 709 F.2d 104 (1st Cir. 1983), where the commander's barment action resulted in the loss of an base employment for the plaintiff, the interests of the government to control access were found to be weighty.

The Ninth Circuit has also reviewed the authority of a commander to exclude individuals from his base.  The court characterized the commander's power to bar as "the historically unquestioned power of a commander to exclude civilians from the area of his command."  *United States v. Albertini*, 472 U.S. 675, 687, 105 S.Ct. 2897, 2905 (1985), citing *Cafeteria Workers*, 367 U.S. at 893, 81 S.Ct. at 1740.  In the Ninth Circuit, review of a commander's decision to bar a civilian is extremely limited.  *Bridges v. Davis*, 443 F.2d 970 (9th Cir. 1971) *cert. denied* (1972) (scope of review of a court is extremely limited regarding review of the discretion of the commander to exclude persons from his installation.)  In the Ninth Circuit, the *Cafeteria Workers* rule is not vague, but rather, very straight-forward and fundamentally clear.  From the decision in *United States v. May*, 622 F.2d 1000, 1006 (9th Cir. 1980), *cert. denied,  sub nom*, the court stated that "the commanding officer of a military base has wide discretion as to whom he will exclude from the base, which will be disturbed only upon a showing that the grounds for exclusion were patently arbitrary and discriminatory." Again the Ninth Circuit  in  *United States v. Albertini*, 783 F.2d 1484, 1487 citing *United States v. May, supra.* stated:  "The commander of Hickam Air Force Base, in the exercise of his unique control over the facility with which he was entrusted, was not required by due process to hold or give an

- 6 -

opportunity for a hearing at the time he issued the bar letter to *Albertini*." It is clear that Captain Wylie, USN, set forth nonarbitrary grounds as the basis for his bar order and therefore, is not subject to judicial review absent a clear showing by the Plaintiff that Captain Wylie's actions were motivated by prejudice. The Tenth Circuit has also recognized the "unique posture and ability of a commanding officer to comprehend internal threats to his command or to the loyalty and morale of his troops ....."" *Schneider v. Laird*, 453 F.2d 345, 347 (10th Cir. 1972), *cert denied*, 407 U.S. 914 (1972). The recognition of this internal threat is of greater importance in foreign countries such as Japan, where the actions of individuals may be imputed to the United States affecting the foreign relations of the United States. Military officials need not first determine what actual harm may occur before imposing restrictions, including debarment from military installations when the actions can affect international relations.

The Supreme Court has repeatedly recognized the authority of military commanders to enforce security and good order on their installations. Numerous cases have specifically upheld commanders' decisions to bar individuals from their respective installations, *Weissman*, 387 F.2d at 271; *Gourley*, 502 F.2d 785; *Schneider*, 453 F.2d at 347; *Brown v. Palmer*, 944 F.2d 732; *Greer*, 424 U.S. 838; *Cafeteria Workers*, 367 U.S. at 895; *Secretary of the Navy v. Huff*, 444 U.S. 453 (1980); *United States v. Albertini*, 472 U.S. 675, 687 (1985).

Specific statutory and regulatory provisions also support a commander's broad authority to regulate access to a base. For example, 18 U.S.C. § 1382 criminalizes unauthorized entry of an installation. Also each commander is authorized to grant or deny access to his installations, and to exclude or remove persons whose presence is unauthorized. In excluding or removing persons from the installation [however], he must not act in an arbitrary or capricious manner." 32 C.F.R. § 809a.1(b). Furthermore, Department of Defense Directive 5200.8, *Security of Military Installations and Resources*, ¶3.2.2, similarly states that an installation commander has the authority to

- 7 -

"remov[e] from, or … den[y] access to … an installation or site … individuals who threaten the orderly administration of the installation or site." (Exhibit 9)  Clearly, the security report (Exhibit 10)  provided to the Commanding Officer a legitimate non-discriminatory basis, founded in fact not conjecture, upon which the decision to bar Mr. Edwards was properly decided.

## C.  The Commanding Officer's Actions Were Based Upon Workplace Safety Factors.

The material facts demonstrate that the U.S. Navy lacked any discriminatory motive and acted out of a legitimate concern for the workplace environment and the safety of its employees.  The Commanding Officer was presented with an allegation that Edwards  was drunk and disorderly and threatened a security officer.  Edwards did not dispute the facts but argued the debarment from the base was too severe a penalty.   The Commanding Officer was faced with an employee who  had consistently engaged in a pattern of  offensive behavior.   Based on these facts, and consistent with military  policy, Edwards was barred from entry onto the installation for a period of two years based upon the incident (Exhibits 5 and 11).

The undisputed material facts establish that the U.S. Navy  had a legitimate nondiscriminatory reason for its actions.   As such, Edwards  must come forward with probative evidence establishing that the U.S. Navy's proffered reasons are false.  He must establish a causal link demonstrating that discrimination was a motivating factor in the Commanding Officer's action to debar him from the base for  two years.  It is interesting to note that the recommendation of the security officer who he claims expressed improper racial motivation, was not implemented by the Commanding Officer.   Master Chief Moore had recommended a permanent debarment based upon the record of Mr. Edwards which recommendation was not followed.  Instead the Commanding Officer, executing his discretion, barred Mr. Edwards from entering the base for only two years. (Exhibit 5)

- 8 -

## D. Edwards Can Not Present Any Evidence To Demonstrate Pretext.

Edwards must prove that the reasons offered by the U.S. Navy, the off-base altercation, was a pretext for discrimination. The stated reason does not necessarily concern the correctness or desirability for the Commanding Officer's decisions, rather, it only concerns the issue of whether the Commanding Officer, and hence the U.S. Navy, honestly believes in the reason it offers. *Kralman v. Illinois Department of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir. 1994). EEO actions brought are not intended to limit the traditional authority of a base commander in determining who may have access to his installation – they are only intended to prohibit deliberate discrimination in the employment process, or in personnel actions, within the Commanding Officer's discretionary authority as an employer. Here the action was not taken as an employer but as the Commanding Officer, the responsible party for good order and discipline upon his military installation. It is not the province of courts to second-guess the military commanders judgment where he acted on ample legitimate justification. The security police report provided an ample basis for the Commanding Officer's decision, nothing more need be shown by the Government.

Edwards can not prove that the U. S. Navy's proffered reasons are false, thereby establishing any type of pre-text allegation. Further, he can not establish any causal link connecting his allegations of discriminatory motive by Master Chief Moore with the actions of the Commanding Officer. *See Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997). The defendant alleges discrimination by the Master Chief Petty Officer Moore, the security officer. Master Chief Moore is not in a position of authority nor did he have any decision making authority under Navy regulations or the SOFA. In fact, Captain Wylie disregarded the recommendations of Master Chief Moore dealing with Edwards. Captain Wylie, USN, disregarded the recommendation of Master Chief Moore in 1998 concerning his security clearance recommendation for employment on the base and again in 1999, for the disciplinary action in regards to the off-base altercation which resulted in

- 9 -

this debarment. In both cases the Commanding Officer exercised his authority to reduce recommended actions in favor of Mr Edwards.

Edwards only alleges that his offense of drunk and disorderly conduct was disproportionately punished by the two year debarment order. Similar offenses resulted in 17 separate debarments for other individuals of all races and most were of a permanent debarment duration. (Plaintiff's complaint attachment 2). Plaintiff's complaint fails to assert any basis to find improper motivation for the Commanding Officer's actions.

## CONCLUSION

Based upon the forgoing defendant respectfully requests that this court conclude that Plaintiff has failed to meet his burden of establishing that the actions of the Commanding Officer were improperly motivated. The Court should find that Captain Wylie executed his authority to exclude Mr. Edwards from the installation based upon illegal activity of Mr. Edwards off-base, that the U.S. Navy had a rational basis for the action taken.

Date: _9 April 03_       Respectfully submitted,


FREDERICK A. BLACK
United States Attorney
Districts of Guam and NMI

BY: _Edward J. Lynch_
EDWARD J. LYNCH
Special Assistant U.S. Attorney

- 10 -

# ORIGINAL

FREDERICK A. BLACK
United States Attorney
EDWARD J. LYNCH
Special Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

### FOR THE TERRITORY OF GUAM

|  |  |  |
|---|---|---|
| JERRY EDWARDS, | ) | CIVIL CASE NO. 02-00003 |
| Plaintiff, | ) | |
| v. | ) | |
| GORDON ENGLAND, SECRETARY OF THE NAVY, | ) | |
| Defendant. | ) | |

## DECLARATION OF COUNSEL

I, Edward J. Lynch, Special Assistant United States Attorney, Defendant's counsel declare:

Defendants Exhibits 1 through 11 were obtained from the United States Navy, U.S. Naval Forces Japan Legal Office in response to Plaintiff's request for Discovery pursuant to Fed. R. Civ. P. Rules 26(a) and 34. Said documents were produced "as they were kept in the usual course of business" in accordance with Fed. R. Civ. P. 34 (b) and are the official records of the Department of the Navy.

I declare under perjury that the forgoing is true and accurate.

Executed on this  9TH   day of April  2003.

_____
EDWARD J. LYNCH

# EXHIBIT LIST

EXHIBIT 1:  Memorandum of Agreement To Coordinate The Acknowledgment Enforcement and issuance of Reciprocal Barment Orders.

EXHIBIT 2:  Bar Letter From Commander Fleet Activities Yokosuka

EXHIBIT 3A: Appeal Letter From Commander Fleet Activities Yokosuka
3B: Appeal Letter From Commander U.S. Naval Forces Japan

EXHIBIT 4: Bar Letter From Headquarters 17th Support Group, Camp Zama

EXHIBIT 5: Record Of Decision By Commander Fleet Activities Japan To Bar Mr. Edwards From Naval Installations

EXHIBIT 6A: Pacific Command Instruction: Misconduct
6B: Commander Naval Forces Japan Instruction 1750.2A: Misconduct

EXHIBIT 7: U.S. Forces Japan Criminal Jurisdiction Instruction (except).

EXHIBIT 8: Status Of Forces Agreement

EXHIBIT 9: Military Commanders Authority Secretary Of The Navy Instruction, Department Of Defense Directive

EXHIBIT 10: Security Report Dated June 11, 1999

EXHIBIT 11: Declaration of Captain Wylie, USN.

# MEMORANDUM OF AGREEMENT

1.     This memorandum of agreement by and among the Commander, Fleet Activities, Yokosuka, hereinafter referred to as Party A, the Commanding Officer, U.S. Naval Air Facility, Atsugi, hereinafter referred to as Party B, and the Commanding General, U.S. Army, Japan, 9th Theater Army Area Command, hereinafter referred to as Party C, is intended to coordinate the acknowledgment, enforcement, and issuance of reciprocal debarment orders.

2.     All parties are in accord that the security and integrity of each respective installation is the paramount reason for entering into this agreement.  Debarred personnel are a continuing danger to the welfare, as well as good order and discipline, of personnel stationed onboard each installation.  By entering into this agreement of mutual cooperation, each party will enhance its ability to identify and prevent debarred individuals who have committed serious misconduct on other installations from entering the respective party's installation.

3.     Parties A, B and C agree to the following:

     a.     To recognize all debarment orders issued by each of the other parties to this agreement.  This acknowledgment is to extend to debarment orders issued "by direction" from a designated representative of each party.  A summary of the facts of the case that resulted in debarment shall be attached to each letter.

     b.     To assist in enforcing any debarment order issued by each of the other parties to this agreement.

     c.     To issue a reciprocal bar order upon individuals barred by the other parties where:

          (i)   the initial barring party forwards a request for a reciprocal bar to the other parties; and

          (ii)  the installation commander or designated representative determines that debarment from his/her installation is appropriate.



4.    The parties further agree:

    a.    To thoroughly investigate and examine all facts and circumstances prior to issuing a debarment order to any individual or entity.

    b.    To provide a fair and reasonable appeal process to personnel issued debarment orders in which all new facts and information are completely investigated and reviewed.

    c.    To provide a fair and reasonable appeal process which gives debarred personnel fifteen calendar days from the date of imposition to appeal a denial of entry based on this agreement.

    d.    To keep a summarized incident report file on all debarred personnel for a minimum of five years unless debarred for a lesser period of time.

5.    Nothing in this agreement shall be construed as infringing or limiting the authority of each installation Commander to independently assess and authorize which personnel shall be granted entry onto each party's installation.

6.   This memorandum is effective on the date of the last commanding officer/general's signature and shall remain in effect unless otherwise modified or superseded.


J. M. WYLIE
Commander
Fleet Activities, Yokosuka
Date: 28 Jan 98

FRANK SWEIGART
Commanding Officer
Naval Air Facility, Atsugi
Date: 2 Feb 98


ROBERT R. HICKS, JR.    Cdr, US Army Garrison, Honshu
Major General, U.S. Army
Commanding General
U.S. Army Japan/9th Theater Army Area Command
Date: 19 Feb 98





1750
Ser NOOJ/048
10 Mar 99

From: Commander, U.S. Naval Forces, Japan
To:   Mr. Jerry J. Edwards, CIV, ▓▓▓▓▓▓▓▓▓

Subj: APPEAL/RECONSIDERATION OF DEBARMENT

Ref:  (a) Yr ltr of 25 Jan 99
      (b) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-125
          of 4 Feb 99
      (c) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-152
          of 12 Feb 99

1.  After careful review of references (a) through (c), I find the
action taken by Commander Fleet Activities, Yokosuka (CFAY) was
within his authority and was appropriate under the circumstances.
Additionally, I find no misconduct on the part of CFAY Security
personnel.

2.  Therefore, your request for reconsideration of debarment is
denied.

F. E. CRECELIUS
Deputy and Chief of Staff

Copy to:
COMFLEACT Yokosuka JA

Att B

 

DEPARTMENT OF THE ARMY
HEADQUARTERS, 17th AREA SUPPORT GROUP
UNIT 45006
APO AREA PACIFIC 96343-5006

REPLY TO
ATTENTION OF:

10 1 JUN

Commander

Mr. Jerry Edwards
c/o Kae Takada
    241-0814 Yokohama-shi
3-11-4 Nakazawa, Asahi-ku

Dear Mr. Edwards:

You are hereby notified that after due consideration, your request for reconsideration of the bar imposed on you is denied. I am basing this decision in part on the June 23, 1999, incident wherein you trespassed on Camp Zama, which is in direct violation of the imposed bar.

You are reminded that you are barred from entry or presence within the limits of all 17th Area Support Group (ASG) installations until January 20, 2001. These installations include Camp Zama, Sagamihara Family Housing Area, Sagami General Depot, North Pier (Yokohama), Akasaka Press Center, Tokyo (Hardy Barracks/Pacific Stars and Stripes), and the U.S. Army Ammunition Depot, Akizuki and its sub-installations.

Article 2 of "Keiji Tokubetsu Ho" (Law of Special Measures concerning Criminal Cases to Implement the Agreement under Article VI of the Treaty of Mutual Cooperation and Security between Japan and the United States of America) makes it a criminal offense under Japanese law to enter a military installation in Japan without permission.

Sincerely,

Sammy G. Wiglesworth
Colonel, U.S. Army
Commanding Officer

I hereby acknowledge receipt of this letter: _____ Date: _____



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003H/L- 053
20 Jan 99

From: Commander Fleet Activities, Yokosuka
To: Mr. Jerry Jerome Edwards. GS-12, 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
Via: Commanding Officer, U.S. Naval Ship Repair Facility

Subj: DEBARMENT ICO MR. JERRY JEROME EDWARDS

Ref: (a) COMFLEACT Yokosuka ICR of CCN 11JAN99-46193-00084

1. By the authority vested in me as Commander Fleet Activities, Yokosuka. I hereby prohibit you from entering any military installation. facility or area under my control as a result of an incident on 11 January 1999 where you were drunk and disorderly and communicating a threat toward shore patrol personnel. This restriction applies to Fleet Activities, Yokosuka/Yokohama. the New Sanno Hotel and all other units, facilities, or areas under my control, and remains in effect for two years from the date of this letter.

2. Your attention is invited to Article 2, of "Keiji Tokubetsu Ho", (Law for Special Measures, concerning criminal cases to implement the agreement under Article VI of the Treaty of Mutual Cooperation and Security between Japan and the United States Armed Forces in Japan.), Law No. 138, 7 May 1952, as amended which provides:

    "Offense of Trespassing on Facilities or Areas . . . Article 2. Any person who, without due cause, enters any place, the entrance of which is prohibited, or does not leave any place, when requested, within facilities or areas as defined in paragraph 1 of this letter, may be sentenced to penal servitude for not more than one year or a fine."

3. Should you enter or be found upon the limits of any prohibited installation, areas or facility under the control of Commander Fleet Activities, Yokosuka, and in violation of this order, you may be apprehended and detained by military authorities and prosecuted to the fullest extent of the law.

J. M. WYLIE

FOR OFFICIAL USE ONLY

GOVERNMENT
EXHIBIT
2



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003/L- 125
4 Feb 99

From:  Commander Fleet Activities, Yokosuka
To:    Mr. Jerry J. Edwards, GS-12, 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

Subj:  APPEAL/RECONSIDERATION OF DEBARMENT

Ref:   (a) Your appeal ltr of 25 Jan 99
       (b) COMFLEACT Incident Report 994619300084

1.  After careful consideration of references (a) and (b), I find
conclusive evidence exists that you  were drunk and disorderly
and communicated a threat to a member of Fleet Shore Patrol.

2.  Reference (a) does not present any compelling evidence that
requires the retraction of your debarment.  Your appeal is
therefore denied.

J. M. WYLIE

GOVERNMENT
EXHIBIT
3A



DEPARTMENT OF THE NAVY
COMMANDER U. S. NAVAL FORCES, JAPAN
PSC 473 BOX 12
FPO AP 96349-0051

1750
Ser NOOJ/048
10 Mar 99

From: Commander, U.S. Naval Forces, Japan
To:   Mr. Jerry J. Edwards, CIV, 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

Subj: APPEAL/RECONSIDERATION OF DEBARMENT

Ref:  (a) Yr ltr of 25 Jan 99
      (b) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-125
          of 4 Feb 99
      (c) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-152
          of 12 Feb 99

1. After careful review of references (a) through (c), I find the
action taken by Commander Fleet Activities, Yokosuka (CFAY) was
within his authority and was appropriate under the circumstances.
Additionally, I find no misconduct on the part of CFAY Security
personnel.

2. Therefore, your request for reconsideration of debarment is
denied.

                            F. E. CRECELIUS
                            Deputy and Chief of Staff

Copy to:
COMFLEACT Yokosuka JA

GOVERNMENT
EXHIBIT

3B

 



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 17th AREA SUPPORT GROUP
UNIT 45008
APO AREA PACIFIC 96343-5006

REPLY TO
ATTENTION OF:

Commander                    10 1 JUN ☐☐

Mr. Jerry Edwards
c/o Kae Takada
    241-0814 Yokohama-shi
3-11-4 Nakazawa, Asahi-ku

Dear Mr. Edwards:

You are hereby notified that effective upon your receipt of this letter, you are barred from entry or presence within the limits of all 17th Area Support Group (ASG) for a period of ten (10) years. These installations include Camp Zama, Sagamihara Housing Area, Sagami General Depot, North Pier (Yokohama), Akasaka Press Center, Tokyo (Hardy Barracks/ Pacific Stars and Stripes), and the U.S. Army Ammunition Depot, Akizuki and its sub-installations.

I am basing this decision in part on the June 23, 1999, incident wherein you trespassed on Camp Zama, which is in direct violation of the bar imposed upon you on January 20, 1999.

Article 2 of "Keiji Tokubetsu Ho" (Law of Special Measures concerning Criminal Cases to Implement the Agreement under Article VI of the Treaty of Mutual Cooperation and Security between Japan and the United States of America) makes it a criminal offense under Japanese law to enter a military installation in Japan without permission.

Sincerely,

Sammy G. Wiglesworth
Colonel, U.S. Army
Commanding Officer

GOVERNMENT
EXHIBIT
4

JERRY J. EDWARDS, Plaintiff

vs.

SECRETARY OF THE NAVY,
GORDON R. ENGLAND, Defendant


Response to Plaintiff's Request
to Secretary of the Navy for
Production Of Documents

DOCUMENT REQUEST NO. 39
PLAINTIFF'S DEBARMENT



GOVERNMENT
EXHIBIT

5



**DEPARTMENT OF THE NAVY**
COMMANDER U. S. NAVAL FORCES, JAPAN
PSC 473 BOX 12
FPO AP 96349-0051

1750
Ser NOOJ/048
10 Mar 99

From: Commander, U.S. Naval Forces, Japan
To:   Mr. Jerry J. Edwards, CIV, 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

Subj: APPEAL/RECONSIDERATION OF DEBARMENT

Ref:  (a) Yr ltr of 25 Jan 99
      (b) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-125
          of 4 Feb 99
      (c) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-152
          of 12 Feb 99

1.  After careful review of references (a) through (c), I find the
action taken by Commander Fleet Activities, Yokosuka (CFAY) was
within his authority and was appropriate under the circumstances.
Additionally, I find no misconduct on the part of CFAY Security
personnel.

2.  Therefore, your request for reconsideration of debarment is
denied.

F. E. CRECELIUS
Deputy and Chief of Staff

Copy to:
COMFLEACT Yokosuka JA



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003/L- 125
4 Feb 99

From:   Commander Fleet Activities, Yokosuka
To:     Mr. Jerry J. Edwards, GS-12, 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

Subj:   APPEAL/RECONSIDERATION OF DEBARMENT

Ref:    (a) Your appeal ltr of 25 Jan 99
        (b) COMFLEACT Incident Report 994619300084

1.  After careful consideration of references (a) and (b), I find
conclusive evidence exists that you were drunk and disorderly
and communicated a threat to a member of Fleet Shore Patrol.

2.  Reference (a) does not present any compelling evidence that
requires the retraction of your debarment.  Your appeal is
therefore denied.

J. M. WYLIE



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003H/L- 053
20 Jan 99

From: Commander Fleet Activities, Yokosuka
To:   Mr. Jerry Jerome Edwards. GS-12, 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
Via:  Commanding Officer. U.S. Naval Ship Repair Facility

Subj: DEBARMENT ICO MR. JERRY JEROME EDWARDS

Ref:  (a) COMFLEACT Yokosuka ICR of CCN 11JAN99-46193-00084

1. By the authority vested in me as Commander Fleet Activities, Yokosuka. I hereby prohibit you from entering any military installation, facility or area under my control as a result of an incident on 11 January 1999 where you were drunk and disorderly and communicating a threat toward shore patrol personnel. This restriction applies to Fleet Activities, Yokosuka/Yokohama, the New Sanno Hotel and all other units, facilities, or areas under my control, and remains in effect for two years from the date of this letter.

2. Your attention is invited to Article 2, of "Keiji Tokubetsu Ho", (Law for Special Measures, concerning criminal cases to implement the agreement under Article VI of the Treaty of Mutual Cooperation and Security between Japan and the United States Armed Forces in Japan.), Law No. 138, 7 May 1952, as amended which provides:

    "Offense of Trespassing on Facilities or Areas . . . Article 2. Any person who, without due cause, enters any place, the entrance of which is prohibited, or does not leave any place, when requested, within facilities or areas as defined in paragraph 1 of this letter, may be sentenced to penal servitude for not more than one year or a fine."

3. Should you enter or be found upon the limits of any prohibited installation, areas or facility under the control of Commander Fleet Activities, Yokosuka, and in violation of this order, you may be apprehended and detained by military authorities and prosecuted to the fullest extent of the law.

J. M. WYLIE

FOR OFFICIAL USE ONLY

**MEMORANDUM**

Date: 19 OCT 98

From: Staff Judge Advocate

To: CO/CSO

← I concur but we need not abandon the file

Sir – This guy appears to have committed offenses that if taken in total, would result in debarment. However since one offense occurred while he was AD and another was a traffic infraction, he slipped through the cracks. In light of the fact that the last offense occurred in Nov 97 – it seems unfair to debar him after he has behaved for the last year. If he hits the blotter again – he will be out of luck. I understand he is applying to NEX for a job. Dick Garza has this file. I recommend no debarment.

V/R

Rob

MEMORANDUM

From:  Assistant Security Officer, COMFLEACT, Yokosuka
To:    Commander Fleet Activities, Yokosuka
Via:   (1) Security Officer, COMFLEACT, Yokosuka *AL*
       (2) Staff Judge Advocate, COMFLEACT, Yokosuka
       (3) Chief Staff Officer, COMFLEACT, Yokosuka

Subj:  RECOMMENDATION OF DEBARMENT, ICO: MR. JERRY JEROME
       EDWARDS, 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

1.  Recommend Mr. EDWARDS be permanently debarred from entering
any facility or activity under the control of Commander Fleet
Activities, Yokosuka and the outlying facilities of Ikego and
Negishi.

    a.  Background.  In August of this year, the Navy Exchange
Personnel Office submitted a formal request of a background check
to be conducted of Mr. EDWARDS, for the purpose of new
employment.  During the course of that background check, the
following information was revealed.

        (1) That, on 27 December 1996, while still on active duty
assigned to the USS FIFE, Mr. Edwards was apprehended for the
offense of assault (alcohol related).  Details of the assault are
as follow:  On or about 0330, 27 December 1996, the Victim stated
he was talking to a Japanese female when EDWARDS approached him
stating "did you tell her I was married?"  EDWARDS the hit the
Victim in the face with a closed fist.  The Victim alleged he
went outside the bar and EDWARDS hit and kicked him in the face.
EDWARDS then fled the scene.

        (2) That, on or about 0315, 08 October 1997, while
employed as a civilian with MWR, Yokosuka, Mr. EDWARDS was
detained as he entered the base driving a motor vehicle while
under the influence of alcohol.  A later analysis conducted on
hour later revealed a BAC of .08%.

        (3) That, on or about 0400, 11 November 1997, while
employed as a civilian with MWR, Yokosuka, EDWARDS was arrested
by Japanese Police for assault upon a Japanese national female.

Subj: RECOMMENDATION OF DEBARMENT, ICO: MR. JERRY JEROME
EDWARDS, 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

The offense occurred in the vicinity of Bar Customs. Details
included that EDWARDS pushed the vitim to the ground and then hit
and kicked her about the body including the face and chest.
Injuries sustained included contusions to the right knee, neck
and chest which required approximately two weeks of medical
attention.

2. As EDWARDS became aware that a background check had been
conducted, I received a telephone call from him. During the
conversation, EDWARDS revealed to me he had been separated from
the Navy with a General Discharge and that he did in fact spend 9
days in a Japanese jail while they investigated the November 97
incident. It was also revealed that MWR had allegedly not
renewed his temporary hire status after the November 1997
incident; that, Navy Exchange did not hire him (unknown reasons);
and that, he was now employed as a civilian contractor working
under SRF with GS-12 status.

3. Mr. EDWARDS as clearly established (both on active duty and
as a civilian employee) that he has difficulty with alcohol and
the use of violence against others. It should be noted that
these are the only incidents that we are currently aware of, we
are not aware of all the incidents that led USS FIFE to their
decision to administratively discharge Mr. EDWARDS. If he were
to have continued his active service with the disciplinary
problems noted above, he would not have screened for continued
overseas assignment. His personal conduct and continued
association with the United States Navy and Government here in
Japan, are not conducive to the maintenance of ambassadorship we
are attempting to present to our host nation of Japan.

Very respectfully,

S. B. MOORE
MACM(SW)USN

2

# ICR PRINT FORM

NAME:   EDWARDS, JERRY JEROME      RATE/RANK:   WG01

SPONSOR:

SSN:   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      COMMAND:   COMFLEACT MWR

DATE:   11/13/97      CASE #:   332

OFFENSE:   SIMPLE ASSAULT

SUSPECT:   Yes      VICTIM:   No      VWAP:   No

# NOTIFICATION OF APPREHENSION BY LOCAL AUTHORITIES
## 逮捕通知

| | | | |
|---|---|---|---|
| Name (Suspect)<br>被疑者の名前<br>EDWARDS, Jerry Jerome | Rate<br>階級<br>WG-01 | SSN/IDN<br>社会保障番号<br>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 | DOB<br>生年月日<br>15Ju171 |

Command/Sponsor's information       MWR

所属部隊

Nature of Offenses/Article No.       Inflicting bodily injury/Art. 204

罪名　罪条

### Summary of Offense
### 逮捕の根拠になった被疑事実

On or about 0400, 11Nov97, in the hallway in Bar Custom at #1-5 Honcho, Yokosuka, the suspect was infuriated to see Keiko Komatsu, whom he had been associating with, since she had called his cellular phone and told a Japanese female who picked up the phone that she had been associating with him before. He pushed her down and assaulted her by kicking her in the face, chest, and so on, resulting in inflicting injuries to her, contusions to right knee, neck and chest which requires approx. two weeks of medical attention.

### Detention

Date<br>逮捕年月日       20Nov97

Place<br>身柄の拘束場所   Yokosuka JPS

Officer in charge of case & phone No.<br>担当警察官及び電話番号       Assistant Inspector ENDOH/SGT. TANAKA  22-0110, Ext. 244

### Remarks

Time & Date of Info. Received<br>逮捕通知を受けた日時       0915, 20Nov97

Source of info.<br>通知をしてきた警察官の名前       SGT. TANAKA, Yokosuka JPS

Received by<br>受け取った担当者       T. TAKAHASHI, Liaison Officer

Time & Date CFAY OO3 informed<br>法務部通報日時       0925, 20Nov97

Whom informed<br>法務部担当者       Ms. HOSHINO

CFAY 5580/5 (10-91)

# ICR PRINT FORM

NAME:     EDWARDS, JERRY JEROME          RATE/RANK:     WGO1
SPONSOR:

SSN:   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          COMMAND:     COMFLEACT MWR

DATE:     10/8/97          CASE #:     300  030
OFFENSE:     DRUNKEN DRIVING ON BASE

SUSPECT:     Yes          VICTIM:     No          VWAP:          No

## ICR PRINT FORM

NAME:   EDWARDS, JERRY J.                    RATE/RANK:    DC2-E5
SPONSOR:

   SSN:   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        COMMAND:    Commanding Officer, USS FIFE (DD 991)


   DATE:   12/26/96            CASE #:    710
OFFENSE:    SIMPLE ASSAULT

SUSPECT:    Yes        VICTIM:    No            VWAP:            No

─────[PERSONAL INFORMATION]─────
Name : Edwards, Jerry Jerome          SSN : 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   Status: N/A
Sponsor:                        Sponsor SSN:
Rate: DC2          Rank: E5
Command: USS FIFE                Work Phone :
Home:                               Phone :

─────[IDENTIFYING INFORMATION]─────
Race: N  SEX : M  Weight :     Height:      DOB : 7/15/71      Age: 25
Hair: BLK  Eyes : BRN     Blood Type:     POB : Sanford, Nc
Scars:                    Marks :              Tattoos :
Known Associates:         Known Hangouts:
Alias:

─────[INCIDENT INFORMATION]─────
Incident Date : 12/26/96    Time : 3:30   Source: Desk Journal
LOC : Bar Customs, Honcho 1, Yo  Circumstances : Simple Assault
Category: SUSPECT     Crime Code: 7G2          CCN Sequence #: 710

Date Entered: 12/27/96          Time Entered: 13:38
─────═══PAGE DOWN FOR NOTES═══─────
HCP Caution:

  Note: VICTIM STATED HE WAS TALKING TO A A JAPANESE FEMALE WHEN
HE SUBJECT APPROACHED HIM STATING, "DID YOU TELL HER I WAS
ARRIED", OR WORDS TO THAT EFFECT.   THE SUBJECT THEN HIT THE VICTIM
N THE FACE WITH A CLOSED FIST.   THE VICTIM FURTHER STATED HE WENT
UTSIDE THE BAR AND THE SUBJECT HIT AND KICKED HIM IN THE FACE.
UBJECT FLED THE SCENE.   VICTIM SUBMITTED TO IR-3000 TESTING
ESULTING IN .13% BAC.   VICTIM WAS TRANSPORTED AND RLEASED TO THE
SS FIFE.   ICR# 26DEC96-46193-710-7G2.

        VICTIM: ROLLE, CASTELL /YN3/ USS F.FC
        SUSPECT: EDWARDS


              EDWARDS PUNCHED ROLLE
Entry:
Exit:

**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

1750
Ser 003H/L-745
10 Oct 00

Mr. Jerry Edwards
c/o Kae Takada
3-11-4 Nakazawa, Asahi-Ku
Yokohama 241-0814

Dear Mr. Edwards:

I have reviewed your letter of September 6, 2000.  In response
to your request for a closed mast meeting on the subject of your
debarment, the following information is provided:

You were debarred from Fleet Activities, Yokosuka effective
January 20, 1999 for a period of two years for an incident of
drunk and disorderly and communicating a threat.  You appealed
the debarment to Commander, Fleet Activities, Yokosuka.  On
February 4, 1999, your appeal was denied due to lack of
compelling evidence to support the suspension of your debarment.
Subsequently, you appealed the matter a second time to
Commander, U.S. Naval Forces, Japan (CNFJ).  On March 10, 1999,
CNFJ denied your request for reconsideration of debarment on the
basis that your debarment was appropriate under the
circumstances.  Additionally, CNFJ found no misconduct on the
part of CFAY Security personnel.

Accordingly, your requests for reconsideration of debarment have
been carefully reviewed and responded by CFAY and CNFJ.
Therefore, your request to have a closed mast meeting is denied.
However, if you have any additional or new information for
reconsideration of your debarment, please submit it in writing
via the Office of my Staff Judge Advocate.

M. L. SEIFERT
Captain, U.S. Navy
Commander



| 3. ENTRY | 4. TIME | 5. INCIDENT (Who, what, when and where) | 6. ACTION TAKEN |
|---|---|---|---|
| 003 | 1143 | HARASSING COMMUNICATIONS/COMMUNICATING A THREAT<br>SUBJECTS: UNKNOWN<br>VICTIM: EDWARDS, JERRY JEROME/GS12-CIV/<br>243217110/SRF/15JUL71/SANFORD, NC/M/B/<br>6'1"/175/BLK/BRN<br>TIME/DATE: 2200/27NOV98<br>LOCATION: 3RD FLOOR CLUB ALLIANCE, FAY<br>DETAILS: VICTIM WAS APPROACHED BY TWO UNKNOWN BLACK MALES WHO STATED "WE DON'T LIKE THE RED COLORS YOU ARE WEARING, AND IF WE CATCH YOU ALONE WEARING THOSE COLORS WE WILL JUMP YOU"; OR WORDS TO THAT EFFECT. UNKNOWN SUBJECTS THEN DEPARTED THE SCENE WITH NO FURTHER INCIDENT.<br>CCN: 02DEC98-61581-0960-7B4 | (BITANGA/REYES)<br>SECTION LPO, OPS,<br>CDO, CID<br>(YOKOSUKA) |

**DEPARTMENT OF THE NAVY**

# DESK JOURNAL

COMFLEACT YOKOSUKA

1. PAGE NUMBER
1 of 1

2. DATE
1999/01/11

| 3. ENTRY | 4. TIME | 5. INCIDENT (Who, what, when and where) | 6. ACTION TAKEN |
|---|---|---|---|
| 001 | 0115 | COMMUNICATING A THREAT/DRUNK AND DISORDERLY SUBJECT: EDWARDS, JERRY JEROME/GS12-CIV/ 243217110/SRF/15JUL71/SANFORD, NC/M/B/6'1"/ 175/BLK/BRN VICTIM(FSP): MEBANE, DARNELL CHARLES/OS3-USN/ 056744584/USS CHANCELLORSVILLE/19AUG78/ BROOKLYN, NY/M/B/6'0"/175/BRN/BRN COMPLAINANT(FSP): COLLINS, DANIEL LOYD/AMH1-USN/506902010/USS KITTY HAWK TIME/DATE: 0110/11JAN99 LOCATION: IN FRONT OF BAR TENNESSEE, HONCHO #1, YOKOSUKA DETAILS: SUBJECT WAS OBSERVED BY VICTIM AND COMPLAINANT WALKING DOWN THE STREET WITH AN OPEN BOTTLE OF BEER. VICTIM INFORMED THE SUBJECT THAT HE COULD NOT HAVE AN OPEN CONTAINER ON THE STREET AND ASKED THE SUBJECT FOR HIS ID CARD. SUBJECT SAID "FUCK NO, I'M NOT GOING TO SHOW YOU MY ID CARD I'M A CIVILIAN, GO FUCK YOURSELF", OR WORDS TO THAT EFFECT. COMPLAINANT RADIOED FOR ASSISTANCE. MP'S ARRIVED ON SCENE AND DETAINED SUBJECT AND TRANSPORTED HIM TO MPHQ. SUBJECT REMAINED BELLIGERENT THROUGHOUT PROCESSING AND REFUSED EC/IR-5000 TESTING. SUBJECT REFUSED TO PROVIDE A WRITTEN OR VERBAL STATEMENT. SUBJECT WAS RELEASED TO SRF CDO VIA DD FORM 629. Incident # 994619300084 | (TOMMAS/PEDRO) WATCH SUP, AOPS, CDO (YOKOSUKA) |

## ICR PRINT FORM

**NAME:** EDWARDS, JERRY J.　　　　　　　**RATE/RANK:**　DC2-E5

**SPONSOR:**

　　**SSN:**　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　　　　**COMMAND:**　　Commanding Officer, USS FIFE (DD 991)

　　**DATE:**　12/26/96　　　　　**CASE #:**　710

**OFFENSE:**　SIMPLE ASSAULT

**SUSPECT:**　Yes　　　　**VICTIM:**　No　　　　**VWAP:**　　　　No

═══════MASTER INTELLIGENCE FILE═══════
┌─────────[PERSONAL INFORMATION]─────────
Name : Edwards, Jerry Jerome          SSN : 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   Status: N/A
Sponsor:                             Sponsor SSN:
Rate: DC2            Rank: E5
Command: USS FIFE                     Work Phone :
Home :                                     Phone :

┌─────────[IDENTIFYING INFORMATION]─────────
Race: N  SEX : M  Weight :      Height:      DOB : 7/15/71        Age: 25
Hair: BLK  Eyes : BRN       Blood Type:      POB : Sanford, Nc
Scars:                          Marks :              Tattoos :
Known Associates:           Known Hangouts:
Alias:

┌─────────[INCIDENT INFORMATION]─────────
Incident Date : 12/26/96    Time : 3:30   Source: Desk Journal
LOC : Bar Customs, Honcho 1, Yo  Circumstances : Simple Assault
Category: SUSPECT     Crime Code: 7G2          CCN Sequence #: 710

Date Entered: 12/27/96            Time Entered: 13:38
═══════PAGE DOWN FOR NOTES═══════
HCP Caution:

    Note: VICTIM STATED HE WAS TALKING TO A A JAPANESE FEMALE WHEN
THE SUBJECT APPROACHED HIM STATING, "DID YOU TELL HER I WAS
MARRIED", OR WORDS TO THAT EFFECT.  THE SUBJECT THEN HIT THE VICTIM
IN THE FACE WITH A CLOSED FIST.  THE VICTIM FURTHER STATED HE WENT
OUTSIDE THE BAR AND THE SUBJECT HIT AND KICKED HIM IN THE FACE.
SUBJECT FLED THE SCENE.  VICTIM SUBMITTED TO IR-3000 TESTING
RESULTING IN .13% BAC.  VICTIM WAS TRANSPORTED AND RLEASED TO THE
USS FIFE.  ICR# 26DEC96-46193-710-7G2.


        VICTIM: ROLLE, CASTELL /YN3/USS FIFE
        SUSPECT: EDWARDS


            EDWARDS PUNCHED ROLLE

Entry:
Exit:

**4. CASE CONTROL NUMBER (CCN)**
26DEC96-46193-0710-7G2

TO ADDRESSEE

**7. TYPE REPORT:** ☐ Info (No reply required)   ☐ Supplemental (No reply required)   ☒ Report of ACTION

**8. INCIDENT/COMPLAINT (Specify type and location)**

SIMPLE ASSAULT   LOC: BAR CUSTOM, HONCHO I, YOKOSUKA, JAPAN

| 9. WHEN & HOW RECEIVED | Hour 0355 | Date 26DEC96 | ☐ Crimestop Call | ☐ In Person | ☒ By Telephone | ☐ By Radio | ☐ By Mail |
|---|---|---|---|---|---|---|---|

| 10. INVOLVEMENT | | 11. ASSUMED BY NIS? | 12. HOUR 0330 | 13. DATE 26DEC96 |
|---|---|---|---|---|
| ☐ Drugs ☒ Alcohol ☐ BBP ☐ Weapons ☐ Vehicle ☒ VWAP | | ☐ Yes ☐ No ☒ N/A | | |

**14. RECEIVED BY (Typed or printed name, rank and position)**

MENDOZA, ROMIL/MM1-USN/DISPATCHER

**15. TYPE OF INCIDENT**
☒ Misdemeanor   ☐ Felony
☐ Complaint   ☐ Military Offense ☐ Traffic

**16. PERSONS RELATED TO REPORT (Continue on Page 2 or add pages, if necessary)**
(Insert appropriate category letter before each name)  A-SUSPECT  B-VICTIM  C-COMPLAINANT  D-WITNESS  E-POLICE  F-SPONSOR

| CATEGORY (See above) | NAME/RANK&BRANCH/SSN/DUTY STATION/UIC (Enter on line 1 for all categories)   DPOB/SEX/RACE/HEIGHT/WEIGHT/HAIR/EYES/IDENTIFYING MARKS (Enter on line 2 for suspects and victims) |
|---|---|
| A | EDWARDS, JERRY JEROME/DC2-USN/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/USS FIFE/20838 |
| | 15JUL71  SANFORD, NC/M/B///// |
| B | ROLLE, CASTELL SALATHIEL III/YN3-USN/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/USS FIFE/20838 |
| | 06NOV66  PORT PIERCE, FL/M/B/5'11"/170/BLK/BRN/NONE |
| E | CARIN, MATIAS/BT2-USN/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/CFAY SECURITY/46193 |
| | |
| E | MACKEY, TRAVIS B./PN3-USN/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/CFAY SECURITY/46193 |
| | |
| E | PLANTE, ROBERT R. JR/MA1-USN/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/CFAY SECURITY/46193 |
| | |
| E | ROSELLE, VINCENT P/HT2-USN/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/CFAY SECURITY/46193 |
| | |
| | |
| | |
| | |
| | |

*710*

OPNAV 5527/1 (12-82) Page 1 of 3 pages          S/N 0107-LF-055-2705          FOR OFFICIAL USE ONLY (When filled in)

On or about 0402, 26DEC96, ROLLE entered MPHQ, FAY, reporting he was punched by EDWARDS at Bar Custom, HONCHO 1, YOKOSUKA. PLANTE (MP), CARIN (MP), MACKEY (MP), and ROSELLE (MP) were assigned.

PLANTE met with ROLLE who stated on or about 0330, 26DEC96, while he was talking to a Japanese National at Bar Custom, EDWARDS approached him and asked "Did you tell the woman beside me I was married?", or words to that effect, to which ROLLE responded "Ask her". ROLLE further stated EDWARDS then struck him in the face with a closed fist. ROLLE also stated as he left the bar, EDWARDS followed him outside, struck him twice with a closed fist, and kicked him. MP's conducted a search of the area for EDWARDS ending with negative results.

ROLLE submitted to IR-3000 testing resulting in a .13% BAC. ROLLE was advised of his Victim's Rights via DD form 2701. ROLLE declined medical treatment. On or about 0518, 26DEC96, ROLLE was transported to the USS FIFE and released to GMM1 PRICE (FIFE OOD). One polaroid photograph was taken of ROLLE's injuries.

NOTIFICATIONS:
SECTION CPO MAC HARTWICK NOTIFIED AT 0410, 26DEC96.
CDO LT FULTON NOTIFIED AT 0450, 26DEC96.
OPS MACS YOUNG NOTIFIED AT 0600, 26DEC96.
CID JOHNSON NOTIFIED AT 0700, 26DEC96.
SO LT DUPLAYEE NOTIFIED AT 1600, 26DEC96.

OPNAV 5527/1 (12-82) Page 2 of 3 pages     S/N 0107-LF-055-2705     FOR OFFICIAL USE ONLY (When filled in)

# ICR PRINT FORM

**NAME:** EDWARDS, JERRY JEROME      **RATE/RANK:** WGO1

**SPONSOR:**

**SSN:** 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      **COMMAND:** COMFLEACT MWR

**DATE:** 10/8/97      **CASE #:** 300 030

**OFFENSE:** DRUNKEN DRIVING ON BASE

**SUSPECT:** Yes      **VICTIM:** No      **VWAP:** No

Department of the Navy

INCIDENT/COMPLAINT REPORT

**1. FROM:** SECURITY OFFICER, COMFLEACTS YOKOSUKA, JAPAN

**2. TO:** DIRECTOR, MORALE, WELFARE, AND RECREATION, YOKOSUKA, JAPAN

**3. VIA:** COMMANDER, FLEET ACTIVITIES YOKOSUKA, JAPAN

| 4. CASE CONTROL NUMBER (CCN)<br>08OCT97-46193-0030-7T1 | 5. DATE SUBMITTED<br>TO ADDRESSEE: | 6. RETURN TO POLICE<br>ADMIN NOT LATER THAN: |
|---|---|---|

**7. TYPE REPORT:** ☐ Info (No reply required)   ☐ Supplemental (No reply required)   ☒ Report of Action (See page 4)

**8. INCIDENT/COMPLAINT** (Specify type and location)

DRUNKEN DRIVING ON BASE (DUI)  LOC: INBOUND VEHICLE LANE, MAIN GATE, FAY

| 9. WHEN & HOW RECEIVED | Hour<br>0320 | Date<br>08OCT97 | ☐ Crimestop Call  ☐ In Person  ☒ By Telephone  ☐ By Radio  ☐ By Mail |
|---|---|---|---|

**10. INVOLVEMENT**
☐ Drugs  ☒ Alcohol  ☐ BBP  ☐ Weapons  ☒ Vehicle  ☐ VWAP

| 11. ASSUMED BY NIS?<br>☐ Yes  ☐ No  ☒ N/A | 12. HOUR<br>0315 | 13. DATE<br>08OCT97 |
|---|---|---|

**14. RECEIVED BY** (Typed or printed name, rank and position)

MORTIMER, JOSEPH F./MA1(SW)-USN/PATROLMAN

**15. TYPE OF INCIDENT** ☒ Misdemeanor  ☐ Felony
☐ Complaint  ☐ Military Offense ☒ Traffic

**16. PERSONS RELATED TO REPORT** (Continue on Page 2 or add pages, if necessary)
(Insert appropriate category letter before each name)  A-SUSPECT  B-VICTIM  C-COMPLAINANT  D-WITNESS  E-POLICE  F-SPONSOR

| CATEGORY<br>(See above) | NAME/RANK&BRANCH/SSN/DUTY STATION/UIC (Enter on line 1 for all categories)<br>DPOB/SEX/RACE/HEIGHT/WEIGHT/HAIR/EYES/IDENTIFYING MARKS (Enter on line 2 for suspects and victims) |
|---|---|
| A | EDWARDS, JERRY JEROME/WG01-CIV/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/MWR, FAY<br>15JUL71  SANFORD, NC/M/B/6'2"/175/BLK/BRN/ |
| C | BAKER, CHAD JAMES/LCPL-USMC/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/MARINE BARRACKS, FAY/62217 |
| E | HOGUE, KENNETH A/EN2-USN/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/CFAY SECURITY/46193 |
| E | PINE, MICHAEL J/STG2-USN/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/CFAY SECURITY/46193 |
| E | HARRIS, ANDRE L/MS1(SW)-USN/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/CFAY SECURITY/46193 |
| E | DUDLEY, KEITH/MS1(SW)-USN/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/CFAY SECURITY/46193 |
| | |
| | |
| | |

039

OPNAV 5527/1 (12-82) Page 1 of 4 pages     S/N 0107-LF-055-2705     FOR OFFICIAL USE ONLY (When filled in)

17. DETAILS OF INCIDENT (Who, what, when, where, how, why? Attach relevant statements.)

## SUMMARY OF EVENTS
## STATEMENT BY EN2(SW) HOGUE

On or about 0320, 08OCT97, MORTIMER (DISPATCHER) received a telephone call from BAKER (POST #2 SENTRY) reporting a possible Driving Under the Influence (DUI) at inbound vehicle lane, Main Gate, FAY. HOGUE (MP), PINE (MP), HARRIS (MP) were dispatched.

Upon arrival HARRIS met with BAKER who verbally stated on or about 0315, 08OCT97, while standing Guard Duty at the Main Gate post #2, FAY, he observed a black male later identified as EDWARDS driving a vehicle proceeding inbound through the Main Gate and stopped the vehicle to check his I.D. card. BAKER verbally stated when EDWARDS opened his car door he detected a strong odor of an alcoholic beverage emitting from EDWARDS's breath. BAKER stated he told EDWARDS to stop his vehicle and then remove the keys from the ignition.

On or about 0305, 08OCT97, HOGUE and HARRIS placed EDWARDS Under Military Detainment for suspicion of Driving Under the Influence of an Alcoholic Beverage and conducted a Search Incident to Detainment with negative results and transported EDWARDS to MPHQ for further processing.

On or about 0307, 08OCT97, HOGUE advised EDWARDS of his Authorization for Alcohol Content testing to which EDWARDS Acknowledged and consented to EC/IR-5000 testing resulting in a .08% BAC.

On or about 0351, 08OCT97, HARRIS met with BAKER who stated on or about 0315, 08OCT97, an unknown male later identified as EDWARDS was driving his vehicle proceeding through the Main Gate, FAY, at which time BAKER stopped EDWARDS to request his I.D. card. BAKER stated EDWARDS opened his car door to show his I.D. when BAKER smelled a distinct odor of an alcoholic beverage emitting from the breath of EDWARDS. BAKER confiscated EDWARDS I.D. card and removed the car keys from the vehicle's ignition and notified Coporal of Guard (COG) who

17. DETAILS OF INCIDENT (Who, what, when, where, how, why?  Attach relevant statements.)

notified CFAY Security.

On or about 0400, 08OCT97, ADAIR (CFAY CDO) notified EDWARDS of suspension of Driving Privileges.

On or about 0408, 08OCT97, PINE administered EDWARDS cleansing warning to which he acknowledged.

On or about 0410, 08OCT97, PINE advised EDWARDS of MIRANDA rights to which he acknowledged and desired to remain silent.

On or about 0413, 08OCT97, EDWARDS was released to DENIGHT (CFAY MWR Athletic Director) via DD FORM 629.

NOTIFICATIONS:

SECTION CPO: GSMC MCKENZIE NOTIFIED AT 0320, 08OCT97.
CDO: YNCS ADAIR NOTIFIED AT 0350, 08OCT97.
OPS: MACS R. YOUNG NOTIFIED AT 0600, 08OCT97.
SO: LT DUPLAYEE NOTIFIED AT 0730, 08OCT97.

08OCT97-46193-0030-7T1

**18. ENCLOSURES (Statements and receipts)**

1. VOLUNTARY STATEMENT OF BAKER.
2. AUTHORIZATION FOR ALCOHOL TESTING OF EDWARDS.
3. COPY OF ECD OF EDWARDS EC/IR-5000 RESULTS.
4. ALCOHOL INFLUENCE REPORT OF EDWARDS.
5. CIVILIAN SUSPECTS ACKNOWLEDGEMENT OF RIGHTS.
6. USE OF FORCE OF EDWARDS.
7. DD FORM 629 OF EDWARDS.

**19. EVIDENCE (List and describe)**

SEE ENCLOSURES

**20. REFERRED TO**

[x] Patrol    [ ] Investigations

[ ] NIS       [x] File

[ ] Other Agency (specify)

**21. DISTRIBUTION**

ORIG: COMMANDING OFFICER

COPY 1: NISQ NCISHQ/NCISRA

COPY 2: CFAY LEGAL

COPY 3:

COPY 4:

**22. REPORTING OFFICIAL TYPED NAME, RANK/TITLE & SIGNATURE**

HOGUE, KENNETH A/EN2-USN/PATROLMAN

**23. APPROVING OFFICIAL TYPED NAME, RANK/TITLE & SIGNATURE**

YOUNG, ROBERT H/MACS(SW)-USN/OPERATIONS OFFICER

**24. REPORT OF ACTION TAKEN**
(To be completed by the addressee when so indicated in block 7.  Return one copy to originator to meet suspense data indicated in block 6.)

a. FROM

b. DATE

c. TO

d. VIA

e. SUBJECT

f. RANK

g. SSN

| h. ACTION TAKEN | [ ] ADMINISTRATIVE | [ ] NON-JUDICIAL | [ ] JUDICIAL |
|---|---|---|---|

i. DATE ACTION COMPLETED

j. DETAILS (Specify type administrative action taken, non-judicial punishment imposed, or judicial results as applicable.)

(For multiple subjects use additional page(s) to reflect action taken.)

k. TYPED NAME AND TITLE

l. SIGNATURE

OPNAV 5527/1 (12-82) Page 4 of 4 pages          S/N 0107-LF-055-2705          FOR OFFICIAL USE ONLY (When filled in)

DEPARTMENT OF THE NAVY

# VOLUNTARY STATEMENT

I, BAKER, CHAD JAMES/LCPL-USMC/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/MARINES , make the following

free and voluntary statement to MS1(SW) ANDRE L. HARRIS

whom I know to be _____ MILITARY POLICE _____.

I make this statement of my own free will and without any threats or promises extended to me. I fully understand

that this statement is given concerning my knowledge of DRIVING DUI/DWI

For the purpose of identification, I am a ___C___ , MALE , born on
22 AU177 in GALION, OH . I am 6'2" tall and weigh 170 lbs.
I have BRN hair and BLU eyes. I have the following identifying marks:
NONE . I currently reside at BLDG#1580 RM 231
My home telephone number is ___-___ and my work extension is 243-5343
My initials are CJB .
I am the Family Member (Husband/Wife/Son/Daughter) of _____,
(His/Her) SSN is ___-___-___. (His/Her) Rate/Rank is _____, and is
assigned to _____

CJB On or about ∅315 on 8 Oct 97, a male came through
Carney's gate, I stop him to check his I.D.
Carney
He had to open his door in order to show
me his I.D. When he did so I smelled a
distinct odor of Alcohol. I took his I.D.
card, then took his Keys out of his car.
Then notified my C.O.G. & he pulled the car
over. The C.O.G. then took control of the
situation. The C.O.G. then notified CFAY security. CJB

End of Statement

Chad J Baker

INITIALS: CJB

PAGE 1 OF 2



END OF STATEMENT

Chad J Baker

THE ABOVE STATEMENT CONSISTS OF 2 PAGES, HAND WRITTEN BY ME IN THE PRESENCE OF
NIS(SW) HARRIS (MP), AS WE DISCUSSED ITS CONTENTS. I HAVE BEEN GIVEN
THE OPPORTUNITY TO MAKE ANY CHANGES I SO DESIRE. THIS STATEMENT IS THE TRUTH TO
THE BEST OF MY KNOWLEDGE AND BELIEF.

SUBSCRIBED AND SWORN TO BEFORE
ME AT Softwack, FPU .

UCMJ ART. 136(b)(4)

_____
SIGNATURE (MP)

18 OCT 07 / 0411
DATE/TIME

INITIALS: CSB

CHAD J BAKER
PRINTED NAME

_____
SIGNATURE

970810 0410
DATE/TIME

PAGE 2 OF 2

# AUTHORIZATION FOR ALCOHOL TESTING CONTENT

Pursuant to OPNAV 11200.5 series, "Persons accepting installation driving privileges shall be deemed to have given consent to evidential testing for alcohol or other drug content of their blood or breath if lawfully stopped, apprehended, or cited for any offense allegedly committed while driving a motor vehicle on the installation while under the influence of intoxicants."

Additionally, "immediate suspension of driving privileges pending resolution of an intoxicated driving incident is authorized for active duty military personnel, family members, retired members, DOD civilian personnel regardless of geographic location."

Refusal to submit to an alcohol test for an incident occuring on base will result in automatic revocation of driving privileges for two years. Refusal to submit to alcohol test for an off-base incident will result in immediate suspension of driving privileges pending resolution by the traffic magistrate. If found to be driving under the influence of alcohol at traffic court, driving privileges may be suspended for two years.

You do not have the right to have an attorney present before stating whether you will submit to or during the test.

---

The above has been explained to me. I fully understand its contents and consequences for not complying.

JERRY J EDWARDS
Print name

*Signature:* _Jerry J Edward_   10/6/97 0306
Signature                         Date/Time

## TESTING SECTION

I elect the following method of testing:

a. _JJE_  Intoximeter

b. _____  Blood Alcohol Content (blood test) -- Peformed at USNH

c. _____  I do not desire to continue with testing.

\* Initial desire _JJE_   Signature: _Jerry J Edward_   Date/Time: _06/10/97 0307_

## CERTIFICATION OF REFUSAL

I hereby certify under the penalty of perjury that the above named individual was asked to submit to a test to determine the alcohol and/or drug content of blood, and was warned as set forth above and refused to submit to such test(s).

_Kenneth D. Hogue_  EW2(sw)   )08OCT97/0348
Patrol Officer signature

| Suspect Name: | SSN: | Rank/Rate/Civilian equivalent: |
|---|---|---|
| EDWARDS, JERRY JEROME | 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 | WG01 |

| Command: | Advised By: | Date: | Time: |
|---|---|---|---|
| MWR | Hogue, K. EW2-USN | 08OCT97 | 0308 |

| Intoximeter Operator: | | Witness: | |
|---|---|---|---|
| | | | |

| CCN: | Time Started: | Time Comp: | |
|---|---|---|---|
| | | | |

CFAY 5580/1 (Rev. 6-97)

# EVIDENCE/PROPERTY CUSTODY RECEIPT

DEPARTMENT THE NAVY

CASE CONTROL NUMBER(CCN)
ITA-030-CFAY-DRGB5

| | |
|---|---|
| **2. RECEIVING ACTIVITY** CFAY SECURITY DETACHMENT | **3. LOCATION** YOKOSUKA, JAPAN |

**4. NAME, GRADE AND TITLE OF PERSON FROM WHOM RECEIVED**

[X] OWNER  EDWARDS  JERRY J.
NGO1-CIV
[ ] OTHER  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

**5. ADDRESS (Include ZIP code)**
CFAY MWR

**6. WORK PHONE**
243

**7. LOCATION OF PROPERTY WHEN OBTAINED**
ARCT TIME BREATH OF EDWARDS, JERRY NGO1-CIV WHILE INSIDE 3 MASSIST JOYTMI, JAPAN

**8. PURPOSE FOR WHICH OBTAINED**
[ ] FOUND  [ ] IMPOUNDED  [X] EVIDENCE  [ ] OTHER

**9. TIME/DATE OBTAINED**
0335/08OCT07

**10. LOG NUMBER**

| 11. ITEM | 12. QUANTITY | 13. DISPOSAL ACTION | 14. DESCRIPTION OF ARTICLE—MODEL NUMBER, SER. NO., IDENTIFYING MARKS, CONDITION, AND VALUE WHEN APPROPRIATE |
|---|---|---|---|
| A | 1 | | INTOX EC 11 TEST #0970008695 OF EDWARDS, JERRY J. RESULTING A .08% BAC. TEST MARKED IN THE LOWER RIGHT CORNER WITH "0335/08OCT07 MJP" FOR IDENTIFICATION |
| | | | LAST ITEM |

**15. NAME AND SIGNATURE OF WITNESS (If available)**
HOGUE  KENNETH  RN2(SW)

**16. NAME AND SIGNATURE OF RECEIVING PERSON**
PINE, MICHAEL  STG2(SW)

## 17. CHAIN OF CUSTODY

| ITEM | DATE & TIME | RELEASED BY | RECEIVED BY | PURPOSE |
|---|---|---|---|---|
| A | 0346 08OCT07 | **NAME** PINE, MICHAEL<br>**ORGANIZATION** CFAY SECURITY<br>**SIGNATURE** | **NAME** EVIDENCE CUSTODIAN<br>**ORGANIZATION** LOCKER, DRAWER #1<br>**SIGNATURE** | TEMPORARY STORAGE AND SAFE KEEPING |
| | | **NAME**<br>**ORGANIZATION**<br>**SIGNATURE** | **NAME**<br>**ORGANIZATION**<br>**SIGNATURE** | |
| | | **NAME**<br>**ORGANIZATION**<br>**SIGNATURE** | **NAME**<br>**ORGANIZATION**<br>**SIGNATURE** | |

# ALCOHOLIC INFLUENCE REPORT

| INSTALLATION | VIOLATION REPORT NO. | ACCIDENT REPORT NO. |
|---|---|---|

| DATE, TIME AND LOCATION OF ACCIDENT OR INCIDENT | DATE AND TIME IN CUSTODY | APPREHENDING OFFICER |
|---|---|---|
| 08 OCT 97 / 0245 / MAIN GATE, FAY | 08 OCT 97 / 0258 | HOGUE EW2 (SW) |

| NAME OF SUBJECT | GRADE/CATEGORY | SSN |
|---|---|---|
| EDWARDS, JERRY JEROME | WG01 / CIV | Z43-21-7110 |

| UNIT OF ASSIGNMENT/ADDRESS | | |
|---|---|---|
| MWR YOKOSUKA JAPAN | ☒ DRIVER ☐ PASSENGER ☐ PEDESTRIAN | |

| AGE | SEX | APPROX WEIGHT | OPERATOR'S LICENSE NO. | STATE |
|---|---|---|---|---|
| 26 | ☒ Male ☐ Female | 175 | | PVIC |

*Check all applicable boxes describing conditions observed, i.e., more than one box may be checked to describe conditions observed.*

## SECTION I - OBSERVATIONS

| MADE BY (Name, grade, SSN & organization) | WITNESSED BY (Name, grade, SSN & organization) |
|---|---|
| HARRIS, ANDRE L. MS1 (SW) CFAY SECURITY | |

**CLOTHES** (Describe type & color)

- HAT OR CAP: N/A
- JACKET OR COAT: N/A
- SHIRT OR DRESS: BLACK T-SHIRT
- PANTS OR SKIRT: BLUE JEANS

| CONDITION ☐ Disorderly ☐ Disarranged | DESCRIBE |
|---|---|
| ☐ Soiled ☐ Mussed ☐ Orderly | |

| **BREATH** | ODOR OF ALCOHOLIC BEVERAGE ☐ Strong ☐ Moderate ☐ Faint ☐ None |
|---|---|

| **ATTITUDE** | ☐ Excited ☐ Hilarious ☒ Talkative ☐ Carefree ☐ Sleepy ☐ Profanity <br> ☐ Combative ☐ Indifferent ☐ Insulting ☐ Cocky ☒ Cooperative ☐ Polite |
|---|---|

| **UNUSUAL ACTIONS** | ☐ Hiccoughing ☐ Belching ☐ Vomiting ☐ Fighting ☐ Crying ☐ Laughing |
|---|---|

| **SPEECH** | ☐ Not understandable ☐ Mumbled ☐ Slurred ☐ Mush mouthed ☐ Confused <br> ☐ Thick tongued ☐ Stuttered ☐ Accent ☐ Fair ☐ Good |
|---|---|

SPONTANEOUS ACTS (Statements, walking, turning, etc)

I WAS NOT DRINKING / I JUST LEFT WORK / I DID NOT DO ANYTHING

| INDICATE BRIEFLY WHAT FIRST LED YOU TO SUSPECT ALCOHOLIC INFLUENCE | SIGNS OR COMPLAINT OF ILLNESS OR INJURY |
|---|---|
| ODOR OF ALCOHOL EMITTING FROM BREATH | ASTHMA |

## SECTION II - PERFORMANCE TESTS (Warning of rights in accordance with separate departmental policy is required for military personnel)

| ADMINISTERED BY (Name, grade, SSN & organization) | DATE & TIME TESTS PERFORMED |
|---|---|

| **BALANCE** | ☐ Falling ☐ Needed support ☐ Wobbling ☐ Swaying ☐ Unsure ☐ Sure |
|---|---|

| **WALKING** | ☐ Falling ☐ Staggering ☐ Stumbling ☐ Swaying ☐ Unsure ☐ Sure |
|---|---|

| **TURNING** | ☐ Falling ☐ Staggering ☐ Hesitant ☐ Swaying ☐ Unsure ☐ Sure |
|---|---|

| **FINGER TO NOSE** | RIGHT ☐ Completely missed | LEFT ☐ Completely missed |
|---|---|---|
| | ☐ Hesitant ☐ Sure | ☐ Hesitant ☐ Sure |

| **COINS** | ☐ Unable ☐ Fumbling ☐ Slow ☐ Sure ☐ Other | BALANCE DURING COIN TEST |
|---|---|---|

| ABILITY TO UNDERSTAND INSTRUCTIONS | EFFECTS OF ALCOHOL ☐ Extreme ☐ Obvious ☐ Slight |
|---|---|
| ☐ Poor ☐ Fair ☐ Good | ☐ None   ABILITY TO DRIVE ☐ Unfit ☐ Fit |

REMARKS

**DD FORM 1920** 1 AUG 73

S/N-0102-LF-068-4800

## DEPARTMENT OF THE NAVY

# CIVILIAN SUSPECT'S ACKNOWLEDGEMENT AND WAIVER OF RIGHTS

Place: MPHQ, FAY

0800CT97 / 0405

I, EDWARDS, JERRY JEROME | 243 21 7110 | WG04 - CIV | CFAY MWR

have been advised by PINK, MICHAEL | STG1-USN | CFAY SECURITY

that I am suspected of DUI / DWI

I have also been advised that:

(1) I have the right to remain silent and make no statement at all.

(2) Any statement I do make can be used against me in a court of law or other judicial or administrative proceeding;

(3) I have the right to consult with a lawyer prior to any questioning. This lawyer may be a civilian lawyer retained by me at no cost to the United States, or, if I cannot afford a lawyer, one will be appointed to represent me at no cost to me.

(4) I have the right to have my retained or appointed lawyer present during this interview; and

(5) I may terminate this interview at any time, for any reason.

I understand my rights as related to me and as set forth above. With that understanding, I have decided that I do not desire to remain silent, consult with a retained or appointed lawyer, or have a lawyer present at this time. I make this decision freely and voluntarily. No threats or promises have been made to me.

Signature: Jerry J Edwards

Date & time: 08 OCT 97 0410

Witnessed: Michael Pink

Date & Time: _____

At this time, I, REFUSE TO MAKE STATEMENT

desire to make the following voluntary statement. This statement is made with an understanding of my rights as set forth above. It is made with no threats or promises having been extended to me.

SECURITY   DEPARTMENT
CODE   1200
FPO SEATTLE 98762

Case Number: _____

The following report will be completed when force is used by Military Police
to affect and maintain the apprehension of a person subject to the UCMJ.

## Person Of Whom Force Was Used

_EDWARDS, JERRY JEROME_   _WG01-04_   _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_   _MWR YOKOSUKA JAPAN_
NAME(Last,First Middle)/          Rate        SSN          Duty Station

Condition of Individual: (  ) Sober     (X) Drinking     (  ) Drunk

Type of Force Used:     (  ) Night Stick          (  ) Fist
                        (  ) Open Hand            (X) Handcuffs
                        (  ) Other(Specify) _____

## Injury Incurred By Individual

Type and extent of Injury: _NONE_ _____

_____

_____

## Reason For Use Of Force

_____

_____

_____

|   | WITNESSES | | | |
|---|---|---|---|---|
| **NAME** | **RATE** | **SSN** | | **Duty Station** |
| _HARRIS, ANDRE L._ | _MS1(SW)_ | _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_ | | _CFAY SECURITY_ |

_____

_Kenneth D. Hogue_ _EN1(SW)_
Signature of MP Using Force

PRINT: _____
         NAME            RATE    SSN        Duty Station

Note:Sworn statements will be obtained from all witnesses.This form
accompanied by all statements will immediately be turned over to the
Military Police Officer of the Day.

CFAY 5510/8 (4-89)

## ICR PRINT FORM

**NAME:**   EDWARDS, JERRY JEROME                     **RATE/RANK:**   WG01

**SPONSOR:**

**SSN:**   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          **COMMAND:**   COMFLEACT MWR

**DATE:**   11/13/97                **CASE #:**   332

**OFFENSE:**   SIMPLE ASSAULT

**SUSPECT:**   Yes               **VICTIM:**   No          **VWAP:**                    No




Date: 20 Nov 97
JPS Case No: 51

From: Security Officer, U. S. Fleet Activities, Yokosuka
To: Chief of Yokosuka Branch, Yokohama District Public Procurator Office

Subj: NOTIFICATION OF COMMISSION OF ALLEGED OFFENSES BY MEMBER OF U. S. ARMED FORCES

| Name | Rank | SSN/IDN | Age | Command Org/Spr | Nat/Sex |
|------|------|---------|-----|------------------|---------|
| EDWARDS, Jerry J. | WG-01 | 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 | 26 | MWR | AME/M |

## Nature of Offenses
Inflicting bodily injury - Violation of Art. 204, Penal Code of Japan.

## Type of Offenses
___ Minor: Offenses specified in Category A., No. 4 Criminal Jurisdiction Matter agreed to by the Criminal Panel, Jurisdiction Sub-Committee
XXX Major: Offenses specified in Category B., of the same

## Summary of Offenses
The suspect, at approximately 0400 hours, 11 Nov 97, in the hallway inside Bar Custom, located at #1-5 Honcho, Yokosuka city, Kanagawa prefecture, did see Keiko Komatsu (22 yrs. old), whom he had been associated with, at which time, became infuriated at her for calling to his cellular phone and saying "I was seeing him before" and or words to that effect to a Japanese female who has answered the call. The suspect did push the said individual down and did assault her by kicking numerous times in the face, chest and other area, thereby, inflicted injuries to the said person, contusions to the right knee, chest and the neck area, requiring approximately two (2) weeks of medical attention.

## Detention
Date: 20 Nov 97     Place: Yokosuka JPS     Organization: Yokosuka JPS

Note:

## Request
This constitutes written notification in accordance with Agreed View No. 40, Criminal Jurisdiction Sub-Committee approved by the Joint Committee. Request that an indictment not to be made in this case.

Translator's note: The above written notification, dated 20 Nov 97, issued by the Yokosuka Police Station and handled by Assistant Inspector Fumio Endo was received by this office on 21 Nov 97.

CERTIFIED TO BE A TRUE TRANSLATION:

_____
TSUYOSHI TAKAHASHI, LIAISON OFFICER

_____
D. D. DUPLAYEE, LT, USN

## Receipt
Above written notification received at _____ hours, _____ 1997.

CFAY Form 5527/1 (2-89)

Procurator
Enclosure (1) Case No. 94-97

| | DEPARTMENT OF THE NAVY<br><br>**DESK JOURNAL**<br><br>COMFLEACT YOKOSUKA | 1. PAGE NUMBER<br>1 of 1 |
|---|---|---|
| | | 2. DATE<br>1999/01/11 |

| 3. ENTRY | 4. TIME | 5. INCIDENT (Who, what, when and where) | 6. ACTION TAKEN |
|---|---|---|---|
| 001 | 0115 | COMMUNICATING A THREAT/DRUNK AND DISORDERLY<br>SUBJECT: EDWARDS, JERRY JEROME/GS12-CIV/<br>243217110/SRF/15JUL71/SANFORD, NC/M/B/6'1"/<br>175/BLK/BRN<br>VICTIM(FSP): MEBANE, DARNELL CHARLES/OS3-USN/<br>056744584/USS CHANCELLORSVILLE/19AUG78/<br>BROOKLYN, NY/M/B/6'0"/175/BRN/BRN<br>COMPLAINANT(FSP): COLLINS, DANIEL LOYD/AMH1-<br>USN/506902010/USS KITTY HAWK<br>TIME/DATE: 0110/11JAN99<br>LOCATION: IN FRONT OF BAR TENNESSEE, HONCHO<br>#1, YOKOSUKA<br>DETAILS: SUBJECT WAS OBSERVED BY VICTIM AND<br>COMPLAINANT WALKING DOWN THE STREET WITH AN<br>OPEN BOTTLE OF BEER. VICTIM INFORMED THE<br>SUBJECT THAT HE COULD NOT HAVE AN OPEN<br>CONTAINER ON THE STREET AND ASKED THE SUBJECT<br>FOR HIS ID CARD. SUBJECT SAID "FUCK NO, I'M<br>NOT GOING TO SHOW YOU MY ID CARD I'M A<br>CIVILIAN, GO FUCK YOURSELF", OR WORDS TO THAT<br>EFFECT. COMPLAINANT RADIOED FOR ASSISTANCE.<br>MP'S ARRIVED ON SCENE AND DETAINED SUBJECT<br>AND TRANSPORTED HIM TO MPHQ. SUBJECT REMAINED<br>BELLIGERENT THROUGHOUT PROCESSING AND REFUSED<br>EC/IR-5000 TESTING. SUBJECT REFUSED TO<br>PROVIDE A WRITTEN OR VERBAL STATEMENT.<br>SUBJECT WAS RELEASED TO SRF CDO VIA DD FORM<br>629.<br>Incident # 994619300084 | (TOMMAS/PEDRO)<br>WATCH SUP, AOPS,<br>CDO<br>(YOKOSUKA) |

1. FROM: SECURITY OFFICER, COMFLEACTS YOKOSUKA, JAPAN

2. TO: COMMANDER, FLEET ACTIVITIES YOKOSUKA, JAPAN

3. VIA:

| 4. CASE CONTROL NUMBER (CCN) 13NOV97-46193-0332-7G2 | 5. DATE SUBMITTED TO ADDRESSEE: | 6. RETURN TO POLICE ADMIN NOT LATER THAN: |
|---|---|---|

7. TYPE REPORT: [x] Info (No reply required)  [ ] Supplemental (No reply required)  [ ] Report of Action (See page 3)

8. INCIDENT/COMPLAINT (Specify type and location)

SIMPLE ASSAULT  LOC: BAR CUSTOM'S, HONCHO I, YOKOSUKA

| 9. WHEN & HOW RECEIVED | Hour 1200 | Date 13NOV97 | [ ] Crimestop Call [ ] In Person [ ] By Telephone [x] By Radio [ ] By Mail |
|---|---|---|---|

10. INVOLVEMENT
[ ] Drugs [x] Alcohol [ ] BBP [ ] Weapons [ ] Vehicle [ ] VWAP

| 11. ASSUMED BY NIS? [ ] Yes [x] No [ ] N/A | 12. HOUR 0400 | 13. DATE 10NOV97 |
|---|---|---|

14. RECEIVED BY (Typed or printed name, rank and position)

GALANG, DANILO/MR1-USN/DISPATCHER

15. TYPE OF INCIDENT
[ ] Misdemeanor    [ ] Felony
[x] Complaint    [ ] Military Offense [ ] Traffic

16. PERSONS RELATED TO REPORT (Continue on Page 2 or add pages, if necessary)
(Insert appropriate category letter before each name)  A-SUSPECT  B-VICTIM  C-COMPLAINANT  D-WITNESS  E-POLICE  F-SPONSOR

| CATEGORY (See above) | NAME/RANK&BRANCH/SSN/DUTY STATION/UIC (Enter on line 1 for all categories)  DPOB/SEX/RACE/HEIGHT/WEIGHT/HAIR/EYES/IDENTIFYING MARKS (Enter on line 2 for suspects and victims) |
|---|---|
| A | UNKNOWN//UNK |
| B | KOMATSU, KEIKO/JN-CIV/UNK/6-4-23 HIRASAKU, YOKOSUKA |
|   | 13FEB75  YOKOSUKA, JA/F/A/5'7"/135/BLK/BRN/ |
| D | KAWANA, MISATO/JN-CIV/UNK/1-11-11 OHTAWA, YOKOSUKA |
| E | FIRKINS, SPENCER/BM3-USN/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/CFAY SECURITY/46193 |
| E | FRYE, GREGORY/STG2-USN/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/CFAY SECURITY/46193 |
| E | HERRINGTON, JAMES L/EM3-USN/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/CFAY SECURITY/46193 |
|   | |
|   | |
|   | |
|   | |

332

17. DETAILS OF INCIDENT (Who, what, when, where, how, why?  Attach relevant statements.)

SUMMARY OF EVENTS
WRITTEN BY: STG2 FRYE


On or about 1200, 13NOV97, GALANG (DISPATCHER) received a radio transmission from HERRINGTON (MP) reporting an individual was at the Main Gate, FAY complaining she was assaulted by an unknown black male at Bar Custom's, Honcho I, Yokosuka. FRYE (MP), FIRKINS (MP) and SATOH (LIAISON) were dispatched.

On or about 1245, 13NOV97, SATOH met with KOMATSU who stated on or about 0400, 10NOV97, an unknown black male known to her as "Jay" pushed her to the ground and he then kicked her in the face and head over six (6) times. KOMATSU further stated that someone held "Jay" and then let him go and he kicked her again. KOMATSU described "Jay" as a black male, approximately 5'11" tall and 160 lbs.

On or about 1250, 13NOV97, KOMATSU verbally stated she reported this to YOKOSUKA JPS. AI ENDOH (YOKOSUKA JPS) assumed jurisdiction.

NOTIFICATIONS:
SECTION CPO: MAC HARTWICK notified at 1300, 13NOV97.
AOPS: MACS CHAPMAN notified at 1310, 13NOV97.
OPS: MACS YOUNG notified at 1311, 13NOV97.
CID: MA1 MARTINEZ notified at 1330, 13NOV97.
CDO: EOCS MARTINEZ notified at 1600, 13NOV97.
SO: LT DUPLAYEE notified at 1630, 13NOV97.

18. ENCLOSURES (Statements and receipts)

   1. BILINGUAL JAPANESE STATEMENT (TWO PAGES).

19. EVIDENCE (List and describe)

   NONE.

20. REFERRED TO

[x] Patrol    [x] Investigations

[ ] NIS    [x] File

[ ] Other Agency (specify)

21. DISTRIBUTION

   ORIG: COMMANDING OFFICER

   COPY 1: NISQ NCISHQ/NCISRA

   COPY 2: CFAY LEGAL

   COPY 3:

   COPY 4:

22. REPORTING OFFICIAL TYPED NAME, RANK/TITLE & SIGNATURE

*Gregory Frye*

FRYE, GREGORY/SFG2-USN/PATROLMAN

23. APPROVING OFFICIAL TYPED NAME, RANK/TITLE & SIGNATURE

*R H Young*

YOUNG, ROBERT H/MACS(SW)-USN/OPERATIONS OFFICER

24. REPORT OF ACTION TAKEN
(To be completed by the addressee when so indicated in block 7. Return one copy to originator to meet suspense data indicated in block 6.)

a. FROM

b. DATE

c. TO

d. VIA

e. SUBJECT

f. RANK

g. SSN

h. ACTION TAKEN

[ ] ADMINISTRATIVE*

[ ] NON-JUDICIAL

[ ] JUDICIAL

i. DATE ACTION COMPLETED

j. DETAILS (Specify type administrative action taken, non-judicial punishment imposed, or judicial results as applicable.)

(For multiple subjects use additional page(s) to reflect action taken.)

k. TYPED NAME AND TITLE

l. SIGNATURE

| PLACE 作成場所 | DATE 作成年月日 | FILE NO. ファイル ナンバー |
|---|---|---|
| MPHq, FAY | 13 Nov 97 | |

| DEPONENT (First Name - MI - Last Name)　氏名 | NATIONALITY 国 籍 | DATE OF BIRTH 生年月日 | SEX 性別 |
|---|---|---|---|
| Keiko KOMATSU | Japanese | 13 Feb 75 | F |

| PRESENT ADDRESS 現住所 | PERMANENT DOMICILE 本籍 |
|---|---|
| 6-4-23 Hirasaku, Yokosuka | Yokosuka |

ARTICLE 38 OF THE CONSTITUTION OF JAPAN HAS BEEN READ TO ME AND MY RIGHTS THEREUNDER HAVE BEEN EXPLAINED TO ME BY INVESTIGATOR STG2 FRYE _____ THROUGH INTERPRETER Liaison Officer SATOH _____ AND THAT HE IS CONDUCTING AN INVESTIGATION OF ____ assault ____ OF WHICH I AM ~~ACCUSED (SUSPECTED)~~ (WITNESS) (Strike out if not applicable). THE FOREGOING HAVING BEEN EXPLAINED TO ME AND UNDERSTOOD BY ME. I VOLUNTARILY STATE AS FOLLOWS:

捜査官 _____ により、通訳 _____ を通じて 私は日本国憲法第三十八条及び同条にもとずく私の顧利別について説明をうけました。又この 陳述書は 事件の捜査に関して作成されるものであり、私が当事件の報告、福告者又は証人(不適当なら部分は消せ)であると説明 をうけました。以上の説明をうけて了解いたしまして、私は任意、次の陳述を行います。

　　　　On or about 0400, 11Nov97 (Mon), I was drinking with my friends at Bar Custom in Honcho. Alias name JAY was at the Bar so we had a drink with him since I know him. In the meantime, he (JAY) disappeared, so I thought he already left and went outside to look for his car and it was there. when I called JAY on his cellular phone, at first JAY answered the phone and hung up, so I called again and at that time a lady answered the phone talked to her for a little while and hung up. After that JAY came back to the Custom and after he squawked to me (in English), he pushed me at the entrance of the Custom and kicked me in the face, head and so forth over 6 times hard when I fell down. Other person stopped JAY, but when the person let him go he started to kick me again.　　　　　　　　　END OF STATEMENT

　　　　　　　　　/s/ Keiko Komatsu
　　　　　　　　　11 Nov 1997

THE TRANSLATION OF THE FOREGOING STATEMENT FROM JAPANESE INTO ENGLISH IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

　　　　　　　　　MASAHIRO SATOH
　　　　　　　　　Liaison Officer
　　　　　　　　　Security Det.,
　　　　　　　　　FLEACT Yokosuka

EXHIBIT 証 拠 記 号

| PAGE 頁　1 | OF | PAGES |
|---|---|---|

Continuation sheets will be headed "Statement of _____ Taken At _____ Continued."
Bottom of continuation sheets must be identified as "Page _____ of _____ Pages."

# BILINGUAL JAPANESE STATEMENT　　陳述書

| | | |
|---|---|---|
| PLACE 作成場所　Gurad Shack FA1 | DATE 作成年月日　13 NOV 97 | FILE NO. ファイル　ナンバー |
| DEPONENT (First Name - MI - Last Name) 氏名　小松 敬子 | NATIONALITY 国籍　日本 | DATE OF BIRTH 生年月日　50.2.13　SEX 性別　女 |
| PRESENT ADDRESS 現住所　横須賀市平作6-4-23 | PERMANENT DOMICILE 本籍　横須賀 | |

ARTICLE 38 OF THE CONSTITUTION OF JAPAN HAS BEEN READ TO ME AND MY RIGHTS THEREUNDER HAVE BEEN EXPLAINED TO ME BY INVESTIGATOR ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿ THROUGH INTERPRETER ＿＿＿＿＿＿＿ AND THAT HE IS CONDUCTING AN INVESTIGATION OF ＿＿＿＿＿＿＿＿

OF WHICH I AM (ACCUSED) (SUSPECTED) (WITNESS) (*Strike out if not applicable*). THE FOREGOING HAVING BEEN EXPLAINED TO ME AND UNDERSTOOD BY ME. I VOLUNTARILY STATE AS FOLLOWS:

捜査員 ＿＿＿＿＿＿＿＿＿＿＿＿ により、通訳 ＿＿＿＿＿＿＿＿＿＿＿＿ を通じて
私は日本国憲法第三十八条及び同条にもとずく私の黙秘別について説明をうけました。又この
陳述書は
事件の捜査に関して作成されるものであり、私が当事件の被告、被疑者又は証人（不適当なる部分は消せ）であろうと説明
をうけました。以上の説明をうけて陳いたしまして、私は任意、次の陳述を行います。

1997年11月11日（月）早朝 4:00ごろ
本町バー カスタムで 友人と 飲んでいました
通称 JAY がカスタムにいて 知り合いなので 一緒に 飲んで
たところ 彼（JAY）が いなくなったので 帰えったのかと
思い 外に 車を見に行ったら あったので JAY のけいたいに
TELしたところ 最初に JAY がでて 切られ 他の女の人が
出て 少し話して TELを切ったあと カスタムに　もう一度かけたら (K.K)
一方的にもんくを言われたあと　カスタムの通路でおされ
（英語）　JAY がもどってきて
私が ゆかにたおれたところ 足で 頭 顔 など ●●●回 以上
ゆたり 強く けられた。他の人が JAY をとめたけど ●●●をはなし (K.K)
たとき また けりはじめた。
以上
小松 敬子 1997年11月13○

| | | |
|---|---|---|
| EXHIBIT 証拠番号 | PAGE 頁　1　OF　PAGES | |

*Continuation sheets will be headed "Statement of ＿＿＿＿ Taken At ＿＿＿＿ Continued."*
*Bottom of continuation sheets must be identified as "Page ＿＿＿ of ＿＿＿ Pages."*

USARJ FORM 73EJ 19 JUL 62　REPLACES USARJ FORMS 73 AND 73-1. 18 FEB 58. WHICH MAY BE USED.　(USARJ Reg 195-10)

NO LICENSE     DUI/DWI

| [Name] | [Rate] | [Grade] | [Branch] | [SSN] |
|---|---|---|---|---|
| Edwards, Jerry J. | WG1 | CIV | DOD | 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 |

[Duty Station]
MWR
 Division

 Duty Address
PSC 473 BOX 1
FPO AP 96349-1100

[Phone]

[Liability Company]
MITSUI

[Exp]
4/12/98

[PRD]

[JCI Company]
NISSAN

[Exp]
10/19/97

[Drivers License]
 #
Exp

[JN Insp]
9/21/97

[Base Insp]
9/21/97

[License]
58Y0786

[YR]
88

[Make]
NISSAN

[Color]
LT.BRN

[USFJ]
01948

[Issue Date]
4/2/97

[Local Residence]

Phone:

[VIN]
HR31169617

[Model]
SKYLINE

[BTP]
4dr

Expired!: JCI   Japanese Inspection   Base Inspection
Expired!: JCI   Japanese Inspection   Base Inspection

Name: Jerry J. Edwards
 Lic: 58Y0786

Date Entered    9/3/96          12:04
Last Updated    4/8/97          9:48
To Dead File

| Authorized Drivers | | |
|---|---|---|
| Driver | Relation | DL Number |
| RUMIKO N. | WIFE | C963093 |

[Disposition]
Initial Registration?:N
Send to Dead File?:N
Transfer of Registration?:N
Mark as Abandoned?:N
Junk to JN?:N
Mark for 45 Day Letter?:N

[STATUS]
PMO: YOKOSUKA
Status: CURRENT

Abandoned:
 Location:
 Date:
45 Day Ltr:
 Expires:

Note: 96tax# 201159   transfer fm jn
      MUST DEREG ONE VEH.

Len:
Count:
Space:
Comp1: 1997/09/211997/09/211998/04/121997/10/191997/04/020194858Y0786
Comp2: 1997/09/211997/09/211998/04/121997/10/191997/04/020194858Y0786
Comp3: 01948
Comp4: 01948
Last Four: 0786
Del:



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003/L- 125
4 Feb 99

From:  Commander Fleet Activities, Yokosuka
To:    Mr. Jerry J. Edwards, GS-12, 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

Subj:  APPEAL/RECONSIDERATION OF DEBARMENT

Ref:   (a) Your appeal ltr of 25 Jan 99
       (b) COMFLEACT Incident Report 994619300084

1.  After careful consideration of references (a) and (b), I find
conclusive evidence exists that you were drunk and disorderly
and communicated a threat to a member of Fleet Shore Patrol.

2.  Reference (a) does not present any compelling evidence that
requires the retraction of your debarment.  Your appeal is
therefore denied.

J. M. WYLIE

25 January 1999

TO: Commander Fleet Activities Yokosuka
VIA: C FAY legal
FROM: Jerry Jerome Edwards
Subj: Appeal / Reconsideration of Debartment

Commander Yokosuka base I am requesting a reconcideration of a debartment that was issued to me on about 22 January 1999. The debartment was issued due to an incident that occurred on 10 January 1999 on about 0130 Am. Sir I was off base at the time of the incident. I was leaving a bar custom were a fight was about to break with some sailors. So my Japaneese friend and I left the bar so we wouldnt be caught into the confientation that was about to occurr. So we left and I had a bottle of beer in my hand so I left with it WE walked out of the bar and went towards Route 16. I got as far as bar Tennessee and I was explaining to my Japaneese friend about what was going on inside bar custom. As I was explaining to her what was going on I told "fuck the Kitty Hawk because they was in the bar causing trouble. About this time a third class peHy officer from the Kitty Hawk step to me and replied "what you say, what You Say" and I Replied to him "I am Not talking to you, I am talking to the lady. The third Class replied again "what you say, what you say" So Then I Replied again "I am not talking to you" the third Class replied I will call Security. THI Japaneese friend went

over to the third class and tried to explain to him that I was talking to her and not him. Then my friend ask the third class to let me go. Then security comes up and talk to the third class, then they came to talk with me. Security asked me to pour out my beer and I did so with no hesitant. I told security that if the third class had a personal problem with me, he should get with me when he is not in uniform and not to use his uniform of a way of retaliation. Then security told me that they have to handcuff me and take me to the station. After I got to the station I asked on of the security guys why I was there and why I am still in handcuffs. The security guy says that the third class told them that I threaten him and so I will be charged with communicating a threat. I stayed at the station in handcuffs for about 15 minutes and I was released to SRF duty officer. Sir I am in Japan because I have family here and responsibility here. It is documented at CID that I have had some problems with the Kitty Hawk sailors. I am not tring to be for the base, I just want to work and support the people in uniform because I wore that uniform for almost eight years. I know it is not easy. My friend name is KIE and she can witness what is written he phone number is 090-9-683-1687 for futher information. Sir I took my job seriously because I rely on the base and my family rely on the base. I was wrong for putting myself in that perdicument and being too outspoken in the present of security and I apologize for my stupid mistake but I promise you I will avoid these types of mistake. without being able to work on base and use the base I am useles

to my family and that is all I have to standby
me and support me. I am asking that you will
reconsider my debartment and allow me to go
back to work with MWR and have sporsorship
by your base and I can set a good example to the
locals of U.S. Navy personnel and civilian personnel.
All reconsideration will be appreciated by my family
and escpecially by my self because it will allow me
to work and have access to your base and
facilities. Once again I apologize for my mistake
and my actions.

Thanks Alot

V/R JERRY. J. Edwards
Jerry J Edward
243-2?-7110
0468-571030 / 090-4 4?-7334



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003/L-152
12 Feb 99

FIRST ENDORSEMENT on JERRY JEROME EDWARDS ltr of 4 Feb 99

From:  Commander Fleet Activities, Yokosuka
To:    Commander, U.S. Naval Forces, Japan

Subj:  APPEAL/RECONSIDERATION OF DEBARMENT

Ref:   (a) COMFLEACT Yokosuka ltr 5532 Ser 003H/L-053 of 20 Jan
           99
       (b) COMFLEACT Yokosuka ltr 5532 Ser 003/L-125 of 4 Feb 99

1.  Forwarded recommending no action.

2.  As evidenced by references (a) and (b), this matter was
investigated and adjudged as a matter under my cognizance.  No
evidence of misconduct by COMFLEACT Yokosuka personnel was
found.

J. M. WYLIE

4 FEBUARY 1999

TO: Commander Naval Forces Japan
VIA: Commander Fleet Activities Yokosuka
FROM: Jerry Jerome Edwards
SUBJ: Appeal/Reconsideration of Debartment.

SIR, I feel that I shouldn't be debared
from the base because I have not caused any
violation or comitted any violations on Yokosuka base.
Any incident that occurred with me was not on
the base it was always away from the base and
not affiliated with the base. As an civilian I have
not been to a hearing for any incident that
was affiliated with me. I know that the base Captain
have the right to say who comes and goes on the
base, but I don't understand why I was never
sent to any hearing, I was just straight debared
from base within a week and a half. The reason and
only reason I can come up with is that Master
Chief Steven Moore at security has a personnal
vandeta against me and he is useing his power
and authority to harrasse me and be bais/descremative
against me. I don't know him nor have I saw him. The
reason I feel he being this way towards me is
that in the year of 1998 he stopped me from being
employed on base by MWR, NEX even thouth I was
selected for a position. I was told by numerous of
Chiefs and Senior Chiefs that was station with him
on USS Indy that he is a racist. I also have
statement for these chiefs and Senior Chiefs that I
will put in my package to Washington and my

state side lawyer, along with NAACP. It is not fair to me and my family to have to deal with people like this. Master Chief is trying to make my family and my life misarable. RIGHT Now it is. I feel he need to be investigated for his actions and personnal feeling which is interferring with his professional job. I am a Gulf war Veteran and I don't need to be treated like this. I am on medication that I have to take the rest of my life and he think I shouldn't be on base. I will take this too the top for Results. I am loosing money every day I am off that base. I have been in Japan for almost ten years and I have NEVER been treated like this by Yokosuka base, until Master Chief Steven Moore became the Assistant Security Officer. I got out of the Navy July 12 1997 and I came back to reside with my family Aug 11 1997 and I was hired through HRO September 10 1997 with no problems, The Reason there was no problem is because Master Chief Steven Moore was not at security doing security checks for civilians. But every since he got Kicked off the USS Indy and came back to security for his second tour I have had problems with security and every thing is inisiated by him. I am overseas is true but I am Still American voter and tax payer, but I am being treated like I am a nobody by Yokosuka base especially by Master Chief Steven Moore. Master Chief Steven Moore had threaten me before by saying he will KICK me off HIS base on November 1998 on about 13:30. This is noted in an EEO complaint which was filed by me at HRO to MRS WANDA

Watson-Young, which I have copies of. Master Chief Moore also told Jackie Wise at MWR personnel to tell me that e-mailing and writing my congressman would not help this time. The reason he said this is because I e-mail my congressman on the way I am being harrassed and being discriminated against by Yokosuka base, and I am going to send a third e-mail plus a package with statements and witness signatures and phone numbers. Master Chief told my former boss Marylin Roach which is a GS-11 he told he that he have something for me and the next day I had an debartment letter signed by the base Captain sent to Thew Gym which is were I was working. I was off that day so my boss Marylin Roach contacted me and read the letter to me over the phone I never was contated personnally by CFAY. My wife is Japaneese and that is why I am back in Japan. Master Chief Moore also went-off-the hand at Marylin when she called him on about 14:00 22 Janua 1999 when she was asking him about me and my debartment because she didnt want to loose me. I feel strongly that he have a problem with the Afro-American race. Master Chief have been relieved from two duty station in Yokosuka base and both early removals was based on his actions of being bias, discremative and Harrassment. The base Captain based his decisions on what Master Chief Steven Moore tells him but that is not fair to people because if Master Chief Steven Moore dislike someone of ~~race~~ course he going make it look like some body is crimminal and that is what Captain Wylie is basing his decision on. I went through all routes to get this problem

resolved and NOONE has YET solve this problem. There are other routes I am going to take which is outside of YOKOSUKA base. The route that I am considering Next is also contacting the CNO to inform him of such Harrassment and discremination is going on in the US NAVY and I also can go outside the navy and contact some high officials in another branch of SERVICE and have it publisized in news papers and TV news. I am always willing to come in for personnal interviews. I am giving YOKOSUKA base chance to fix the problem but my patients and my family patients is wearing neal, Real, thin. I hope that Master Chief Steven Moore is wanting ME to be perfect and have no minor incidents. No one is perfect. There are many High and low RANKING OFFICERS that be in the wrong place at the wrong time, that is life. I am not threatening YOKOSUKA base I am just doing what I have to do to get satisaction I think a billion dollar law suite against CFAY with wake some people up and let them know that Civil Rights and Equal Rights are also apply overseas. I had been in the Navy for almost eight years so I know that harrassment, discremination is still in the NAVY that is why I am no longer on active duty. Thanks for your time and Effort. My family and I will really appreciate your assistant to us.

V/R   The Edwards family     P.S I FEEL
     070-5-020-8920          LIKE I am dealing
     090-9-683 1687          with MARK FURMAN
     0465-744577 / 0468-571030



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

1750
Ser 003H/L- 283
16 Mar 99

FIRST ENDORSEMENT on COMNAVFORJAPAN ltr 1750 Ser N00J/048 of 10 Mar 99

From: Commander Fleet Activities, Yokosuka
To:   Mr. Jerry J. Edwards, CIV, 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

Subj:  APPEAL/RECONSIDERATION OF DEBARMENT

1. Forwarded.

D. M. Phillips
By direction

Copy to:
COMNAVFORJAPAN (N00J)
Director, Morale, Welfare and Recreation Department

2



**DEPARTMENT OF THE NAVY**
COMMANDER U. S. NAVAL FORCES, JAPAN
PSC 473 BOX 12
FPO AP 96349-0051

1750
Ser NOOJ/048
10 Mar 99

From:  Commander, U.S. Naval Forces, Japan
To:    Mr. Jerry J. Edwards, CIV, 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

Subj:  APPEAL/RECONSIDERATION OF DEBARMENT

Ref:   (a) Yr ltr of 25 Jan 99
       (b) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-125
           of 4 Feb 99
       (c) COMFLEACT Yokosuka JA ltr 5532 Ser 003/L-152
           of 12 Feb 99

1.  After careful review of references (a) through (c), I find the
action taken by Commander Fleet Activities, Yokosuka (CFAY) was
within his authority and was appropriate under the circumstances.
Additionally, I find no misconduct on the part of CFAY Security
personnel.

2.  Therefore, your request for reconsideration of debarment is
denied.

F. E. CRECELIUS
Deputy and Chief of Staff

Copy to:
COMFLEACT Yokosuka JA



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

5532
Ser 003H/L- 053
20 Jan 99

From:   Commander Fleet Activities, Yokosuka
To:     Mr. Jerry Jerome Edwards, GS-12, 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
Via:    Commanding Officer, U.S. Naval Ship Repair Facility

Subj:   DEBARMENT ICO MR. JERRY JEROME EDWARDS

Ref:    (a) COMFLEACT Yokosuka ICR of CCN 11JAN99-46193-00084

1. By the authority vested in me as Commander Fleet Activities, Yokosuka, I hereby prohibit you from entering any military installation, facility or area under my control as a result of an incident on 11 January 1999 where you were drunk and disorderly and communicating a threat toward shore patrol personnel. This restriction applies to Fleet Activities, Yokosuka/Yokohama, the New Sanno Hotel and all other units, facilities, or areas under my control, and remains in effect for two years from the date of this letter.

2. Your attention is invited to Article 2, of "Keiji Tokubetsu Ho", (Law for Special Measures, concerning criminal cases to implement the agreement under Article VI of the Treaty of Mutual Cooperation and Security between Japan and the United States Armed Forces in Japan.), Law No. 138, 7 May 1952, as amended which provides:

"Offense of Trespassing on Facilities or Areas . . . Article 2. Any person who, without due cause, enters any place, the entrance of which is prohibited, or does not leave any place, when requested, within facilities or areas as defined in paragraph 1 of this letter, may be sentenced to penal servitude for not more than one year or a fine."

3. Should you enter or be found upon the limits of any prohibited installation, areas or facility under the control of Commander Fleet Activities, Yokosuka, and in violation of this order, you may be apprehended and detained by military authorities and prosecuted to the fullest extent of the law.

J. M. WYLIE

FOR OFFICIAL USE ONLY

AUTHORITY: 5 USC 301;10 USC 5031;44 USC 3103 and EO 9397    **PRIVACY ACT STATEMENT**
PRINCIPAL PURPOSE: Used to record information and details of criminal activity which may require investigative action by commanding officers, supervisors, security police. NCIS special agents, etc. Used to provide information to the appropriate individuals within DoD organizations who ensure that proper legal and administrative action is taken.
ROUTINE USES: Information may be disclosed to local, county, state and federal law enforcement or investigatory authorities for investigation and possible criminal prosecution or civil court action. Information extracted from this form may be used in other related criminal and/or civil proceedings.
DISCLOSURE IS VOLUNTARY: SSN is used to positively identify the individual making the statement and as a conduit to check past criminal activity records.

# INCIDENT REPORT

| INCIDENT NUMBER | REPORT TYPE: |
|---|---|
| 994619300084 | X INITIAL |
| | ☐ SUPPLEMENTAL |

*SECTIONS OR BLOCKS THAT DO NOT APPLY TO A REPORTED OFFENSE SHOULD BE LEFT BLANK*

## SECTION I. ADMINISTRATIVE

| DATE REC'D (YYYYMMDD) | TIME REC'D (24 Hour) | INCIDENT RECEIVED: | | |
|---|---|---|---|---|
| 1999/01/11 | 0110 | ☐ In Person  ☐ By Telephone  X By Radio | | |
| | | ☐ By Alarm  ☐ By Crime Stop Call/911  ☐ Other: _____ | | |

## SECTION II. COMPLAINANT  *(If not Victim/Witness) (Use "Complainant/Witness/Sponsor" Addendum sheet for additional Complainants)*

| LAST NAME (Include Jr., Sr., II, III, etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| COLLINS | DANIEL | LLOYD | 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 | E6 |

BRANCH OF SERVICE: ☐ ARMY  X NAVY  ☐ AIR FORCE
☐ MARINE CORPS  ☐ COAST GUARD  ☐ OTHER: _____

STATUS: X REG. (ACTIVE)  ☐ RESERVE  ☐ RETIRED  ☐ NATIONAL GUARD
☐ FAMILY MEMBER  ☐ CIVILIAN EMPLOYEE  ☐ CIVILIAN (NO GOV. AFF.)

| DUTY STATION/EMPLOYER (INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.) | UIC/RUC | WORK TELEPHONE |
|---|---|---|
| USS KITTYHAWK | 03363 | 2437306 |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| FPO AP 96634-2107 | YOKOSUKA | JA | |

## SECTION III. OFFENSE  *(Use "Offense" Addendum for additional Offenses)*

| DATE(S) OF INCIDENT: (YYYYMMDD) | TIME(S) OF INCIDENT: (24 Hour) | OFFENSE STATUS: (Check Only One Per Offense) |
|---|---|---|
| From: 1999/01/11  To: | From: 0110  To: | 1. ☐ ATTEMPTED  X COMPLETED    2. ☐ ATTEMPTED  X COMPLETED    3. ☐ ATTEMPTED  ☐ COMPLETED |

### OFFENSE DATA

| NO. | STATUTORY BASIS (SEE CODE BELOW) | OFFENSE DESCRIPTION | LOCATION/ADDRESS | ON BOARD MILITARY INSTALLATION (YES/NO) |
|---|---|---|---|---|
| 1. | U | 90Z-COMMUNICATING A THREAT | HONCHO2 (IN FRONT OF BAR TENNESSEE) | NO |
| 2. | U | 90E-Drunkenness | HONCHO2 (IN FRONT OF BAR TENNESSEE) | NO |
| 3. | | | | |

| STATUTORY BASIS CODES: | WEATHER CONDITIONS: (Max 3) | LIGHTING: |
|---|---|---|
| (U) UCMJ  (F) Federal | X Clear  ☐ Cloudy  ☐ Rain  ☐ Foggy | ☐ Daylight  X Dark (Lighted) |
| (S) State  (L) Local | ☐ Ice  ☐ Snow  ☐ Unknown  ☐ Other: ___ | ☐ Dusk  ☐ Dark (Not Lighted) |
| (X) Foreign | | ☐ Dawn  ☐ Unknown |

| OFFENDER USED | TYPE WEAPON/FORCE USED (Max 3) (Enter in box an "A" if fully automatic weapon; "M" if manual; "S" if semi-automatic) | | | |
|---|---|---|---|---|
| X Alcohol | ☐ Firearm (Not Listed) | ☐ Knife/Cutting Tool | ☐ Poison | ☐ Asphyxiation |
| ☐ Drugs/Narcotics | ☐ Handgun | ☐ Blunt Object | ☐ Explosives | ☐ Unknown |
| ☐ Computer Equipment | ☐ Rifle | ☐ Motor Vehicle | ☐ Fire/Incendiary | ☐ None |
| ☐ Not applicable | ☐ Shotgun | ☐ Bodily Force (Hands/Feet) | ☐ Narcotic/Drug | ☐ Other (Specify) |

### LOCATION OF OFFENSE (Enter 1,2,or 3 if multiple incidents occurred at different locations)   ☐ U.S. & Possessions   X Outside U.S. & Possessions

| | | | |
|---|---|---|---|
| ☐ Exchange/Dept/Discount Store | ☐ Air/Bus/Train Terminal | ☐ Rental/Storage Facility | ☐ Dining Facility/Restaurant |
| ☐ School (Elem,High)/College | ☐ Training/Service School | ☐ Lake/Waterway/Ocean | ☐ Bank/Credit Union |
| ☐ NCO Club/Officer Club/Bar | ☐ Training Area/Field/Woods | ☐ Contruction Site | ☐ Service/Gas Station |
| ☐ Government/Public Building | ☐ Highway/Road/Alley/Sidewalk | ☐ Hospital/Clinic | ☐ On Board Ship |
| ☐ BOQ/CBQ/Lodge/Hotel | ☐ Commissary/Grocery Store | ☐ Child Care Facility | ☐ On Board Aircraft |
| ☐ Package/Liquor Store | ☐ Chapel/Church/Synagogue | ☐ Specialty Store/Concessionaire | X Other (Specify) HONCHO2 (IN |
| ☐ Corrections Facility/Jail/Prison | ☐ Recreation Area/Park | ☐ Motor Pool/Parking Lot/Garage | |

### TYPE OF CRIMINAL ACTIVITY  (If larceny, forgery, pornography, gambling, drugs or weapons violation) (Max 3)

| | | |
|---|---|---|
| ☐ Buying/Receiving | ☐ Operating/Promoting/Assisting | ☐ Destruction/Vandalism |
| ☐ Cultivating/Manufacturing/Publishing | ☐ Possessing/Concealing | ☐ Harassment/Stalking |
| ☐ Distributing/Selling | ☐ Transporting/Transmitting/Importing | ☐ Other (specify) _____ |
| ☐ Exploiting Children | ☐ Using/Consuming | |

INCIDENT NUMBER 99461930 00084

### VEHICLE DESCRIPTION

**BURGLARY/B & E ONLY:** ☐ No Force ☐ # of Premises Entered

| VEHICLE STATUS | YEAR | MAKE | MODEL |
|---|---|---|---|
| ☐ Suspect ☐ Stolen | | | |
| ☐ Recovered ☐ Target | | | |

**STYLE**
☐ Sedan (2DR)  ☐ Motorcycle  ☐ Van
☐ Sedan (4DR)  ☐ RV/Camper  ☐ Boat
☐ Pickup  ☐ Tractor Trailer  ☐ Other:

COLOR          LICENSE PLATE #          STATE

VIN

OWNER NAME

OTHER IDENTIFYING MARKS

**METHOD OF ENTRY** (Max 3)
☐ Door Knob Twist
☐ Door Kicked In
☐ Door Open/Unlocked
☐ Door Pried
☐ Door Other
☐ Delivery
☐ Garage
☐ Bodily Force
☐ Sliding Door
☐ Door Type Other
☐ Lock Cut/Removed
☐ Lock Forced/Broken
☐ Lock Forced (Hasp)
☐ Lock Pried
☐ Lock Other
☐ Remain On Premise
☐ Tunneled
☐ Screen Cut
☐ Screen Pried
☐ Screen Removed
☐ Screen Other
☐ Window Broken
☐ Window Cut
☐ Window Open/Unlock
☐ Window Pried Open
☐ Window Removed
☐ Window Other
☐ Cut Hole in Wall
☐ Unknown
☐ Other:

**CONDITION OF PREMISE** (Max 1)
☐ Occupied
☐ Unoccupied
☐ Vacant (Temp. Unocc.)
☐ Vacant

**TOOLS USED** (Max 3)
☐ Bar/Pipe  ☐ Pry Tool
☐ Bodily Force  ☐ Saw/Drill
☐ Bolt Cutters  ☐ Wire
☐ Chopping Tool  ☐ Screwdriver
☐ Explosive  ☐ Missile
☐ Gripping Tool  ☐ Unknown
☐ Hammer  ☐ Other:

### BIAS MOTIVATION  (X) (All Hate/Bias Motivated Offenses Must be Reported to NCIS)

| | | | |
|---|---|---|---|
| X None | ☐ Anti-Alaskan Native | ☐ Anti-Catholic | ☐ Anti-Agnostic |
| ☐ Anti-White | ☐ Anti-Asian | ☐ Anti-Islamic (Moslem) | ☐ Anti-Homosexual |
| ☐ Anti-Black | ☐ Anti-Pacific Islander | ☐ Anti-Protestant | ☐ Anti-Male Homosexual |
| ☐ Anti-Arab | ☐ Anti-Other Ethnicity/Origin | ☐ Anti-Multi-Religious Group | ☐ Anti-Female Homosexual |
| ☐ Anti-Hispanic | ☐ Anti-Multi-Racial Group | ☐ Anti-Other Religion | ☐ Anti-Heterosexual |
| ☐ Anti-American Indian | ☐ Anti-Jewish | ☐ Anti-Atheism | ☐ Anti-Bisexual |

## SECTION IV. PROPERTY  (Use "Property" Addendum sheet for additional Property)

| CODE (a) | TYPE (b) | QTY | DESCRIPTION | MAKE/MODEL | SIZE | SERIAL # | COLOR | VALUE | S/U (c) | OWNER (d) | DISP (e) | # VEH. RECOVERED | DATE RECOVERED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

### a. PROPERTY DESCRIPTION CODE

| | | | |
|---|---|---|---|
| 01 - Aircraft | 12 - Farm Equipment | 23 - Office-Type Equipment | 34 - Structures - Storage |
| 02 - Alcohol | 13 - Firearms | 24 - Other Motor Vehicles | 35 - Structures - Other |
| 03 - Automobile | 14 - Gambling Equipment | 25 - Purse/Handbag/Wallet | 36 - Tools - Power/Hand |
| 04 - Bicycle | 15 - Heavy Construction Equip. | 26 - Radio/TV/VCR | 37 - Trucks |
| 05 - Bus | 16 - Household Goods | 27 - Recording - Audio/Visual | 38 - Vehicle Parts/Accessories |
| 06 - Clothes/Furs | 17 - Jewelry/Precious Metals | 28 - Recreational Vehicle | 39 - Watercraft |
| 07 - Computer Hard/Software | 18 - Livestock | 29 - Structures - Single Occupancy | 77 - Other (Specify in Narrative Section) |
| 08 - Consumable Goods | 19 - Merchandise | 30 - Structures - Other Dwellings | 88 - Pending Inventory |
| 09 - Credit/Debit Cards | 20 - Money | 31 - Structures - Commercial/Bus. | 99 - Special Category |
| 10 - Drugs/Narcotics | 21 - Negotiable Instruments | 32 - Structures - Industrial/Manuf. | |
| 11 - Drug/Narcotic Equipment | 22 - Nonnegotiable Instruments | 33 - Structures - Public/Community | |

### b. TYPE PROPERTYLOSS/ETC. CODE

(1) None  (4) Damaged/Destroyed  (7) Stolen
(2) Burned  (5) Recovered  (8) Unknown
(3) Counterfeited/Forged (6) Seized/Impounded  (9) Lost & Found

### c. S/U CODE

(S) SECURE
(U) UNSECURE

### d. OWNERSHIP CODE

(A) Federal Gov.  (D) County Gov.
(B) State Gov.  (E) Foreign Gov.
(C) City Gov.  (F) Private/Personal

### e. DISPOSITION OF PROPERTY CODE

(E) Evidence  (R) Return to Owner
(S) Safekeeping  (O) Other

### SUSPECTED DRUG INVOLVEMENT

| DRUG TYPE (f) | EST. QUANTITY | MEASUREMENT(g) |
|---|---|---|
| | | |

### f. DRUG TYPE

(A) "Crack" Cocaine  (G) Opium  (M) Other Stimulants
(B) Cocaine  (H) Other Narcotics  (N) Barbiturates
(C) Hashish  (I) LSD  (O) Other Depressants
(D) Heroin  (J) PCP  (P) Other Drugs
(E) Marijuana  (K) Other Hallucinogens  (U) Unknown Drug
(F) Morphine  (L) Amphetamines  (X) Over 3 Drug Types

### g. TYPE DRUG MEASUREMENT

**WEIGHT**
(GM) Gram
(KG) Kilogram
(OZ) Ounce
(LB) Pound

**CAPACITY**
(ML) Milliliter
(LT) Liter
(FO) Fluid Ounce
(GL) Gallon

**UNITS**
(DU) Dosage Unit (Pills, etc.)
(NP) Number of Plants

### SECTION V. VICTIM
(Use "Victim" Addendum sheet If more than one Victim)

VICTIM # 1

DD2701 ISSUED ☐ YES ☒ NO

VICTIM RELATED TO OFFENSE # ☒1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 ☐9 ☐10

VICTIM RELATED TO SUSPECT # ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 ☐9 ☐10

| LAST NAME (Include Jr., Sr., II, III, etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| MEBANE | DARNELL | CHARLES | 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 | E4 |

**BRANCH OF SERVICE:** ☐ ARMY ☒ NAVY ☐ AIR FORCE ☐ MARINE CORPS ☐ COAST GUARD ☐ OTHER: ___

**STATUS:** ☒ REG. (ACTIVE) ☐ RESERVE ☐ RETIRED ☐ NATIONAL GUARD ☐ FAMILY MEMBER ☐ CIVILIAN EMPLOYEE ☐ CIVILIAN (NO GOV.AFF.)

| DUTY STATION/EMPLOYER (INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.) | UIC/RUC | WORK TELEPHONE |
|---|---|---|
| USS CHANCELLORSVILLE | 21151 | 2432611 |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| FPO AP 96662-1182 | YOKOSUKA | JAPAN | |

| DOB | SEX | RACE | ETHNICITY | RESIDENT STATUS |
|---|---|---|---|---|
| 1978/08/19 | X Male / ☐ Female / ☐ Unknown | ☐ White / X Black / ☐ American Indian / ☐ Asian / ☐ Unknown | ☐ Hispanic / ☐ Non-Hispanic / X Unknown | X Resident / ☐ Nonresident / ☐ Unknown |
| POB BROOKLYN, NEW YORK | | | | |

Case 1:02-cv-00003      Document 20      Filed 04/14/2003      Page 80 of 153

## SECTION V. VICTIM (Cont.)

| TYPE OF VICTIM | | AGGRAVATED ASSAULT CIRCUMSTANCES (Max 2) | | INJURY TYPE (Max 5) | |
|---|---|---|---|---|---|
| X Individual | Religious Org'n | Argument | Assault on LE Officer | X None | Minor Injury |
| Business | Society/Public | Drug Dealing | Other Felony Involved | Broken Bones | Major Injury |
| Financial Institution | Other | Gangland | Other Circumstances | Poss. Int. Injuries | Loss of Teeth |
| Government | Unknown | Juvenile Gang | Unknown | Severe Laceration | Unconsciousness |
| Law Enforcement | | Lovers' Quarrel/Domestic | | | |

### RELATIONSHIP OF VICTIM TO SUSPECT (For multiple suspect's relationships, enter suspect's number in block)

| | | | | |
|---|---|---|---|---|
| Spouse | Grandparent | Stepsibling | Babysittee (Baby) | Employee |
| Com-Law Spouse | Grandchild | Other Family | Boy/Girl Friend (B/G Friend) | Employer |
| Parent | In-Law | Acquaintance | Child of B/G Friend | Otherwise Known |
| Sibling | Stepparent | Friend | Homosexual Relationship | Relationship Unknown |
| Child | Stepchild | Neighbor | Ex-Spouse | Stranger |

## SECTION VI. WITNESS/SPONSOR

(Use "Complainant/Witness/Sponsor" Addendum sheet if more than one Witness/Sponsor)

| TYPE/SEQUENCE # | DD2701 ISSUED |
|---|---|
| WITNESS #        SPONSOR # | YES   NO |

| LAST NAME (Include Jr., Sr., II, III, etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| | | | | |

BRANCH OF SERVICE: ☐ ARMY ☐ NAVY ☐ AIR FORCE   STATUS: ☐ REG. (ACTIVE) ☐ RESERVE ☐ RETIRED ☐ NATIONAL GUARD
☐ MARINE CORPS ☐ COAST GUARD ☐ OTHER: ___   ☐ FAMILY MEMBER ☐ CIVILIAN EMPLOYEE ☐ CIVILIAN (NO GOV. AFF.)

| DUTY STATION/EMPLOYER (INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.) | | UIC/RUC | WORK TELEPHONE |
|---|---|---|---|
| | | | |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

## SECTION VII. SUSPECT/ARRESTEE    (Use "Suspect/Arrestee" Addendum sheet if more than one Suspect/Arrestee)

| TYPE/SEQUENCE # | SUSPECT/ARRESTEE RELATED TO OFFENSE # | INVOLVEMENT |
|---|---|---|
| X SUSPECT # 1   ☐ ARRESTEE # | ● 1 ○ 2 ○ 3 ○ 4 ○ 5 ○ 6 ○ 7 | X PRINCIPAL   ☐ ACCESSORY<br>☐ CONSPIRATOR   ☐ SOLICITOR |

| LAST NAME (Include Jr., Sr., II, III, etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| Edwards | Jerry | Jerome | 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 | GS-12 |

BRANCH OF SERVICE: ☐ ARMY ☐ NAVY ☐ AIR FORCE   STATUS: ☐ REG. (ACTIVE) ☐ RESERVE ☐ RETIRED ☐ NATIONAL GUARD
☐ MARINE CORPS ☐ COAST GUARD ☒ OTHER: ___   ☐ FAMILY MEMBER ☒ CIVILIAN EMPLOYEE ☐ CIVILIAN (NO GOV. AFF.)

| DUTY STATION/EMPLOYER (INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.)<br>SRF | | UIC/RUC<br>62758 | WORK TELEPHONE<br>243-6498 |
|---|---|---|---|

| ADDRESS<br>PSC 473 BOX 11 FPO AP | CITY<br>Yokosuka | STATE<br>Japan | ZIP CODE<br>96349 |
|---|---|---|---|

| HAIR COLOR<br>BLK | EYE COLOR<br>BRN | HEIGHT<br>6' 1" | WEIGHT<br>175 | DOB<br>1971/07/15 | POB<br>Sanford, NC |
|---|---|---|---|---|---|

| ALIAS (AKA) | SEX | RACE | ETHNICITY | RESIDENT STATUS |
|---|---|---|---|---|
| | X Male | White   Asian | Hispanic | Resident |
| | Female | X Black   Unknown | X Non-Hispanic | X Nonresident |
| | Unknown | American Indian | Unknown | Unknown |

## DESCRIPTION

| HAIR (Max 2) | HAIR STYLE (Max 2) | FACIAL HAIR (Max 3) | COMPLEXION (Max 2) | APPEARANCE (Max 3) | IDENTIFYING MARKS (Max 3) | DESCRIPTION |
|---|---|---|---|---|---|---|
| Unknown | Unknown | Unknown | Unknown | Unknown | Unknown | |
| Bald | Afro | Clean | Light | Dirty | Tattoo | |
| Receding | Braided | Medium | Medium | Disguised | Scar | |
| ☒ Short | Bushy | Mustache | ☒ Dark | Flashy | Mark | |
| Collar | Crewcut | Goatee | Freckled | Military | | |
| Shoulder | Greasy | Lower Lip | Tanned | Unkempt | LOCATION (Max 3) | |
| Long | Recruit | Beard | Acne | Odorous | Eye (Left/Right) | |
| Coarse | Ponytail | Sideburns | ☒ Neat | | Face | |
| Fine | Processed | Unshaven | Pocked | | Scalp | |
| Thick | Straight | Other: | Ruddy | | Teeth | |
| Wiry | Wig | | Clear | | Hand (Left/Right) | |
| Other: | Part L/R | BUILD (Max 1) | Other: | | Crease | |
| | Dreadlocks | Unknown | | | Gloves | |
| | Cornrow | Thin | | | Mask | |
| | Other: | ☒ Medium | | | Other: | |
| | | Heavy | | | Leg (Left/Right) | |
| | | Muscular | | | Arm (Left/Right) | |
| | | | | | Shoulder (L/R) | |
| | | | | | Hip (Left/Right) | |
| | | | | | Stomach | |
| | | | | | Chest | |
| | | | | | Back | |
| | | | | | Neck | |
| | | | | | Buttocks | |
| | | | | | Other: | |

| DRESS (Max 3) | SPEECH (Max 2) | DEMEANOR (Max 3) |
|---|---|---|
| Unknown | Unknown | ☒ Unknown |
| Gang Attire | Accent | Angry |
| Camouflage | Lisp | Apologetic |
| Swimwear | ☒ Loud | Calm |
| Western Attire | Mumbles | Disordered |
| Ragged Attire | Quiet | Irrational |
| Athletic Attire | Rapid | Nervous |
| Business Attire | Slow | Polite |
| Navy Uniform | Stutters | Competent |
| AF Uniform | Other: | Stupor |
| Army Uniform | | Violent |
| Marine Uniform | HANDS (Max 1) | Obscene |
| CG Uniform | Unknown | Talkative |
| Police Uniform | ☒ Right Handed | Other: |
| No Attire (Naked) | Left Handed | |
| ☒ Casual Attire | Ambidextrous | |
| Other: | | |

## SECTION VII. SUSPECT/ARRESTEE *(Cont.)*

| TYPE OF ARREST | MULTIPLE CLEARANCE | ARRESTEE WAS ARMED WITH *(X up to Two)* | | DISPOSITON OF JUVENILE |
|---|---|---|---|---|
| ☐ On View<br>☐ Summons/Cited<br>☐ Taken into Custody | ☐ Multiple<br>☐ Count Arrestee<br>☐ Not Applicable | ☐ Unarmed<br>☐ Handgun<br>☐ Rifle<br>☐ Shotgun | ☐ Lethal Cutting Instrument<br>☐ Club/Blackjack/Brass Knuckles<br>☐ Other (specify) | ☐ Handled Within Department<br><br>☐ Referred to Other Authority |
| DATE ARRESTED: | | | | |

**SECTION VIII ADDITIONAL POLICE OFFICERS** *(Use Narrative Section, for additional Police Officers)* *(Other than Reporting Official)*

| 1. LAST ADEPOJU | FIRST OLUFEMI | MI A | 2. LAST CARNEY | FIRST DOUGLAS | MI J |
|---|---|---|---|---|---|
| **GRADE/RANK** E-5 | **DUTY STATION/EMPLOYER** CFAY SECURITY | **BADGE #** | **GRADE/RANK** E-5 | **DUTY STATION/EMPLOYER** CFAY SECURITY | **BADGE #** |

**SECTION IX. NARRATIVE** *(WHO, WHAT, WHEN, WHERE, WHY, HOW)* *(Use "Narrative" Addendum sheet if more space is required.)*

SUMMARY OF EVENTS
WRITTEN BY: TOMMAS

On or about 0110, 11JAN99, CROTEAU (DISPATCHER) received a radio transmission from COLLINS(FSP) about an individual suspected of Communicating a Threat and being Drunk and Disorderly in front of BAR TENNESSE in HONCHO 1. TOMMAS(MP) and PEDRO(MP) were dispatched.

On or about 0114, 11JAN99, TOMMAS and PEDRO arrived in front of BAR TENNESSEE and met with MEBANE(FSP) who verbally stated EDWARDS(SUBJECT) was being drunk and disorderly after MEBANE requested to see his IEDENTIFICATION CARD after noticing EDWARDS walking with an open beer bottle.

On or about 0115, 11JAN99, ADEPOJU(MP) arrived in front of BAR TENNESSEE during which time he overheard EDWARDS state to MEBANE "When I catch you in civilian clothes I'll kick your ass" or words to that effect.

On or about 0120, 11JAN99, TOMMAS placed EDWARDS under civilian detainment. Search incident to detainment was conducted ending with negative results. EDWARDS was handcuffed

**ENCLOSURE(S)** *(List additional "Enclosures" in the Narrative Section)*

| ENCL # | DESCRIPTION *(List all Attached Supporting Documents i.e., Statements, Photographs, Sketches, etc.)* |
|---|---|
| 1 | VOLUNTARY STATEMENT OF MEBANE (2 PAGES) |
| 2 | VOLUNTARY STATEMENT OF COLLIN (2 PAGES) |
| 3 | DD FORM 629 OF EDWARDS |

**SECTION X. REPORTING/APPROVING OFFICIALS**

| REPORTING OFFICIAL *(NAME, RANK, TITLE & SIGNATURE)* | DATE | APPROVING OFFICIAL *(NAME, RANK, TITLE & SIGNATURE)* | DATE |
|---|---|---|---|
| *Richard S Tomm*<br>E-6 RICHARD S TOMMAS, PATROLMAN | 1999/01/11 | *Leonard Chapman*<br>E-8 LEONARD O CHAPMAN, OPERATIONS OFFICER | 11 JAN 99 |

**SECTION XI. ADMINISTRATIVE DISPOSITION** *(ADMIN USE ONLY)*

| VICTIM/WITNESS NOTIFICATION: *(DD Form 2701 provided)* | INCIDENT STATUS: | CLEARED EXCEPTIONALLY: | DATE CLEARED: |
|---|---|---|---|
| 0 # VICTIMS NOTIFIED    0 # WITNESSES NOTIFIED | ☐ UNFOUNDED<br>☐ CLEARED BY APPREHENSION<br>☐ CLEARED EXCEPTIONALLY | ☐ DEATH OF OFFENDER<br>☐ PROSECUTION DECLINED<br>☐ EXTRADITION DECLINED | ☐ REFUSED TO COOPERATE<br>☐ JUVENILE NO CUSTODY<br>☐ NOT APPLICABLE |

| REFERRED TO/ASSUMED BY: | DISTRIBUTION |  |
|---|---|---|
| NCIS Case #: | ☐ COMMANDING OFFICER | ☐ MEDICAL/MENTAL HEALTH |
| INVESTIGATIONS Case #: | ☐ LEGAL OFFICER/SJA | ☐ DRUG & ALCOHOL (DAPA) |
| LOCAL POLICE Case #: | ☐ FAMILY ADVOCACY | ☐ OTHER: _____ |
| OTHER *(Specify)* | ☐ EQUAL OPPORTUNITY | |

OPNAV 5527/1 JUN98    PREVICUS EDITION IS OBSOLETE.    FOR OFFICIAL USE ONLY (When filled in)    PAGE 4 OF 5 PAGES

S/N: 0107-LF-114-9600

## INCIDENT REPORT ADDENDUM - NARRATIVE SECTION

INCIDENT NU: 994619300084

REPORT TYPE:
[X] INITIAL
[ ] SUPPLEMENTAL

This form is used with OPNAV 5527/1, "Incident Report" to record additional Narrative information.

(double locked) and transported to MPHQ, FAY. EDWARDS refused to submit to EC/IR-5000 testing. EDWARDS also refused to provide an oral or written statement.

On or about 0147, 11JAN99, CARNEY(MP) met with COLLINS who stated on or about 0110, 11JAN99, while conducting foot patrol in HONCHO 1, he and MEBANE observed an unknown black male (later identified as EDWARDS) walking with an unknown Japanese female. COLLINS observed EDWARDS with a half full open beer bottle in his hand. COLLINS stated that MEBANE said "Hey shipmate, you're not allowed to have the bottle out on the streets, and I need to see your ID card," or words to that effect. COLLINS stated that EDWARDS replied "Fuck No! I'm not going to show you my ID. I'm a civilian, go fuck yourself" or words to that effect. COLLINS further stated that during the verbal confrontation EDWARDS stated to MEBANE "I'll see you out of uniform" or words to that effect.

On or about 0150, 11JAN99, PEDRO met with MEBANE who stated on or about 0135, 11JAN99, while patrolling HONCHO with COLLINS, they observed an unknown black male (later identified as EDWARDS) walking with an unknown Japanese female. COLLINS stated that EDWARD was in possession of an open beer bottle in his right hand. COLLINS further stated that he approached EDWARDS and informed him that he was not supposed to have an open beer bottle. COLLINS stated that EDWARDS replied that "I am not in the fucking Navy and I don't have to show you shit," or words to that effect. COLLINS further stated that he requested to see EDWARDS' ID card to which EDWARDS replied "No! If you were a man you'd take off your uniform and approach me like a man should," or words to that effect.

On or about 0210, 11JAN99, EDWARDS was released to FITZPATRICK (SRF CDO) via DD FORM 629.

                    NOTIFICATIONS:
  WATCH SUPERVISOR: MA1(SW) ASMUS notified at 0110, 11JAN99
              AOPS: MAC GRIFFIN notified at 0205, 11AN99
               CDO: OSC EVELAND notified at 0210, 11JAN99
           SRF CDO: CPO FITZPATRICK notified at 0220, 11JAN99

Additional Police Officers:
E-4 ARNOLD D FISHER
E-6 MANOLO V PEDRO

Additional Enclosures:
4 USE OF FORCE FORM ON EDWARDS

Case 1:02-cv-00003     Document 20     Filed 04/14/2003     Page 83 of 153

Case Number: 994619300084

The following report will be completed when force is used by Military Police to affect and maintain the apprehension of a person subject to the UCMJ.

## Person on Whom Force Was Used

EDWARDS, JERRY JEROME     GS-12-CIV     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     SRF

Name (Last, First Middle)    Rate      SSN      Command

Condition of Individual:   ( ) Sober    (X) Drinking    ( ) Drunk

Type of Force Used:   ( ) Night Stick   ( ) Fist
                    ( ) Open Hand    (X) Handcuffs
                    ( ) Other (Specify) _____

## Injury Incurred by Individual

Type and Extent of Injury:

NONE

## Reason for Use Force

APPREHENSION AND TRANSPORTATION

## Witnesses

| Name | Rate | SSN | Command |
|------|------|-----|---------|
| PEDRO, MANOLO ✓ | AMH1 (AW) | 565933879 | CFAY SECURITY |
| | | | |
| | | | |

_Richard R. Timmins_
Signature of MP Using Force

Print: TIMMAS, RICHARD     SM1     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
        Name            Rate        SSN

Note: Sworn statements will be obtained from all witnesses. This from will accompany by all statements and will immediately be turned over to the duty section chief.

CFAY 5510/8 (Rev. 1-98)

DEPARTMENT OF THE NAVY

# VOLUNTARY STATEMENT

1. PLACE

MPHQ, FAY

2. DATE

11 JAN 99 / 0140

I, COLLINS DANIEL LLOYD / E-6-USN / SD6-90-2010 / USS KITTY HAWK make the following

free and voluntary statement to ADEPOJU, O / E-5-USN / CFAY SECURITY

~~CARREY, DOUGLAS JOSEPH / PC2-USN / B2123330V / CFAY Security~~

whom I know to be _____ MILITARY POLICE

I make this statement of my own free will and without any threats or promises extended to me. I fully understand

that this statement is given concerning my knowledge of COMMUNICATING A THREAT /
DRUNK IN DISORDERLY

For the purpose of identification, I am a __Male__, __white__, born on
__15 NOV 61__ in __Witchita Falls, TX__. I am __5'7"__ tall and weigh __105__ lbs.
I have __Red__ hair and __Brown__ eyes. I have the following identifying marks:
__appendix operation scar__. I currently reside at __USS Kitty Hawk__.
My home telephone number is __243 -6095__ and my work extension is __X6799__
My initials are __DC__

ON or about 0110, 11 Jan 99, while on foot patrol in
Honcho #1, Yokosuka, Japan me and my partner observed a
black male, and a Japanese National female walking down the
Street. The male had a half full bottle of Beer in his hand,
and appeared to be a service Member. My Partner said something
to the effect, Hey shipmate, you're not allowed to have the bottle
out on the streets, I need to see your ID Card. He said Fuck NO,
I'm not going to show you my ID, I'm a Civilian, go fuck yourself.
Me and my partner talked about it for a few seconds and decided to call
Security. while my Partner was on the radio, he appeared to want to
approach us, but the Japanese girl was holding him back.
During the confrontation, he relayed a threat to my partner saying
"I'll see you out of uniform".
within a couple minutes, Three patrol ~~MEN~~ PC cars showed up
and took over. He was very rude and loud throughout
the whole incident. DC Continued on page 2. DC

INITIALS: DC

PAGE 1 OF 2

*DC End of Statement DC*

The following statement consists of __2__ pages, hand written by _AMH1 Collins_ in the presence of _FC2 Carney_ (MP), as we discussed its contents. I have been given the opportunity to make any changes I so desire. This statement is the truth to the best of my knowledge and belief.

Subscribed and sworn to before

me on __1 JAN 99__ , __0204__ .
    (Date)       (Time)

UCMJ ART. 136(b)(1)

_____
Swearing Official Signature

__1 JAN 99__ , __0205__
  (Date)      (Time)

_Daniel Lloyd Collins_
      Printed Name

_____
Signature

__11 Jan 99__ , __0203__
  (Date)      (Time)

Preparers
Initials: _DC_

Page __2__ of __2__

| 1. PLACE |
|---|
| CFAY SECURITY DEPT |
| 2. DATE |
| 11 JAN 99 |

I, MCDAVIS, DARNELL CHARLES /E4-USN/ 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 / USS CHANCELLORSVILLE, make the following

free and voluntary statement to PEDRO /E6-USN / MILITARY POLICE,

whom I know to be _____

I make this statement of my own free will and without any threats or promises extended to me. I fully understand

that this statement is given concerning my knowledge of COMMUNICATING A VERBAL THREAT

For the purpose of identification, I am a BLACK , MALE ,
born on 1978 AUG 19 in BROOKLYN, NEW YORK . I am 72" tall and
weigh 175 lbs. I have BRN hair and BRN eyes. I have the following
identifying marks: TATTOO ON RT FOREARM . I
currently reside at USS CHANCELLORSVILLE FPO AP 96662-1183 . My home telephone number
is N/A and my work extension is _____ . My initials

are DCM .

On or about 11, JAN 1999, APPROXIMATELY 0135. PO1 DANIEL AND I WAS
WALKING FROM THE A CLUB. WE CROSS-A-STREET and IN (DCM) and BEFORE ENTERING
IN FRONT OF OAK-TENDENCY (DCM)
THE HONCHO, WE SAW A BLACK-MALE WALKING WITH A JAPANESE WOMEN.
THE BLACK-MALE HAD AN OPEN BOTTLE (DCM) BEER BOTTLE IN HIS RIGHT HAND.
I APPROACH THE MALE AND TOLD HIM HIS NOT SUPPOSE TO HAVE
AN OPEN BEER BOTTLE, HE TOLD ME HE IS NOT IN THE FUCKING
NAVY, THAT'S WHEN I ASKED FOR HIS I.D.. HE TOLD AGAIN HE
IS NOT IN THE FUCKING NAVY AND HE DONT HAVE TO SHOW HE
SHIT. HIS (DCM) THEN, I ASKED (DCM) TOLD HIM WE NEED TO SEE I.D.
HE
FOR eta (DCM) clearification, HE TOLD ME "NO" AND SAID "IF I WAS
MAN TO TAKE MY UNIFORM AND FUCKING approach HIM LIKE A MAN SHOULD.
THAT'S WHEN HE'S off (DCM) HIS JAPANESE Girlfriend HOLD HIM BACK
FROM APPROACHING US (DCM) CHARGING US, TELLING HIS Girlfriend TO let HIM
FUCKING GO. THAT'S WHEN I CALLED ENRG POLICE HEADQUARTER AND
TOLD THEM SITUATION AND TO BRING A LOT OF BACK DROP BECAUSE HE (DCM)

INITIALS: PAGE OF

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 87 of 153

I SAW THE THIS MAN WAS INTOXICATED. AND ~~Probably was about~~

~~To Use Vi~~ Dcm I AlSO TOLD THE MILITARY POLICE THIS MAN WAS USING

a lot of ~~VICIOUS~~ Dcm Profienty and THREATEN TO FIGHT ME.

Dcm

No Further Entry

Dcm

The following statement consists of __62__ pages, hand written by __MEBANE, DARNELL C__. in the presence of __PEDEO, M.V__ (MP), as we discussed its contents. I have been given the opportunity to make any changes I so desire. This statement is the truth to the best of my knowledge and belief.

Subscribed and sworn to before

me on __11 JAN 99__ / __0220__ .
    (Date)      (Time)

UCMJ ART 136(b)(4)

Swearing Official Signature

__11 JAN 99__ / __0220__
    (Date)      (Time)

Preparers

MEBANE, DARNELL
Printed Name

Signature

__11-JAN-99__ / __0219__
    (Date)      (Time)



### COMMANDER IN CHIEF, U.S. PACIFIC COMMAND
### (USCINCPAC)
#### CAMP H.M. SMITH, HAWAII 96861-5025

USCINCPACINST 1350.1B
J06
26 March 1991

USCINCPACINST 1350.1B

Subj:  MISCONDUCT BY FAMILY MEMBERS OVERSEAS

Ref:   (a) DOD Directive 1315.7, Military Personnel Assignments

1.  <u>Purpose</u>.  To establish policy and procedures per reference (a), for
response to misconduct by civilian family members overseas in U.S. Pacific
Command (USPACOM).  This instruction is completely revised.

2.  <u>Cancellation</u>.  USCINCPACINST 1350.1A.

3.  <u>Applicability</u>

    a.  This instruction applies to all family members of U.S. military and
civilian personnel enjoying Status of Forces Agreement (SOFA) status or
similar status under a Military Bases Agreement in USPACOM, or who use U.S.
forces tax-exempt facilities.  Examples include:

        (1) Family members of appropriated and nonappropriated fund
Department of Defense (DOD) civilian employees.

        (2) Family members of U.S. military members.

        (3) Family members of employees of U.S. Government contractors.

    b.  This instruction applies to all subordinate unified and component
commands except when inconsistent with existing U.S./host nation agreements.

    c.  This instruction does not apply to:

        (1) Non-U.S. personnel and their families.

        (2) U.S. Government consular and diplomatic personnel and their
families.

    d.  In event of a conflict between the provisions of this instruction
and applicable service directives, contact designated commanding officer
(copy to USCINCPAC (Attn:  Staff Judge Advocate, J06)).

4.  <u>Definitions</u>

    a.  Sponsor.  A service member, member of civilian component, or other
individual authorized SOFA (or similar military bases agreement) status
according to the terms of employment (e.g., contractor personnel), or whose
family members are eligible for tax-exempt status.

GOVERNMENT
EXHIBIT
6A

   b. **Family Member.** A person whose eligibility for SOFA or other tax exempt status is derived from a family relationship to the sponsor.

   c. **Misconduct.** Behavior by family members that is:

      (1) In violation of host nation laws; the U.S. Code (as if behavior had been committed in the United States); regulations of the Department of Defense, USCINCPAC, or subordinate unified commanders and component commanders.

      (2) Disorderly.

      (3) Contrary to directions of persons exercising proper police or administrative authority of a commander, to include management personnel of post facilities.

5. **Jurisdiction.** In peacetime, the host nation has criminal jurisdiction over all U.S. civilian family members in country. Prosecution by the host nation does not preclude and should not delay the commander from taking appropriate administrative action.

6. **Reporting.** Local law enforcement officials, school officials, facilities managers, and others who receive initial information regarding misconduct by family members will report that information to the commander/ Staff Judge Advocate (SJA).

7. **Public Affairs.** Service instructions require immediate Unit Status and Identification Report/Situation Report (UNITREP/SITREP) to the chain of command concerning incidents of significant host nation community or media interest. Such reports will include public affairs strategy to address the situation (info addressee: USCINCPAC HONOLULU HI//J032//).

8. **Administrative Action.** In cases of family member misconduct, commanders may take appropriate administrative actions, such as:

   a. Counseling.

   b. Debarment from specific areas of the base.

   c. Suspension of privileges. (Commanders will not suspend medical or religious privileges.)

   d. Removal from assigned quarters.

   e. Termination of command sponsorship or area clearance of family member, per reference (a).

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 90 of 153

f.  Advance return of family members.  Provisions of the Joint Travel Regulations (JTR) apply.

(1) Ordinarily, sponsor will not accompany family members returned and will be required to complete overseas tour of duty.  When commanders authorize advance return of family members issued no-fee passports, commander will request appropriate Immigration and Naturalization Service Office to confiscate the no-fee passports at point of entry.

(2) If family member's misconduct involves a violation of host nation law, the command will notify host nation of family member's pending return to United States.  This affords the host government the opportunity to assert or waive jurisdiction.

(3) If family member refuses to depart, the commander will terminate his or her entitlement to exchange, commissary, theater, Private Own Vehicle (POV) registration, on-base POV operator's privileges, and other types of logistic support (other than medical care and religious support).  Bars from installations may be appropriate.  Sponsor's assignment to government family quarters also may be terminated.  Host government immigration authorities will be advised family member no longer enjoys U.S. Government-sponsored status.

g.  Removal from Host Country.  Commanders may request host nation remove family members from country who refuse to leave voluntarily.  Commanders should consider whether other actions, including curtailment of sponsor's tour, may be in the best interest of the command before seeking host nation removal.  Commanders will submit all draft requests for removal by host nation authorities to designated commanding officer (copy to USCINCPAC (Attn:  Staff Judge Advocate, J06)) for approval.  Cognizant USCINCPAC subordinate unified or component commander will also be informed.  If action is approved, family members will be escorted by host nation officials and accompanied by U.S. personnel for embarkation for travel at U.S. expense according to travel regulations.

h.  Curtailment of Tour.  Commander who believes a service member's tour should be curtailed because of family misconduct will submit request through appropriate service channels.  Request for curtailment of DOD contractor employees' tours shall be directed to appropriate DOD liaison office responsible for coordination of employee assignments.

9. <u>Other Administrative Actions</u>. Certain actions may be taken only by persons other than commanders. An example of such actions:

Suspension/Expulsion from Department of Defense Dependent Schools (DODDS). DODDS principals may suspend students and DODDS regional directors may expel them for serious or repeated acts of misconduct.

JACK B. FARRIS, JR.
Lieutenant General, USA
Deputy USCINCPAC/Chief of Staff

Distribution: (USCINCPACINST 5605.1H)
Lists I and II (less F)





OO3
2OO
13OO
15OO
2OOO
CAF

DEPARTMENT OF THE NAVY
COMMANDER U. S. NAVAL FORCES, JAPAN
PSC 473 BOX 12
FPO AP 96349-0051

COMNAVFORJAPANINST 1750.2A
N00J

16 OCT 1996

Subj:  MISCONDUCT BY FAMILY MEMBERS OF U.S. NAVAL SERVICE AND CIVILIAN
       PERSONNEL ENJOYING STATUS OF FORCES AGREEMENT (SOFA) STATUS IN JAPAN

Ref:   (a)  USCINCPACINST 1350.1B
       (b)  Navy Exchange Manual
       (c)  Joint Federal Travel Regulations
       (d)  COMNAVFORJAPANINST 5820.16D
       (e)  Enlisted Transfer Manual (NAVPERS 15909F)

Encl:  (1)  Appointment as hearing officer
       (2)  Letter of notification (action without hearing)
       (3)  Family member letter of notification for administrative hearing
       (4)  Civilian letter of notification for administrative hearing
       (5)  Letter of notification of action taken at administrative hearing
       (6)  Procedures for administrative hearings

1.  Purpose.  To establish procedures to assist local area coordinators and
advise Commander, U.S. Naval Forces, Japan (COMNAVFORJAPAN) so appropriate
action may be taken in response to alleged misconduct or inappropriate
personal behavior on the part of persons including, but not limited to, family
members and other SOFA status civilians under COMNAVFORJAPAN cognizance who
are not subject to the Uniform Code of Military Justice (UCMJ).

2.  Cancellation.  This is a complete revision and cancels COMNAVFORJAPANINST
1750.2; therefore, no margin notations have been included.

3.  Background.  References (a), (b), and (c) set forth administrative
sanctions and establish procedures for early return of family members, or the
removal from Japan of civilians, who have become involved in incidents which
are embarrassing to the United States Government or are prejudicial to good
order, morale, and discipline within COMNAVFORJAPAN's area of regional
coordination.  Civilian personnel and family members are not normally subject
to disciplinary action under the UCMJ.  Misconduct of such persons may affect
the safety, well-being, and efficiency of the command, which under Navy
Regulations is the responsibility of the commanding officer.  The naval
servicemember stationed overseas is constantly under critical surveillance by
the citizens of the country to which assigned.  Additionally, the conduct of
servicemembers, as well as the conduct of their family members, is considered
representative of all Americans.

4.  Applicability.  This instruction applies to all civilians having SOFA
status and all family members of U.S. naval service and civilian personnel
whose sponsors have SOFA status.  This includes, but is not limited to:

    (a)  Appropriated and nonappropriated fund DOD civilian employees;

    (b)  Family members of appropriated and nonappropriated fund DOD civilian
employees;

    (c)  Family members of U.S. military members; and

    (d)  Family members of employees of U.S. Government contractors.


GOVERNMENT
EXHIBIT
6B
PENGAD 800-783-6989




5. <u>Responsibility</u>. While primary responsibility for a family member's behavior is vested in the sponsor, local area coordinators have the responsibility to ensure effective enforcement of applicable laws, regulations, and standards of conduct within their area of jurisdiction. Since family members of U.S. Forces personnel are generally not subject to the UCMJ, a compelling need exists for administrative review of cases involving family member/civilian misconduct or inappropriate personal behavior. The options available per paragraph 0103 of reference (d) are somewhat limited and are administrative in nature. An administrative hearing format has been established to ensure accurate fact-finding in the review and disposition of such family member/civilian cases.

6. Generally, local area coordinators will administer and enforce the provisions of this instruction. COMNAVFORJAPAN, however, retains the right to review any administrative hearing and, if appropriate, modify its findings and actions. Additionally, COMNAVFORJAPAN may independently hold administrative hearings and award corrective actions. This independent administrative hearing includes rehearing of cases previously conducted by local area coordinators.

7. <u>Administrative Hearing Officer(s) (AHO)</u>. One or more commissioned officers may be appointed in writing, enclosure (1), by the local area coordinator and authorized to conduct hearings and recommend appropriate administrative action. Local area coordinators will ensure hearing officers are of sufficient rank and career experience and possess the necessary sound judgment to conduct orderly, timely, and well-founded hearings.

8. <u>Discussion</u>. In the present context, "misconduct" means any violation of local law, including Road Traffic Laws, and any violation of the laws of the United States. Thus, it includes common law offenses, such as larceny and assault, as well as acts prohibited by regulations such as illegal possession of drugs, black marketing, and excess purchases of controlled commodities. In some circumstances, action by U.S. or Japanese authorities (e.g., by traffic regulations or civil service regulations) may sufficiently address the problem. Normally, corrective action is appropriate and may include, either separately or in combination: verbal or written warning, suspension of privileges, removal of family members from overseas per reference (c), transfer of sponsor from overseas per reference (e), or other applicable directives. In such cases, and in others within the discretion of the local area coordinator, an administrative hearing may be conducted, as provided herein, to permit a thorough examination of the circumstances by an impartial officer. Even if a hearing is not considered necessary, and whether or not any corrective action is taken, any affected individual will always have the opportunity to respond to any allegations of misconduct.

9. <u>Reporting Requirements</u>. U.S. Forces law enforcement authorities, school officials, commissary/exchange officers, and others who receive initial information regarding alleged misconduct by family members and other SOFA status civilians located in the cognizance of COMNAVFORJAPAN area will promptly report that information to the local commander/commanding officer or command/staff/force judge advocate.

10. <u>Procedures</u>. Each incident of misconduct should be resolved as expeditiously and informally as possible. When necessary to prevent future misconduct, local area coordinators may immediately suspend any SOFA privileges, (excluding access to medical treatment facilities) pending processing of the matter. When directed by the local area coordinator, a hearing may be convened to review allegations of civilian misconduct. Enclosures (1) through (5) are sample letters to be used in implementing such a hearing. Hearing Officers should be guided by the provisions of enclosure (6) as well as reference (a).




From:  (local area coordinator)
To:

Subj:  APPOINTMENT AS ADMINISTRATIVE HEARING OFFICER (AHO)

Ref:   (a) COMNAVFORJAPANINST 1750.2A

1.  Effective _____, 19_____, you are appointed an Administrative
Hearing Officer.  You will investigate and make specific recommendations in
cases referred to you by the Commander or Commanding Officer,

_____

2.  While in the performance of your duties as an Administrative Hearing
Officer, you will be guided by and should become thoroughly familiar with all
portions of reference (a).




From: (local area coordinator)
To:

Subj: REVOCATION OF (TYPE PRIVILEGE BEING REVOKED, E.G., EXCHANGE, COMMISSARY, PACKAGE, AND CONVENIENCE STORE SHOPPING PRIVILEGES)

Ref: (a) (Incident Report, etc.)

1. Reference (a) reports you engaged in (nature of violation). Conduct of this nature cannot be tolerated. You are hereby informed that effective the date of this letter, your (privileges being revoked) privileges are revoked for a period of (time revoked). You and your sponsor must take your identification card to the Personnel Support Detachment within three working days so that it may be modified accordingly.

2. You may submit a statement in opposition of this action or you may request an administrative hearing by an impartial hearing officer. If you request a hearing, you may be represented by counsel or other personal spokesman at your own expense; however, no right exists to free or assisted legal counsel by the Government. If you choose to do so, you must submit any such statement or notify the hearing officer, ( ), within three working days of your receipt of this letter. (Hearing Officer) may be reached at the (office and phone number). In any event, your privileges will remain revoked until such time as they are reinstated by separate correspondence.

3. You are also advised that any further misconduct on your part may be grounds for criminal action and may result in additional revocation of your privileges or removal from country.

Copy to:
(Sponsor)
(Sponsor's OIC)
OIC, PERSUPP DET
--------------------------------------------------------------
I hereby acknowledge receipt of this letter.

_____        _____
        (Name)                            (Date)


_____        _____
        (Witness)                          (Date)

Enclosure (2)



From: (local area coordinator)
To:

Subj: FAMILY MEMBER LETTER OF NOTIFICATION FOR ADMINISTRATIVE HEARING

Ref: (a) COMNAVFORJAPANINST 1750.2A
     (b)

1. This is to inform you that an Administrative Hearing convened per reference (a), will consider the case of your family member, _____, arising from the alleged incident reported in reference (b).

2. Reference (b) alleges that:

3. You will be given every opportunity to be heard on any matter pertaining to this alleged incident.

4. It is requested that you appear with your family member at (location where hearing is to be conducted) (Building _____), (Fleet Activities, Naval Air Station, etc.) _____ at _____ hours on _____, 19____ .

5. If you believe the specified time and date will cause a substantial hardship, you must notify the hearing officer in writing providing in detail your reasons for the hardship and suggesting an alternate time/date. Any change of the hearing time/date is at the discretion of the hearing officer. Upon submission of your request for change in time/date, you should not assume the time/date has been changed unless you are specifically notified by the hearing officer. Please contact the hearing officer at extension _____ for further details.

Copy to:
Commanding Officer

Enclosure (3)



From: (local area coordinator)
To:

Subj: CIVILIAN LETTER OF NOTIFICATION FOR ADMINISTRATIVE HEARING

Ref: (a) COMNAVFORJAPANINST 1750.2A
     (b)

1. This is to inform you that an Administrative Hearing convened per reference (a), will consider your case involving _____, arising from the alleged incident reported in reference (b).

2. Reference (b) alleges that:

3. You will be given every opportunity to be heard on any matter pertaining to this alleged incident.

4. It is requested that you appear at (location where hearing is to be conducted) (Building _____), (Fleet Activities, Naval Air Station, etc.) at _____ hours on _____, 19____.

5. If you believe the specified time and date will cause a substantial hardship, you must notify the hearing officer in writing providing in detail your reasons for the hardship and suggesting an alternate time/date. Any change of the hearing time/date is at the discretion of the hearing officer. Upon submission of your request for change in time/date, you should not assume that the time/date has been changed unless you are specifically notified by the hearing officer. Please contact the hearing officer at extension _____ for further details.

Copy to:
Commanding Officer

Enclosure (4)




From:   (local area coordinator)
To:

Subj:   NOTIFICATION OF ACTION TAKEN AT ADMINISTRATIVE HEARING

Ref:    (a) COMNAVFORJAPANINST 1750.2A

1.

2.

3.  You are advised you may appeal this decision to Commander, U.S. Naval
Forces, Japan via (local area coordinator).  Any appeal must be in writing and
set forth all pertinent facts and the reason for such an appeal.  Any appeal
must be submitted within five working days following receipt of this
notification.




Copy to:
Commanding Officer




## PROCEDURES FOR ADMINISTRATIVE HEARINGS

The following guidelines apply to hearings to inquire into allegations of misconduct on the part of individuals not subject to the Uniform Code of Military Justice. Hearing officers are directed to follow these guidelines and consult the Staff Judge Advocate if further assistance is required.

1. The hearing officer will obtain and review all known police reports or other documentation regarding the incident or incidents.

2. Prior to the hearing, appropriate inquiries should be made to resolve issues and answer questions, which may appear from a preliminary review of investigative reports. Prior consultation with personnel within the chain of command may be useful to better understand the alleged incident.

3. The hearing officer shall notify the affected individual, or sponsor if family member is involved, as to the time and place of the hearing.

4. The hearing is intended to permit the individual or individuals whose conduct is in question to respond fully to the allegations. No formalities are required. The rules of evidence do not apply.

5. If the individual concerned or sponsor, if applicable, fails to attend the hearing without good cause, the hearing may be held in absentia.

6. The hearing officer shall review the case with the individual concerned and/or sponsor and ensure all pertinent details are provided, except identification of confidential sources may be withheld. If the hearing is based upon multiple incidents, the individual concerned should be so informed. This notification normally should be accomplished through the letter of notification, but the hearing officer shall ensure the individual is fully aware of all allegations, which may bear upon a final determination.

7. The individual or sponsor may be represented by a personal spokesman. No right exists to free or assisted legal counsel provided by the Government.

8. The hearing officer may have witnesses available to give statements, although it is not necessary if existing written statements are sufficient to describe the circumstances.

9. All matters should be freely discussed. The individual and/or sponsor shall be given an opportunity to present evidence including witnesses.

HQ, U. S. FORCES, JAPAN PAMPHLET

## PROVOST MARSHAL ACTIVITIES

# CRIMINAL JURISDICTION IN JAPAN



1 SEPTEMBER 1979



GOVERNMENT
EXHIBIT



agency. This card would be shown upon request to persons concerned when the bearer is in the performance of duty.

No 3: The United States Armed Forces will furnish, upon request, to Japanese authorities the form of the identification cards of the members of the United States Armed Forces, the civilian component, and their dependents and descriptions of the various uniforms of the United States Armed Forces in Japan.

No 4: Instructions have been issued and will be reissued periodically to members of the United States Armed Forces, the civilian component and their dependents, which emphatically direct United States personnel to obey the laws of Japan and the instructions and signals of the Japanese police.

No 5: (a) The maintenance of order and discipline among members of the United States Armed Forces outside facilities or areas utilized by such forces is a function of the United States Forces law enforcement agencies. The United States Forces law enforcement agencies may exercise their function of maintaining order and discipline among the civilian component and dependents outside such facilities or areas, subject to the conditions which may be proposed by the Japanese authorities and promulgated by the Joint Committee. The above statement shall not be interpreted to prejudice in any way the functions of either the Japanese or the United States law enforcement agencies.

(b) When both United States Armed Forces and Japanese law enforcement personnel are present on the scene where any violation of law occurs, the arrest of the members of United States Armed Forces, the civilian component or their dependents should be made by the United States law enforcement personnel and such arrested persons should be brought to the nearest Japanese Police Station. After preliminary interrogation by the Japanese authorities, the arrested person will remain with the United States authorities, and if it is a case over which Japan has the primary right to exercise jurisdiction, such arrested person will be made available for joint United States Japanese investigations as provided for in No 24, following. If, however, the Japanese authorities determine that the case is of material importance to Japan and that there is adequate cause and necessity for Japan to assume custody over such arrested persons, custody may thereafter be transferred, upon request, to the Japanese authorities.

(c) The United States Armed Forces law enforcement personnel, after coordination with Japanese authorities, will patrol trains utilized solely by United States Armed Forces. There will be

13

JERRY J. EDWARDS, Plaintiff

vs.

SECRETARY OF THE NAVY,
GORDON R. ENGLAND, Defendant

Response to Plaintiff's Request
to Secretary of the Navy,
for Production of Documents

Document(s) Requested
No. 28


GOVERNMENT
EXHIBIT
8

# AGREEMENT UNDER ARTICLE VI OF THE TREATY OF MUTUAL COOPERATION AND SECURITY BETWEEN JAPAN AND THE UNITED STATES OF AMERICA, REGARDING FACILITIES AND AREAS AND THE STATUS OF UNITED STATES ARMED FORCES IN JAPAN

Japan and the United States of America, pursuant to Article VI of the Treaty of Mutual Cooperation and Security between Japan and the United States of America signed at Washington on January 19, 1960, have entered into this Agreement in terms as set forth below:

## ARTICLE I

In this Agreement the expression−

(a)

"members of the United States armed forces" means the personnel on active duty belonging to the land, sea or air armed services of the United States of America when in the Territory of Japan.

(b)

"civilian component" means the civilian persons of United States nationality who are in the employ of, serving with, or accompanying the United States armed forces in Japan, but excludes persons who are ordinarily resident in Japan or who are mentioned in paragraph 1 of Article XIV. For the purposes of this Agreement only, dual nationals, Japanese and United States, who are brought to Japan by the United States shall be considered as United States nationals.

(c)

"dependents" means

(1)

Spouse, and children under 21;

(2)

Parents, and children over 21, if dependent for over half their support upon a member of the United States armed forces or civilian component.

## ARTICLE II

1. (a) The United States is granted, under Article VI of the Treaty of Mutual Cooperation and Security, the use of facilities and areas in Japan. Agreements as to specific facilities and areas shall be concluded by the two Governments through the Joint Committee provided for in Article XXV of this Agreement. "Facilities and areas" include existing furnishings, equipment and fixtures necessary to the operation of such facilities and areas.

(b) The facilities and areas of which the United States has the use at the time of expiration of the Administrative Agreement under Article III of the Security Treaty between Japan

E X 8

and the United States of America, shall be considered as facilities and areas agreed upon between the two Governments in accordance with sub-paragraph (a) above.

2. At the request of either Government, the Governments of Japan and the United States shall review such arrangements and may agree that such facilities and areas shall be returned to Japan or that additional facilities and areas may be provided.

3. The facilities and areas used by the United States armed forces shall be returned to Japan whenever they are no longer needed for purposes of this Agreement, and the United States agrees to keep the needs for facilities and areas under continual observation with a view toward such return.

4. (a) When facilities and areas are temporarily not being used by the United States armed forces, the Government of Japan may make, or permit Japanese nationals to make, interim use of such facilities and areas provided that it is agreed between the two Governments through the Joint Committee that such use would not be harmful to the purposes for which the facilities and areas are normally used by the United States armed forces.

(b) With respect to facilities and areas which are to be used by United States armed forces for limited periods of time, the Joint Committee shall specify in the agreements covering such facilities and areas the extent to which the provisions of this Agreement shall apply.

## ARTICLE III

1. Within the facilities and areas, the United States may take all the measures necessary for their establishment, operation, safeguarding and control. In order to provide access for the United States armed forces to the facilities and areas for their support, safeguarding and control, the Government of Japan shall, at the request of the United States armed forces and upon consultation between the two Governments through the Joint Committee, take necessary measures within the scope of applicable laws and regulations over land, territorial waters and airspace adjacent to, or in the vicinities of the facilities and areas. The United States may also take necessary measures for such purposes upon consultation between the two Governments through the Joint Committee.

2. The United States agrees not to take the measures referred to in paragraph 1 in such a manner as to interfere unnecessarily with navigation, aviation, communication, or land travel to or from or within the territories of Japan. All questions relating to frequencies, power and like matters used by apparatus employed by the United States designed to emit electric radiation shall be settled by arrangement between the appropriate authorities of the two Governments. The government of Japan shall, within the scope of applicable laws and regulations, take all reasonable measures to avoid or eliminate interference with telecommunications electronics required by the United States armed forces.

3. Operations in the facilities and areas in use by the United States armed forces shall be carried on with due regard for the public safety.

## ARTICLE IV

1. The United States is not obliged, when it returns facilities and areas to Japan on the expiration of this Agreement or at an earlier date, to restore the facilities and areas to the

condition in which they were at the time they became available to the United States armed forces, or to compensate Japan in lieu of such restoration.

2. Japan is not obliged to make any compensation to the United States for any improvements made in the facilities and areas or for the buildings or structures left thereon on the expiration of this Agreement or the earlier return of the facilities and areas.

3. The foregoing provisions shall not apply to any construction which the Government of the United States may undertake under special arrangements with the Government of Japan.

## ARTICLE V

1. United States and foreign vessels and aircraft operated by, for, or under the control of the United States for official purposes shall be accorded access to any port or airport of Japan free from toll or landing charges. When cargo or passengers not accorded the exemptions of this Agreement are carried on such vessels and aircraft, notification shall be given to the appropriate Japanese authorities, and their entry into and departure from Japan shall be according to the laws and regulations of Japan.

2. The vessels and aircraft mentioned in paragraph 1, United States Government-owned vehicles including armor, and members of the United States armed forces, the civilian component, and their dependents shall be accorded access to and movement between facilities and areas in use by the United States armed forces and between such facilities and areas and the ports or airports of Japan. Such access to and movement between facilities and areas by United States military vehicles shall be free from toll and other charges.

3. When the vessels mentioned in paragraph 1 enter Japanese ports, appropriate notification shall, under normal conditions, be made to the proper Japanese authorities. Such vessels shall have freedom from compulsory pilotage, but if a pilot is taken pilotage shall be paid for at appropriate rates.

## ARTICLE VI

1. All civil and military air traffic control and communications systems shall be developed in close coordination and shall be integrated to the extent necessary for fulfillment of collective security interests. Procedures, and any subsequent changes thereto, necessary to effect this coordination and integration will be established by arrangement between the appropriate authorities of the two Governments.

2. Lights and other aids to navigation of vessels and aircraft placed or established in the facilities and areas in use by United States armed forces and in territorial waters adjacent thereto or in the vicinity thereof shall conform to the system in use in Japan. The Japanese and United States authorities which have established such navigation aids shall notify each other of their positions and characteristics and shall give advance notifications before making any changes in them or establishing additional navigation aids.

## ARTICLE VII

The United States armed forces shall have the use of all public utilities and services belonging to,

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 107 of 153

or controlled or regulated by the Government of Japan, and shall enjoy priorities in such use, under conditions no less favorable than those that may be applicable from time to time to the ministries and agencies of the Government of Japan.

## ARTICLE VIII

The Government of Japan undertakes to furnish the United States armed forces with the following meteorological services in accordance with arrangements between the appropriate authorities of the two Governments:

(a)
Meteorological observations from land and ocean areas including observations from weather ships.

(b)
Climatological information including periodic summaries and the historical data of the Meteorological Agency.

(c)
Telecommunications service to disseminate meteorological information required for the safe and regular operation of aircraft.

(d)
Seismographic data including forecasts of the estimated size of tidal waves resulting from earthquakes and areas that might be affected thereby.

## ARTICLE IX

1. The United States may bring into Japan persons who are members of the United States armed forces, the civilian component, and their dependents, subject to the provisions of this Article.

2. Members of the United States armed forces shall be exempt from Japanese passport and visa laws and regulations. Members of the United States armed forces, the civilian component, and their dependents shall be exempt from Japanese laws and regulations on the registration and control of aliens, but shall not be considered as acquiring any right to permanent residence or domicile in the territories of Japan.

3. Upon entry into or departure from Japan members of the United States armed forces shall be in possession of the following documents:
(a)
personal identity card showing name, date of birth, rank and number, service, and photograph; and
(b)
individual or collective travel order certifying to the status of the individual or group as a member or members of the United States armed forces and to the travel ordered.
For purposes of their identification while in Japan, members of the United States armed forces shall be in possession of the foregoing personal identity card which must be presented on request to the appropriate Japanese authorities.

4. Members of the civilian component, their dependents, and the dependents of members of the United States armed forces shall be in possession of appropriate documentation issued

by the United States authorities so that their status may be verified by Japanese authorities upon their entry into or departure from Japan, or while in Japan.

5. If the status of any person brought into Japan under paragraph 1 of this Article is altered so that he would no longer be entitled to such admission, the United States authorities shall notify the Japanese authorities and shall, if such person be required by the Japanese authorities to leave Japan, assure that transportation from Japan will be provided within a reasonable time at no cost to the Government of Japan.

6. If the Government of Japan has requested the removal from its territory of a member of the United States armed forces or civilian component or has made an expulsion order against an ex-member of the United States armed forces or the civilian component or against a dependent of a member or ex-member, the authorities of the United States shall be responsible for receiving the person concerned within its own territory or otherwise disposing of him outside Japan. This paragraph shall apply only to persons who are not nationals of Japan and have entered Japan as members of the United States armed forces or civilian component or for the purpose of becoming such members, and to the dependents of such persons.

## ARTICLE X

1. Japan shall accept as valid without a driving test or fee, the driving permit or license or military driving permit issued by the United States to a member of the United States armed forces, the civilian component, and their dependents.

2. Official vehicles of the United States armed forces and the civilian component shall carry distinctive numbered plates or individual markings which will readily identify them.

3. Privately owned vehicles of members of the United States armed forces, the civilian component, and their dependents shall carry Japanese number plates to be acquired under the same conditions as those applicable to Japanese nationals.

## ARTICLE XI

1. Save as provided in this Agreement, members of the United States armed forces, the civilian component, and their dependents shall be subject to the laws and regulations administered by the customs authorities of Japan.

2. All materials, supplies and equipment imported by the United States armed forces, the authorized procurement agencies of the United States armed forces, or by the organizations provided for in Article XV, for the official use of the United States armed forces or for the use of the members of the United States armed forces, the civilian component, and their dependents, and materials, supplies and equipment which are to be used exclusively by the United States armed forces or are ultimately to be incorporated into articles or facilities used by such forces, shall be permitted entry into Japan; such entry shall be free from customs duties and other such charges. Appropriate certification shall be made that such materials, supplies and equipment are being imported by the United States armed forces, the authorized procurement agencies of the United States armed forces, or by the organizations provided for in Article XV, or, in the case of materials, supplies and equipment to be used exclusively by the United States armed forces or

ultimately to be incorporated into articles or facilities used by such forces, that delivery thereof is to be taken by the United States armed forces for the purposes specified above.

3. Property consigned to and for the personal use of members of the United States armed forces, the civilian component, and their dependents, shall be subject to customs duties and other such charges, except that no duties or charges shall be paid with respect to:

   (a)
   
   Furniture and household goods for their private use imported by the members of the United States armed forces or civilian component when they first arrive to serve in Japan or by their dependents when they first arrive for reunion with members of such forces or civilian component, and personal effects for private use brought by the said persons upon entrance.

   (b)
   
   Vehicles and parts imported by members of the United States armed forces or civilian component for the private use of themselves or their dependents.

   (c)
   
   Reasonable quantities of clothing and household goods of a type which would ordinarily be purchased in the United States for everyday use for the private use of members of the United States armed forces, civilian component, and their dependents, which are mailed into Japan through United States military post offices.

4. The exemptions granted in paragraphs 2 and 3 shall apply only to cases of importation of goods and shall not be interpreted as refunding customs duties and domestic excises collected by the customs authorities at the time of entry in cases of purchases of goods on which such duties and excises have already been collected.

5. Customs examination shall not be made in the following cases:

   (a)
   
   Units of the United States armed forces under orders entering or leaving Japan;

   (b)
   
   Official documents under official seal and official mail in United States military postal channels;

   (c)
   
   Military cargo shipped on a United States Government bill of lading.

6. Except as such disposal may be authorized by the Japanese and United States authorities in accordance with mutually agreed conditions, goods imported into Japan free of duty shall not be disposed of in Japan to persons not entitled to import such goods free of duty.

7. Goods imported into Japan free from customs duties and other such charges pursuant to paragraphs 2 and 3, may be re-exported free from customs duties and other such charges.

8. The United States armed forces, in cooperation with Japanese authorities, shall take such steps as are necessary to prevent abuse of privileges granted to the United States armed forces, members of such forces, the civilian component, and their dependents in accordance with this Article.

9. (a)
   In order to prevent offenses against laws and regulations administered by the customs authorities of the Government of Japan, the Japanese authorities and the United States armed forces shall assist each other in the conduct of inquiries and the collection of evidence.

⬤　　　　　　　　　　⬤

(b)

The United States armed forces shall render all assistance within their power to ensure that articles liable to seizure by, or on behalf of, the customs authorities of the Government of Japan are handed to those authorities.

(c)

The United States armed forces shall render all assistance within their power to ensure the payment of duties, taxes, and penalties payable by members of such forces or of the civilian component, or their dependents.

(d)

Vehicles and articles belonging to the United States armed forces seized by the customs authorities of the Government of Japan in connection with an offense against its customs or fiscal laws or regulations shall be handed over to the appropriate authorities of the force concerned.

## ARTICLE XII

1.  The United States may contract for any supplies or construction work to be furnished or undertaken in Japan for purposes of, or authorized by, this Agreement, without restriction as to choice of supplier or person who does the construction work. Such supplies or construction work may, upon agreement between the appropriate authorities of the two Governments, also be procured through the Government of Japan.

2.  Materials, supplies, equipment and services which are required from local sources for the maintenance of the United States armed forces and the procurement of which may have an adverse effect on the economy of Japan shall be procured in coordination with, and, when desirable, through or with the assistance of, the competent authorities of Japan.

3.  Materials, supplies, equipment and services procured for official purposes in Japan by the United States armed forces, or by authorized procurement agencies of the United States armed forces upon appropriate certification shall be exempt from the following Japanese taxes:

    (a) Commodity tax

    (b) Travelling tax

    (c) Gasoline tax

    (d) Electricity and gas tax.

    Materials, supplies, equipment and services procured for ultimate use by the United States armed forces shall be exempt from commodity and gasoline taxes upon appropriate certification by the United States armed forces. With respect to any present or future Japanese taxes not specifically referred to in this Article which might be found to constitute a significant and readily identifiable part of the gross purchase price of materials, supplies, equipment and services procured by the United States armed forces or for ultimate use by such forces, the two Governments will agree upon a procedure for granting such exemption or relief therefrom as is consistent with the purposes of this Article.

4. Local labor requirements of United States armed forces and of the organizations provided for in Article XV shall be satisfied with the assistance of the Japanese authorities.

5. The obligations for the withholding and payment of income tax, local inhabitant tax and social security contributions, and, except as may otherwise be mutually agreed, the conditions of employment and work, such as those relating to wages and supplementary payments, the conditions for the protection of workers, and the rights of workers concerning labor relations shall be those laid down by the legislation of Japan.

6. Should the United States armed forces or as appropriate an organization provided for in Article XV dismiss a worker and a decision of a court or a Labor Relations Commission of Japan to the effect that the contract of employment has not terminated become final, the following procedures shall apply:

   (a) The United States armed forces or the said organization shall be informed by the Government of Japan of the decision of the court or Commission:

   (b) Should the United States armed forces or the said organization not desire to return the worker to duty, they shall so notify the Government of Japan within seven days after being informed by the latter of the decision of the court or Commission, and may temporarily withhold the worker from duty;

   (c) Upon such notification, the Government of Japan and the United States armed forces or the said organization shall consult together without delay with a view to finding a practical solution of the case;

   (d) Should such a solution not be reached within a period of thirty days from the date of commencement of the consultations under (c) above, the worker will not be entitled to return to duty. In such case, the Government of the United States shall pay to the Government of Japan an amount equal to the cost of employment of the worker for a period of time to be agreed between the two Governments.

7. Members of the civilian component shall not be subject to Japanese laws or regulations with respect to terms and conditions of employment.

8. Neither members of the United States armed forces, civilian component, nor their dependents, shall by reason of this Article enjoy any exemption from taxes or similar charges relating to personal purchases of goods and services in Japan chargeable under Japanese legislation.

9. Except as such disposal may be authorized by the Japanese and United States authorities in accordance with mutually agreed conditions, goods purchased in Japan exempt from the taxes referred to in paragraph 3, shall not be disposed of in Japan to persons not entitled to purchase such goods exempt from such tax.

## ARTICLE XIII

1. The United States armed forces shall not be subject to taxes or similar charges on property held, used or transferred by such forces in Japan.

2. Members of the United States armed forces, the civilian component, and their dependents shall not be liable to pay any Japanese taxes to the Government of Japan or to any other taxing agency in Japan on income received as a result of their service with or employment by the United States armed forces, or by the organizations provided for in Article XV. The provisions of this Article do not exempt such persons from payment of Japanese taxes on income derived from Japanese sources, nor do they exempt United States citizens who for United States income tax purposes claim Japanese residence from payment of Japanese taxes on income. Periods during which such persons are in Japan solely by reason of being members of the United States armed forces, the civilian component, or their dependents shall not be considered as periods of residence or domicile in Japan for the purpose of Japanese taxation.

3. Members of the United States armed forces, the civilian component, and their dependents shall be exempt from taxation in Japan on the holding, use, transfer inter se or transfer by death of movable property, tangible or intangible, the presence of which in Japan is due solely to the temporary presence of these persons in Japan, provided that such exemption shall not apply to property held for the purpose of investment or the conduct of business in Japan or to any intangible property registered in Japan. There is no obligation under this Article to grant exemption from taxes payable in respect of the use of roads by private vehicles.

# ARTICLE XIV

1. Persons, including corporations organized under the laws of the United States, and their employees who are ordinarily resident in the United States and whose presence in Japan is solely for the purpose of executing contracts with the United States for the benefit of the United States armed forces, and who are designated by the Government of the United States in accordance with the provisions of paragraph 2 below, shall, except as provided in this Article, be subject to the laws and regulations of Japan.

2. The designation referred to in paragraph 1 above shall be made upon consultation with the Government of Japan and shall be restricted to cases where open competitive bidding is not practicable due to security considerations, to the technical qualifications of the contractors involved, or to the unavailability of materials or services required by United States standards, or to limitations of United States law.
   The designation shall be withdrawn by the Government of the United States:

   (a) upon completion of contracts with the United States for the United States armed forces;

   (b) upon proof that such persons are engaged in business activities in Japan other than those pertaining to the United States armed forces; or

   (c) when such persons are engaged in practices illegal in Japan.

3. Upon certification by appropriate United States authorities as to their identity, such persons and their employees shall be accorded the following benefits of this Agreement:

   (a) Rights of accession and movement, as provided for in Article V, paragraph 2;

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 113 of 153

(b) Entry into Japan in accordance with the provisions of Article IX;

(c) The exemption from customs duties, and other such charges provided for in Article XI, paragraph 3, for members of the United States armed forces, the civilian component, and their dependents;

(d) If authorized by the Government of the United States, the right to use the services of the organizations provided for in Article XV;

(e) Those provided for in Article XIX, paragraph 2, for members of the armed forces of the United States, the civilian component, and their dependents;

(f) If authorized by the Government of the United States, the right to use military payment certificates, as provided for in Article XX;

(g)The use of postal facilities provided for in Article XXI;

(h) Exemption from the laws and regulations of Japan with respect to terms and conditions of employment.

4. Such persons and their employees shall be so described in their passports and their arrival, departure and their residence while in Japan shall from time to time be notified by the United States armed forces to the Japanese authorities.

5. Upon certification by an authorized officer of the United States armed forces, depreciable assets except houses, held, used, or transferred, by such persons and their employees exclusively for the execution of contracts referred to in paragraph 1 shall not be subject to taxes or similar charges of Japan.

6. Upon certification by an authorized officer of the United States armed forces, such persons and their employees shall be exempt from taxation in Japan on the holding, use, transfer by death, or transfer to persons or agencies entitled to tax exemption under this Agreement, of movable property, tangible or intangible, the presence of which in Japan is due solely to the temporary presence of these persons in Japan, provided that such exemption shall not apply to property held for the purpose of investment or the conduct of other business in Japan or to any intangible property registered in Japan. There is no obligation under this Article to grant exemption from taxes payable in respect of the use of roads by private vehicles.

7. The persons and their employees referred to in paragraph 1 shall not be liable to pay income or corporation taxes to the Government of Japan or to any other taxing agency in Japan on any income derived under a contract made in the United States with the Government of the United States in connection with the construction, maintenance, or operation of any of the facilities or areas covered by this Agreement. The provisions of this paragraph do not exempt such persons from payment of income or corporation taxes on income derived from Japanese sources, nor do they exempt such persons and their employees who, for United States income tax purposes, claim Japanese residence, from payment of Japanese taxes on income. Periods during which such persons are in Japan solely in connection with the execution of a contract with the Government of the United

States shall not be considered periods of residence or domicile in Japan for the purposes of such taxation.

8.  Japanese authorities shall have the primary right to exercise jurisdiction over the persons and their employees referred to in paragraph 1 of this Article in relation to offenses committed in Japan and punishable by the law of Japan. In those cases in which the Japanese authorities decide not to exercise such jurisdiction they shall notify the military authorities of the United States as soon as possible. Upon such notification the military authorities of the United States shall have the right to exercise such jurisdiction over the persons referred to as is conferred on them by the law of the United States.

## ARTICLE XV

1.  (a)

    Navy exchanges, post exchanges, messes, social clubs, theaters, newspapers, and other non-appropriated fund organizations authorized and regulated by the United States military authorities may be established in the facilities and areas in use by the United States armed forces for the use of members of such forces, the civilian component, and their dependents. Except as otherwise provided in this Agreement, such organizations shall not be subject to Japanese regulations, license, fees, taxes or similar controls.

    (b)

    When a newspaper authorized and regulated by the United States military authorities is sold to the general public, it shall be subject to Japanese regulations, license, fees, taxes or similar controls so far as such circulation is concerned.

2.  No Japanese tax shall be imposed on sales of merchandise and services by such organizations, except as provided in paragraph 1 (b), but purchases within Japan of merchandise and supplies by such organizations shall be subject to Japanese taxes.

3.  Except as such disposal may be authorized by the Japanese and United States authorities in accordance with mutually agreed conditions, goods which are sold by such organizations shall not be disposed of in Japan to persons not authorized to make purchases from such organizations.

4.  The organizations referred to in this Article shall provide such information to the Japanese authorities as is required by Japanese tax legislation.

## ARTICLE XVI

It is the duty of members of the United States armed forces, the civilian component, and their dependents to respect the law of Japan and to abstain from any activity inconsistent with the spirit of this Agreement, and, in particular, from any political activity in Japan.

## ARTICLE XVII

1.  Subject to the provisions of this Article,

    (a)

    the military authorities of the United States shall have the right to exercise within

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 115 of 153

(b)

Japan all criminal and disciplinary jurisdiction conferred on them by the law of the United States over all persons subject to the military law of the United States;

the authorities of Japan shall have jurisdiction over the members of the United States armed forces, the civilian component, and their dependents with respect to offenses committed within the territory of Japan and punishable by the law of Japan.

2. (a)

The military authorities of the United States shall have the right to exercise exclusive jurisdiction over persons subject to the military law of the United States with respect to offenses, including offenses relating to its security, punishable by the law of the United States, but not by the law of Japan.

(b)

The authorities of Japan shall have the right to exercise exclusive jurisdiction over members of the United States armed forces, the civilian component, and their dependents with respect to offenses, including offenses relating to the security of Japan, punishable by its law but not by the law of the United States.

(c)

For the purposes of this paragraph and of paragraph 3 of this Article a security offense against a State shall include

(i)

treason against the State;

(ii)

sabotage, espionage or violation of any law relating to official secrets of that State, or secrets relating to the national defense of that State.

3. In cases where the right to exercise jurisdiction is concurrent the following rules shall apply:

(a)

The military authorities of the United States shall have the primary right to exercise jurisdiction over members of the United States armed forces or the civilian component in relation to

(i)

offenses solely against the property or security of the United States, or offenses solely against the person or property of another member of the United States armed forces or the civilian component or of a dependent;

(ii)

offenses arising out of any act or omission done in the performance of official duty.

(b)

In the case of any other offense the authorities of Japan shall have the primary right to exercise jurisdiction.

(c)

If the State having the primary right decides not to exercise jurisdiction, it shall notify the authorities of the other State as soon as practicable. The authorities of the State having the primary right shall give sympathetic consideration to a request from the authorities of the other State for a waiver of its right in cases where that other State considers such waiver to be of particular importance.

4. The foregoing provisions of this Article shall not imply any right for the military authorities of the United States to exercise jurisdiction over persons who are nationals of or ordinarily

resident in Japan, unless they are members of the United States armed forces.

5. (a)

    The authorities of Japan and the military authorities of the United States shall assist each other in the arrest of members of the United States armed forces, the civilian component, or their dependents in the territory of Japan and in handing them over to the authority which is to exercise jurisdiction in accordance with the above provisions.

  (b)

    The authorities of Japan shall notify promptly the military authorities of the United States of the arrest of any member of the United States armed forces, the civilian component, or a dependent.

  (c)

    The custody of an accused member of the United States armed forces or the civilian component over whom Japan is to exercise jurisdiction shall, if he is in the hands of the United States, remain with the United States until he is charged by Japan.

6. (a)

    The authorities of Japan and the military authorities of the United States shall assist each other in the carrying out of all necessary investigations into offenses, and in the collection and production of evidence, including the seizure and, in proper cases, the handing over of objects connected with an offense. The handing over of such objects may, however, be made subject to their return within the time specified by the authority delivering them.

  (b)

    The authorities of Japan and the military authorities of the United States shall notify each other of the disposition of all cases in which there are concurrent rights to exercise jurisdiction.

7. (a)

    A death sentence shall not be carried out in Japan by the military authorities of the United States if the legislation of Japan does not provide for such punishment in a similar case.

  (b)

    The authorities of Japan shall give sympathetic consideration to a request from the military authorities of the United States for assistance in carrying out a sentence of imprisonment pronounced by the military authorities of the United States under the provisions of this Article within the territory of Japan.

8. Where an accused has been tried in accordance with the provisions of this Article either by the authorities of Japan or the military authorities of the United States and has been acquitted, or has been convicted and is serving, or has served, his sentence or has been pardoned, he may not be tried again for the same offense within the territory of Japan by the authorities of the other State. However, nothing in this paragraph shall prevent the military authorities of the United States from trying a member of its armed forces for any violation of rules of discipline arising from an act or omission which constituted an offense for which he was tried by the authorities of Japan.

9. Whenever a member of the United States armed forces, the civilian component or a

Case 1:02-cv-00003     Document 20     Filed 04/14/2003     Page 117 of 153

dependent is prosecuted under the jurisdiction of Japan he shall be entitled:

(a)
    to a prompt and speedy trial;

(b)
    to be informed, in advance of trial, of the specific charge or charges made against him;

(c)
    to be confronted with the witnesses against him;

(d)
    to have compulsory process for obtaining witnesses in his favor if they are within the jurisdiction of Japan;

(e)
    to have legal representation of his own choice for his defense or to have free or assisted legal representation under the conditions prevailing for the time being in Japan;

(f)
    if he considers it necessary, to have the services of a competent interpreter; and

(g)
    to communicate with a representative of the Government of the United States and to have such a representative present at his trial.

10. (a)
    Regularly constituted military units or formations of the United States armed forces shall have the right to police any facilities or areas which they use under Article II of this Agreement. The military police of such forces may take all appropriate measures to ensure the maintenance of order and security within such facilities and areas.

(b)
    Outside these facilities and areas, such military police shall be employed only subject to arrangements with the authorities of Japan and in liaison with those authorities, and in so far as such employment is necessary to maintain discipline and order among the members of the United States armed forces.

11. In the event of hostilities to which the provisions of Article V of the Treaty of Mutual Cooperation and Security apply, either the Government of Japan or the Government of the United States shall have the right, by giving sixty days' notice to the other, to suspend the application of any of the provisions of this Article. If this right is exercised, the Governments of Japan and the United States shall immediately consult with a view to agreeing on suitable provisions to replace the provisions suspended.

12. The provisions of this Article shall not apply to any offences committed before the entry into force of this Agreement. Such cases shall be governed by the provisions of Article XVII of the Administrative Agreement under Article III of the Security Treaty between Japan and the United States of America as it existed at the relevant time.

## ARTICLE XVIII

1. Each Party waives all its claims against the other Party for damage to any property owned by it and used by its land, sea or air defense services, if such damage–

(a)
    was caused by a member or an employee of the defense services of the other Party

Case 1:02-cv-00003   Document 20   Filed 04/14/2003   Page 118 of 153

(b)

in the performance of his official duties; or

arose from the use of any vehicle, vessel or aircraft owned by the other Party and used by its defense services, provided either that the vehicle, vessel or aircraft causing the damage was being used for official purposes, or that the damage was caused to property being so used. Claims for maritime salvage by one Party against the other Party shall be waived, provided that the vessel or cargo salved was owned by a Party and being used by its defense services for official purposes.

2. (a)

In the case of damage caused or arising as stated in paragraph 1 to other property owned by either Party and located in Japan, the issue of the liability of the other Party shall be determined and the amount of damage shall be assessed, unless the two Governments agree otherwise, by a sole arbitrator selected in accordance with subparagraph (b) of this paragraph. The arbitrator shall also decide any counter-claims arising out of the same incident.

(b)

The arbitrator referred to in subparagraph (a) above shall be selected by agreement between the two Governments from amongst the nationals of Japan who hold or have held high judicial office.

(c)

Any decision taken by the arbitrator shall be binding and conclusive upon the Parties.

(d)

The amount of any compensation awarded by the arbitrator shall be distributed in accordance with the provisions of paragraph 5 (e) (i), (ii) and (iii) of this Article.

(e)

The compensation of the arbitrator shall be fixed by agreement between the two Governments and shall, together with the necessary expenses incidental to the performance of his duties, be defrayed in equal proportions by them.

(f)

Nevertheless, each Party waives its claim in any such case up to the amount of 1,400 United States dollars or 504,000 yen. In the case of considerable variation in the rate of exchange between these currencies the two Governments shall agree on the appropriate adjustments of these amounts.

3. For the purposes of paragraphs 1 and 2 of this Article the expression "owned by a Party" in the case of a vessel includes a vessel on bare boat charter to that Party or requisitioned by it on bare boat terms or seized by it in prize (except to the extent that the risk of loss or liability is borne by some person other than such Party).

4. Each Party waives all its claims against the other Party for injury or death suffered by any member of its defense services while such member was engaged in the performance of his official duties.

5. Claims (other than contractual claims and those to which paragraphs 6 or 7 of this Article apply) arising out of acts or omissions of members or employees of the United States armed forces done in the performance of official duty, or out of any other act, omission or occurrence for which the United States armed forces are legally responsible, and causing damage in Japan to third parties, other than the Government of Japan, shall be dealt with by Japan in accordance with the following provisions:

(a)

Claims shall be filed, considered and settled or adjudicated in accordance with the laws and regulations of Japan with respect to claims arising from the activities of its Self-Defense Forces.

(b)

Japan may settle any such claims, and payment of the amount agreed upon or determined by adjudication shall be made by Japan in yen.

(c)

Such payment, whether made pursuant to a settlement or to adjudication of the case by a competent tribunal of Japan, or the final adjudication by such a tribunal denying payment, shall be binding and conclusive upon the Parties.

(d)

Every claim paid by Japan shall be communicated to the appropriate United States authorities together with full particulars and a proposed distribution in conformity with subparagraphs (e) (i) and (ii) below. In default of a reply within two months, the proposed distribution shall be regarded as accepted.

(e)

The cost incurred in satisfying claims pursuant to the preceding subparagraphs and paragraph 2 of this Article shall be distributed between the Parties as follows:

(i)

Where the United States alone is responsible, the amount awarded or adjudged shall be distributed in the proportion of 25 percent chargeable to Japan and 75 percent chargeable to the United States.

(ii)

Where Japan and the United States are responsible for the damage, the amount awarded or adjudged shall be distributed equally between them. Where the damage was caused by the defense services of Japan or the United States and it is not possible to attribute it specifically to one or both of those defense services, the amount awarded or adjudged shall be distributed equally between Japan and the United States.

(iii)

Every half-year, a statement of the sums paid by Japan in the course of the half-yearly period in respect of every case regarding which the proposed distribution on a percentage basis has been accepted, shall be sent to the appropriate United States authorities, together with a request for reimbursement. Such reimbursement shall be made, in yen, within the shortest possible time.

(f)

Members or employees of the United States armed forces, excluding those employees who have only Japanese nationality, shall not be subject to any proceedings for the enforcement of any judgment given against them in Japan in a matter arising from the performance of their official duties.

(g)

Except in so far as subparagraph

(e)

of this paragraph applies to claims covered by paragraph 2 of this Article, the provisions of this paragraph shall not apply to any claim arising out of or in connection with the navigation or operation of a ship or the loading, carriage, or

discharge of a cargo, other than claims for death or personal injury to which paragraph 4 of this Article does not apply.

6. Claims against members or employees of the United States armed forces (except employees who are nationals of or ordinarily resident in Japan) arising out of tortious acts or omissions in Japan not done in the performance of official duty shall be dealt with in the following manner:

    (a)

        The authorities of Japan shall consider the claim and assess compensation to the claimant in a fair and just manner, taking into account all the circumstances of the case, including the conduct of the injured person, and shall prepare a report on the matter.

    (b)

        The report shall be delivered to the appropriate United States authorities, who shall then decide without delay whether they will offer an ex gratia payment, and if so, of what amount.

    (c)

        If an offer of ex gratia payment is made, and accepted by the claimant in full satisfaction of his claim, the United States authorities shall make the payment themselves and inform the authorities of Japan of their decision and of the sum paid.

    (d)

        Nothing in this paragraph shall affect the jurisdiction of the courts of Japan to entertain an action against a member or an employee of the United States armed forces unless and until there has been payment in full satisfaction of the claim.

7. Claims arising out of the unauthorized use of any vehicle of the United States armed forces shall be dealt with in accordance with paragraph 6 of this Article, except in so far as the United States armed forces are legally responsible.

8. If a dispute arises as to whether a tortious act or omission of a member or an employee of the United States armed forces was done in the performance of official duty or as to whether the use of any vehicle of the United States armed forces was unauthorized, the question shall be submitted to an arbitrator appointed in accordance with paragraph 2 (b) of the Article, whose decision on this point shall be final and conclusive.

9.

    (a)

        The United States shall not claim immunity from the jurisdiction of the courts of Japan for members or employees of the United States armed forces in respect of the civil jurisdiction of the courts of Japan except to the extent provided in paragraph 5 (f) of this Article.

    (b)

        In case any private movable property, excluding that in use by the United States armed forces, which is subject to compulsory execution under Japanese law, is within the facilities and areas in use by the United States armed forces, the United States authorities shall, upon the request of Japanese courts, possess and turn over such property to the Japanese authorities.

    (c)

        The authorities of Japan and the United States shall cooperate in the procurement of evidence for a fair hearing and disposal of claims under this Article.

10. Disputes arising out of contracts concerning the procurement of materials, supplies,

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 121 of 153

equipment, services and labor by or for the United States armed forces, which are not resolved by the parties to the contract concerned, may be submitted to the Joint Committee for conciliation, provided that the provisions of this paragraph shall not prejudice any right which the parties to the contract may have to file a civil suit.

11. The term "defense services" used in this Article is understood to mean for Japan its Self-Defense Forces and for the United States its armed forces.

12. Paragraphs 2 and 5 of this Article shall apply only to claims arising incident to non-combat activities.

13. The provisions of this Article shall not apply to any claims which arose before the entry into force of this Agreement. Such claims shall be dealt with by the provisions of Article XVIII of the Security Treaty between Japan and the United States of America.

## ARTICLE XIX

1. Members of the United States armed forces, the civilian component, and their dependents, shall be subject to the foreign exchange controls of the Government of Japan.

2. The preceding paragraph shall not be construed to preclude the transmission into or outside of Japan of United States dollars or dollar instruments representing the official funds of the United States or realized as a result of service or employment in connection with this Agreement by members of the United States armed forces and the civilian component, or realized by such persons and their dependents from sources outside of Japan.

3. The United States authorities shall take suitable measures to preclude the abuse of the privileges stipulated in the preceding paragraph or circumvention of the Japanese foreign exchange controls.

## ARTICLE XX

1. (a)

United States military payment certificates denominated in dollars may be used by persons authorized by the United States for internal transactions within the facilities and areas in use by the United States armed forces. The Government of the United States will take appropriate action to insure that authorized personnel are prohibited from engaging in transactions involving military payment certificates except as authorized by United States regulations. The Government of Japan will take necessary action to prohibit unauthorized persons from engaging in transactions involving military payment certificates and with the aid of United States authorities will undertake to apprehend and punish any person or persons under its jurisdiction involved in the counterfeiting or uttering of counterfeit military payment certificates.

(b)

It is agreed that the United States authorities will apprehend and punish members of the United States armed forces, the civilian component, or their dependents, who tender military payment certificates to unauthorized persons and that no obligation will be due to such unauthorized persons or to the Government of Japan or its agencies from the United States or any of its agencies as a result of any

unauthorized use of military payment certificates within Japan.

2. In order to exercise control of military payment certificates the United States may designate certain American financial institutions to maintain and operate, under United States supervision, facilities for the use of persons authorized by the United States to use military payment certificates. Institutions authorized to maintain military banking facilities will establish and maintain such facilities physically separated from their Japanese commercial banking business, with personnel whose sole duty is to maintain and operate such facilities. Such facilities shall be permitted to maintain United States currency bank accounts and to perform all financial transaction in connection therewith including receipt and remission of funds to the extent provided by Article XIX, paragraph 2, of this Agreement.

## ARTICLE XXI

The United States may establish and operate, within the facilities and areas in use by the United States armed forces, United States military post offices for the use of members of the United States armed forces, the civilian component, and their dependents, for the transmission of mail between United States military post offices in Japan and between such military post offices and other United States post offices.

## ARTICLE XXII

The United States may enroll and train eligible United States citizens residing in Japan, who apply for such enrollment, in the reserve organizations of the armed forces of the United States.

## ARTICLE XXIII

Japan and the United States will cooperate in taking such steps as may from time to time be necessary to ensure the security of the United States armed forces, the members thereof, the civilian component, their dependents, and their property. The Government of Japan agrees to seek such legislation and to take such other action as may be necessary to ensure the adequate security and protection within its territory of installations, equipment, property, records and official information of the United States, and for the punishment of offenders under the applicable laws of Japan.

## ARTICLE XXIV

1. It is agreed that the United States will bear for the duration of this Agreement without cost to Japan all expenditures incident to the maintenance of the United States armed forces in Japan except those to be borne by Japan as provided in paragraph 2.

2. It is agreed that Japan will furnish for the duration of this Agreement without cost to the United States and make compensation where appropriate to the owners and suppliers thereof all facilities and areas and rights of way, including facilities and areas jointly used such as those at airfields and ports, as provided in Articles II and III.

3. It is agreed that arrangements will be effected between the Governments of Japan and the United States for accounting applicable to financial transactions arising out of this Agreement.

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 123 of 153

## ARTICLE XXV

1. A Joint Committee shall be established as the means for consultation between the Government of Japan and the Government of the United States on all matters requiring mutual consultation regarding the implementation of this Agreement. In particular, the Joint Committee shall serve as the means for consultation in determining the facilities and areas in Japan which are required for the use of the United States in carrying out the purpose of the Treaty of Mutual Cooperation and Security.

2. The Joint Committee shall be composed of a representative of the Government of Japan and a representative of the Government of the United States, each of whom shall have one or more deputies and a staff. The Joint Committee shall determine its own procedures, and arrange for such auxiliary organs and administrative services as may be required. The Joint Committee shall be so organized that it may meet immediately at any time at the request of the representative of either the Government of Japan or the Government of the United States.

3. If the Joint Committee is unable to resolve any matter, it shall refer that matter to the respective Governments for further consideration through appropriate channels.

## ARTICLE XXVI

1. This Agreement shall be approved by Japan and the United States in accordance with their legal procedures, and notes indicating such approval shall be exchanged.

2. After the procedure set forth in the preceding paragraph has been followed, this Agreement will enter into force on the date of coming into force of the Treaty of Mutual Cooperation and Security, at which time the Administrative Agreement under Article III of the Security Treaty between Japan and the United States of America, signed at Tokyo on February 28, 1952, as amended, shall expire.

3. The Government of each Party to this Agreement undertakes to seek from its legislature necessary budgetary and legislative action with respect to provisions of this Agreement which require such action for their execution.

## ARTICLE XXVII

Either Government may at any time request the revision of any Article of this Agreement, in which case the two Governments shall enter into negotiation through appropriate channels.

## ARTICLE XXVIII

This Agreement, and agreed revisions thereof, shall remain in force while the Treaty of Mutual Cooperation and Security remains in force unless earlier terminated by agreement between the two Governments.

IN WITNESS WHEREOF the undersigned Plenipotentiaries have signed this Agreement.

Case 1:02-cv-00003     Document 20     Filed 04/14/2003     Page 124 of 153

DONE at Washington, in duplicate, in the Japanese and English languages, both texts equally authentic, this 19th day of January, 1960.

FOR JAPAN:
    Nobusuke Kishi
    Aiichiro Fujiyama
    Mitsujiro Ishii
    Tadashi Adachi
    Koichiro Asakai


FOR THE UNITED STATES OF AMERICA:
    Christian A. Herter
    Douglas MacArthur 2nd
    J. Graham Parsons

JERRY J. EDWARDS, Plaintiff

vs.

SECRETARY OF THE NAVY,
GORDON R. ENGLAND, Defendant

Response to Plaintiff's Request
to Secretary of the Navy,
for Production of Documents

Document(s) Requested
No. 30

Note: Circled numbers after title of each Article indicate the amendments thereto, the amending laws being referred to above as well as in Supplementary Provisions with the same circled numbers.

Amendments:

① Law No. 264, Nov. 12, 1953

Law No. 102, 1960

☐ LAW FOR SPECIAL MEASURES CONCERNING CRIMINAL CASES TO IMPLEMENT THE ADMINISTRATIVE AGREEMENT UNDER ARTICLE III OF THE SECURITY TREATY BETWEEN JAPAN AND THE UNITED STATES OF AMERICA

(Law No. 138, May 5, 1952)

CONTENTS

CHAPTER    I    GENERAL PROVISIONS
                    (Article    1)
CHAPTER   II    OFFENSES
                    (Articles   2— 9)
CHAPTER  III    CRIMINAL PROCEDURE
                    (Articles  10—20)

CHAPTER I    GENERAL PROVISIONS

(Definitions)

Article 1.    The expression " Administrative Agreement " in this Law means the Administrative Agreement under Article III of the Security Treaty between Japan and the United States of America.

2.    The expression " the United States armed forces " in this Law means the United States land, air and sea forces disposed in and about Japan under Article I of the Security Treaty between Japan and the United States of America when in the territory of Japan.

3.    The expression " members of the United States armed forces " in this Law means the personnel on active duty belonging to the United States armed forces.

4.    The expression " civilian component " in this Law means the civilian persons of United States nationality (with regard to dual nationals, United States and Japanese, only those who are brought to Japan by the United States are included) who are in the employ of, serving with, or accompanying the United

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 127 of 153

States armed forces (person who are ordinarily resident in Japan or whose presence in Japan is solely for the purpose of executing contracts with the United States for the benefit of the United States armed forces shall be excluded).

5. The expression "dependents" in this Law means the following persons (excluding those who have only Japanese nationality):

1) Spouse, and children under 21 of a member of the United States armed forces or civilian component;

(2) Parents, and children over 21, if dependent for over half their support upon a member of the United States armed forces or civilian component.

## CHAPTER II   OFFENSES

(Offense of trespassing on facilities or areas)
Article 2. Any person who, without due cause, enters any place the entrance of which is prohibited or does not leave any place when requested, within facilities or areas in use by the United States armed forces (facilities or areas as defined in Article II paragraph 1 of Administrative Agreement; hereinafter the same) shall be sentenced to penal servitude for not more than one year or a fine of not more than 2,000 yen or minor fine. Provided that, the Penal Code (Law No. 45 of 1907) shall apply when it contains the provisions punishing the offense.

(Offense of destroying evidence, etc.)
Article 3. Any person who suppresses or destroys, forges or alters another person or uses forged or altered evidence, in a criminal case involving another person over which the United States service court exercises jurisdiction under the Administrative Agreement shall be sentenced to penal servitude for not more than two years or a fine of not more than 10,000 yen.

2. In case where a relative of the offender commits the offense mentioned in the preceding paragraph in the interests of the offender, the penalty for the offense may be exempted.

(Offense of perjury)
Article 4. In case where a witness makes false statement after taking oath according to the procedure of the United

States service courts, he shall be sentenced to penal servitude for over three months but not more than ten years.

2. In case where the person who has committed the offense mentioned in the preceding paragraph makes confession before the judgment for the case in which he has testified becomes final and irrevocable, the penalty may be mitigated or exempted.

3. The provisions of the preceding two paragraphs shall apply when an expert witness or an interpreter gives false opinion or makes false interpretation after taking oath according to the procedure of the United States service courts.

(Offense of destroying or damaging things for military use, etc.)
Article 5. Any person who destroys or damages arms, ammunition, provisions, clothings and other things intended for military use belonging to the United States armed forces shall be sentenced to penal servitude for not more than five years or a fine of not more than 50,000 yen.
(Offense of violating security information of the United States armed forces)
(Ditto)
Article 6. Any person who detects or collects security information of the United States armed forces (items listed in the attached table and documents, pictures or other things containing such items, which are not made public; hereinafter the same) for the purpose of using information in such a manner as the use thereof woul[d] harm the security of the United States armed forces or by wrongful methods shall be sentenced to penal servitude for not more than ten years.

2. The provision of the preceding paragraph shall apply to a person who discloses to another person such security information of the United States armed forces as cannot ordinarily be detected or collected except by wrongful methods.

3. Attempts of the offenses mentioned in the preceding two paragraphs shall be punished.
(Ditto)
Article 7. Any person who plots to commit the offense mentioned in paragraph 1 or 2 of the preceding Article shall be sentenced to penal servitude for not more than five years.

2. The provision of the preceding paragraph shall apply

to a person who instigates or agitates another person to commit the offenses mentioned in paragraph 1 or 2 of the preceding Article.

3. The provision of the preceding paragraph shall not preclude the application of the provisions concerning instigation set forth in the General Provisions of the Penal Code in cases where a person commits the offense which he has been instigated to commit.

(Ditto)
Article 8. When any person who has committed the offense mentioned in paragraph 1 of Article 6, or paragraph 3 of the same Article or paragraph 1 of the preceding Article, both of which are related thereto, surrenders himself, the penalty may be mitigated or exempted.

(Offense of wearing U. S. armed forces uniform without due reason)
Article 9. Any person who has, without due reason, worn any uniform of a member of the United States armed forces or clothes which are intended to resemble the above shall be sentenced to detention or minor fine.

## CHAPTER III   CRIMINAL PROCEDURE

(Arrest within facilities or areas)
Article 10. Arrest, the execution of warrant of production or detention or other dispositions involving physical restraint within facilities and areas in use by and guarded under the authority of United States armed forces shall be conducted with the consent of competent authorities of United States armed forces or it shall be conducted by competent authorities of United States armed forces upon request therefor.

2. The cons nt mentioned in the preceding paragraph shall not be required in cases of arrest within facilities and areas mentioned in the same paragraph made after pursuit of a flagrant offender who has committed a crime punishable with death penalty or penal servitude or imprisonment for life or for maximum period of not less than three years.

(Turning-over of arrested members or civilian component of

the United States armed forces) ①
Article 11. If it has been confirmed by a public procurator or a judicial police officer that an arrested is a member of the United States armed forces or the civilian component and that a crime or crimes he committed come under paragraph 3 (a) of Article XVII of the Administrative Agreement, he shall be immediately turned over to the United States armed forces, notwithstanding the provisions of the Code of Criminal Procedure (Law No. 131 of 1948).

2. The judicial police officer shall, even after he has turned the suspect over to the United States armed forces under the provisions of the preceding paragraph, conduct necessary investigation and send the case to a public procurator together with documents and evidence without delay.

(Receipt of persons arrested by the United States armed forces) ①
Article 12. In cases where a public procurator or a judicial police officer is notified by United States armed forces of the turning over of any person who has committed an offense against laws or ordinances of Japan, he himself shall receive him or cause a secretary of public procurator's office or a judicial police official to receive him after showing a warrant of arrest issued by a judge.

2. In case of urgency where it is impossible for a public procurator or a judicial police officer to obtain a warrant of arrest in advance from a judge though there are sufficient reasons to suspect that the person to be turned over has committed an offense against laws or ordinances of Japan, he shall himself receive or have the suspect received after telling him the reason. In this case he shall take the procedure to obtain a warrant of arrest from a judge immediately. If the warrant of arrest is not issued, he shall immediately release the suspect or have him released.

3. Except in the cases mentioned in the preceding two paragraphs, the public procurator or judicial police officer shall release the person concerned or have him released immediately after receiving him.

4. The provisions concerning the cases where the suspect is arrested under Article 199 of the Code of Criminal Procedure

shall apply mutatis mutandis in cases where the suspect has been received under the provisions of paragraph 1 or 2. Provided that, the time prescribed in Articles 203 and 204 and Article 205 paragraph 2 of the same Code shall be counted from the time when the suspect has been received.

(Seizure, search, etc. within facilities or areas) ①

Article 13. Search (including the execution of a warrant of search), seizure (including the execution of a warrant of seizure) or inspection with respect to any persons or property within facilities and areas in use by and guarded under the authority of United States armed forces with respect to properties of United States armed forces wherever situated shall be made with the consent of competent authorities of United States armed forces or it shall be made by competent authorities of United States armed forces which are requested by a public procurator or a judicial police officer. Provided that, the request for inspection of evidence which the court or a judge needs shall be made by the court or the judge concerned.

(Investigation into cases involving offenses against laws or ordinances of Japan)

Article 14. A public procurator, a secretary of public procurator's office or a judicial police official (including a railroad public safety official) may conduct investigation even into the cases over which the United States service courts exercise jurisdiction under the Administrative Agreement if they involve offenses against laws or ordinances of Japan.

2. With respect to the investigation mentioned in the preceding paragraph, the court or a judge may issue a warrant or exercise the authority prescribed by the laws and ordinances concerning criminal procedure.

(Appearance and other duties of witness)

Article 15. Any person who is summoned by a Japanese judge to appear to the United States service courts upon their request or required to take oath or testify before the United States service courts shall obey such summons or request.

2. When any person mentioned in the preceding paragraph fails to appear or refuses to take oath or testify without due cause, he shall be sentenced to non-penal fine of not more than 10,000 yen.

(Cooperation for production of witnesses)

Article 16. With respect to those witnesses who fail to appear without due cause when summoned by a judge under the provision of paragraph 1 of the preceding Article, the judge may, when requested by the United States service courts, issue a warrant of production against such witnesses and produce them to the United States service courts.

2. The warrant of production mentioned in the preceding paragraph shall contain the statement that the request has been made by the United States service courts.

3. The warrant of production mentioned in paragraph 1 shall be executed by a judicial police official under the control of a public procurator.

4. The provisions of Article 71 and the first half of Article 73 paragraph 1 of the Code of Criminal Procedure shall apply mutatis mutandis to the production prescribed in paragraph 1.

(Presentation of documents or evidence, etc.)

Article 17. The court, a public procurator or a judicial police officer may, when requested by the United States service courts or the United States armed forces because of necessity for the trial or investigation of criminal cases, permit the examination or copying of any document or evidence kept in their custody or give a copy thereof or temporarily lend or deliver it to them.

(Cooperation in criminal cases other than those involving offenses against laws or ordinances of Japan) ①

Article 18. In cases where a public procurator or a judicial police officer is requested by the United States service courts or the United States armed forces, the civilian component, or their dependents subject to the military law of those involving offenses against laws or ordinances of Japan, he may arrest such personnel or cause a secretary of public procurator's office or a judicial police official to arrest them.

2. In cases where there is a reasonable ground to suspect that the person whose arrest is requested by the United States armed forces is in the dwelling of a person or in the premises, buildings, or vessels guarded by persons, the permission of a

judge shall be obtained to enter such places to look for him. Provided that, when it is clear that the person pursued has entered the place and it is impossible to obtain the permission of a judge because of urgency, such permission shall not be required.

3. When members of the United States armed forces, the civilian component, or their dependents subject to the military law of the United States are arrested under the provision of paragraph 1, a public procurator or a judicial police officer shall immediately turn them over to the United States armed forces.

4. When a judicial police officer has turned over members of the United States armed forces, the civilian component, or their dependents subject to the military law of the United States under the provision of the preceding paragraph, he shall report it to a public procurator.

(Ditto)

Article 19. When a public procurator or a judicial police officer is requested by the United States service courts or the United States armed forces to cooperate with them in criminal cases other than those involving offenses against laws or ordinances of Japan, he may examine the persons involved, inspect the scene of crime or request the owner, possessor or keeper of documents or other things to present them.

2. A public procurator or a judicial police officer may cause a secretary of public procurator's office or a judicial police official to effect the dispositions mentioned in the preceding paragraph.

3. Before effecting the dispositions mentioned in the preceding two paragraphs a public procurator, a secretary of public procurator's office or a judicial police official shall make it clear to the person subject to such disposition that they are effected upon the request of the United States service courts or United States armed forces.

4. Any person who, without due cause, refuses, interferes with or evades the dispositions effected by a public procurator, a secretary of public procurator's office or a judicial police official under the provisions of paragraph 1 or 2 shall be sentenced to a non-penal fine of not more than 10,000 yen.

(Criminal indemnity)

Article 20. With respect to the application of the Crimi-

nal Indemnity Law (Law No. 1 of 1950), arrest or detention by the United States service courts or United States armed forces shall be regarded as arrest or detention under the Code of Criminal Procedure.

SUPPLEMENTARY PROVISIONS: This Law shall come into force as from the day of its promulgation

SUPPLEMENTARY PROVISIONS (Law No. 264, Nov. 12, 1953): ①

1. This Law shall come into force as from the day of its promulgation.




DEPARTMENT OF THE NAVY
Office of the Secretary
Washington, DC 20350-1000

SECNAVINST 5511.36A
OP-09N1
21 July 1992

SECNAV INSTRUCTION 5511.36A

From: Secretary of the Navy
To: All Ships and Stations

Subj: AUTHORITY OF MILITARY COMMANDERS UNDER THE INTERNAL SECURITY ACT OF 1950 TO ISSUE SECURITY ORDERS AND REGULATIONS FOR THE PROTECTION OR SECURITY OF PROPERTY OR PLACES UNDER THEIR COMMAND

Ref: (a) SECNAVINST 5720.45

R) Encl: (1) DOD Directive 5200.8 of 25 April 1991

1. Purpose. To designate military commanders to promulgate regulations for the protection or security of property or places under their command, pursuant to the provisions of Section 21 of the Internal Security Act of 1950 (50 U.S.C. 797) as provided for in enclosure (1).

2. Cancellation. SECNAVINST 5511.36.

3. Applicability. This instruction applies to all components of the Department of the Navy.

4. Procedures. Commanders issuing security (R orders and regulations must comply with the provisions of enclosure (1), and, where applicable, reference (a).

DAN HOWARD
Under Secretary of the Navy

Distribution:
SNDL Parts 1 and 2
MARCORPS Code PCN 72000012700

Commandant of the Marine Corps
Headquarters, Marine Corps (POS 43)
Washington, DC 20380-0001 (50 copies)

Chief of Naval Operations
(Code OP-09B34)
Navy Department
Washington, DC 20350-2000 (240 copies)

SECNAV/OPNAV Directives Control Office
Washington Navy Yard, Building 200
Washington, DC 20374-5074 (60 copies)

Commander
Naval Investigative Service Command
(Code 02)
Washington, DC 20388-5024 (50 copies)

Stocked:
Navy Aviation Supply Office
Physical Distribution Division, Code 103
5801 Tabor Avenue
Philadelphia, PA 19120-5099 (500 copies)

0579LD0559840

GOVERNMENT EXHIBIT
9





Department of Defense
# DIRECTIVE

April 25, 1991
NUMBER 5200.8

USD(P)

SUBJECT:  Security of DoD Installations and Resources

References:  (a)  DoD Directive 5200.8, "Security of Military
                  Installations and Resources," July 29, 1980
                  (hereby canceled)
             (b)  DoD 5025.1-M, "DoD Directives System
                  Procedures," December 1990, authorized by DoD
                  Directive 5025.1, December 23, 1988
             (c)  DoD Instruction 5210.71, "Security of Selected
                  Sensitive Inventory Items—Drugs, Drug Abuse
                  Items, and Precious Metals," August 28, 1981
                  (hereby canceled)
             (d)  DoD Directive 5210.73, "Security of DoD
                  Communications Facilities," April 30, 1984
                  (hereby canceled)

## A.  REISSUANCE AND PURPOSE

This Directive:

1.  Reissues reference (a) and designates the military
commanders authorized to issue regulations for the protection or
security of property or places under their command, in accord-
ance with Section 797 of 50 U.S.C. (Section 21 of the "Internal
Security Act of 1950") (enclosure 1).

2.  Authorizes the publication of DoD 5200.8-R, "Physical
Security Program," in accordance with reference (b), to estab-
lish consistent minimum standards for the protection of DoD
installations and resources.

3.  Replaces references (c) and (d), and incorporates
necessary requirements of those DoD issuances into DoD 5200.8-R.

## B.  APPLICABILITY

This Directive applies to the Office of the Secretary of
Defense, the Military Departments (including the National Guard
and Reserve components), the Chairman of the Joint Chiefs of
Staff and the Joint Staff, the Unified and Specified Commands,
the Inspector General of the Department of Defense, the Defense
Agencies, and the DoD Field Activities (hereafter referred to
collectively as "the DoD Components").

Enclosure (1)



C.  POLICY

It is DoD policy that:

1.  Military installations, property, and personnel be protected and that applicable laws and regulations be enforced.

2.  The authority of a DoD installation commander to take reasonably necessary and lawful measures to maintain law and order and to protect installation personnel and property has long been recognized as follows:

a.  That authority extends to temporarily established "National Defense Areas" under emergency situations such as accident sites involving Federal equipment or personnel on official business.

b.  That authority also includes the removal from, or the denial of access to, an installation or site of individuals who threaten the orderly administration of the installation or site.

c.  That authority must not be exercised in an arbitrary, capricious, or discriminatory manner. Removal or denial actions must be based on reasonable grounds and be judiciously applied.

d.  Statutory authority also exists prohibiting individuals from reentering an installation after they have been removed and ordered not to reenter under Section 1382 of 18 U.S.C. (enclosure 2). If this order is violated, the commander of a DoD installation has authority to detain persons not subject to military law until the civil authorities can respond. Prosecution of offenders is appropriate.

D.  RESPONSIBILITIES

1.  The Under Secretary of Defense for Policy shall develop overall security policy including requirements for the DoD Physical Security Program.

2.  The Secretaries of the Military Departments and the Heads of the Other DoD Components shall establish policies and procedures to implement this Directive.

E.  PROCEDURES

1.  The following military commanders shall issue the necessary regulations for the protection and security of property or places under their command, in accordance with Section 797 of 50 U.S.C. (enclosure 1):

2

a.  The commanding officers of all military reserva-
tions, posts, camps, stations, or installations subject to the
jurisdiction, administration, or in the custody of the
Department of the Army.

b.  The commanding officers of all naval ships, bases,
stations, camps, activities, or installations and the commanding
officers of all Marine Corps bases, camps, stations, and supply
activities, subject to the jurisdiction, administration, or in
the custody of the Department of the Navy.

c.  The commanders of major air commands, numbered air
forces, air divisions, wings, groups, or installations subject
to the jurisdiction, administration, or in the custody of the
Department of the Air Force.

d.  The commanders of installations or activities sub-
ject to the jurisdiction, administration, or in the custody of
the Defense Agencies or separate operating activities.

e.  The commanders of installations or activities
subject to the jurisdiction, administration, or in the custody
of the Commanders in Chief of the Unified and Specified Com-
mands, or the Chairman of the Joint Chiefs of Staff.

f.  The commanders in the chain of command immediately
above an installation or activity not headed by a military
commander shall issue regulations or orders on the security of
the installation or activity.  Where there is no military
commander in the chain, necessary proposed regulations or orders
shall be forwarded to the Under Secretary of Defense for Policy
for processing.

2.  The military commanders shall prepare, conspicuously
post, and enforce the security orders and regulations issued, in
accordance with this Directive and the cited public laws, to
ensure the proper safeguarding of personnel, facilities, and
property from loss, destruction, espionage, terrorism, or
sabotage.

3.  In promulgating security regulations, the military
commanders shall comply with policies and procedures established
by the Head of the DoD Component concerned.  All security orders
and regulations shall be submitted for review to ensure legal
sufficiency by the servicing Judge Advocate or other legal
advisor to the command.

3



## F. EFFECTIVE DATE AND IMPLEMENTATION

This Directive is effective immediately. Forward two copies of implementing documents to the Under Secretary of Defense for Policy within 180 days.

Donald J. Atwood
Deputy Secretary of Defense

Enclosures - 2
1. Section 797 of title 50, United States Code (Section 21 of "the Internal Security Act of 1950")
2. Section 1382 of title 18, United States Code

4



## SECTION 797 OF TITLE 50, UNITED STATES CODE
### (SECTION 21 OF "THE INTERNAL SECURITY ACT OF 1950")

### Security regulations and orders; penalty for violation

(a) Whoever willfully shall violate any such regulation or order as, pursuant to lawful authority, shall be or has been promulgated or approved by the Secretary of Defense, or by any military commander designated by the Secretary of Defense, or by the Director of the National Advisory Committee for Aeronautics, for the protection or security of military or naval aircraft, airports, airport facilities, vessels, harbors, ports, piers, waterfront facilities, bases, forts, posts, laboratories, stations, vehicles, equipment, explosives, or other property or places subject to the jurisdiction, administration, or in the custody of the Department of Defense, any Department or agency of which said Department consists, or any officer or employee of said Department or agency, or of the National Advisory Committee for Aeronautics or any officer or employee thereof, relating to fire hazards, fire protection, lighting, machinery, guard service, disrepair, disuse or other unsatisfactory conditions thereon, or the ingress thereto or egress or removal of persons therefrom or otherwise providing for safeguarding the same against destruction, loss, or injury by accident or by enemy action, sabotage, or other subversive actions, shall be guilty of a misdemeanor and upon conviction thereof shall be liable to a fine of not to exceed $5,000 or to imprisonment for not more than one year, or both.

(b) Every such regulation or order shall be posted in conspicuous and appropriate places.

1-1

## SECTION 1382 OF TITLE 18, UNITED STATES CODE

Sec. 1382.  Entering military, naval, or Coast Guard property

Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation for any purpose prohibited by law or lawful regulation; or

Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof—

Shall be fined not more than $500 or imprisoned not more than six months, or both.

2-1

HQ, U. S. FORCES, JAPAN PAMPHLET

## PROVOST MARSHAL ACTIVITIES

# CRIMINAL JURISDICTION
# IN JAPAN



1 SEPTEMBER 1979

Case 1:02-cv-00003    Document 20    Filed 04/14/2003    Page 139 of 153

# INCIDENT REPORT

REPORT TYPE: [X] INITIAL / [ ] SUPPLEMENTAL

**AUTHORITY:** 5 USC 301;10 USC 5031;44 USC 3103 and EO 9397   **PRIVACY ACT STATEMENT**
**PRINCIPAL PURPOSE:** Used to record incident and details of criminal activity which may require investigative action by commanding officers, supervisors, security police, NCIS special agents, etc. Used to provide information to the appropriate individuals within DoD organizations who ensure that proper legal and administrative action is taken.
**ROUTINE USES:** Information may be disclosed to local, county, state and federal law enforcement for investigation and possible criminal prosecution or civil court action. Information extracted from this form may be used in other related criminal and/or civil proceedings.
**DISCLOSURE IS VOLUNTARY:** SSN is used to positively identify the individual making the statement and as a conduit to check past criminal activity records.

*SECTIONS OR BLOCKS THAT DO NOT APPLY TO A REPORTED OFFENSE SHOULD BE LEFT BLANK*

## SECTION I. ADMINISTRATIVE

| DATE REC'D (YYYYMMDD) | TIME REC'D (24 Hour) | INCIDENT RECEIVED: | | |
|---|---|---|---|---|
| 1999/01/11 | 0110 | [ ] In Person [ ] By Alarm | [ ] By Telephone [ ] By Crime Stop Call/911 | [X] By Radio [ ] Other: ____ |

## SECTION II. COMPLAINANT   *(If not Victim/Witness) (Use "Complainant/Witness/Sponsor" Addendum sheet for additional Complainants)*

| LAST NAME *(Include Jr., Sr., II, III, etc.)* | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| COLLINS | DANIEL | LLOYD | 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 | E6 |

BRANCH OF SERVICE: [ ] ARMY [X] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD [ ] OTHER: ____

STATUS: [X] REG. (ACTIVE) [ ] RESERVE [ ] RETIRED [ ] NATIONAL GUARD [ ] FAMILY MEMBER [ ] CIVILIAN EMPLOYEE [ ] CIVILIAN *(NO GOV.AFF.)*

| DUTY STATION/EMPLOYER *(INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.)* | UIC/RUC | WORK TELEPHONE |
|---|---|---|
| USS KITTYHAWK | 03363 | 2437306 |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| FPO AP 96634-2107 | YOKOSUKA | JA | |

## SECTION III. OFFENSE   *(Use "Offense" Addendum for additional Offenses)*

| DATE(S) OF INCIDENT: (YYYYMMDD) | TIME(S) OF INCIDENT: (24 Hour) | OFFENSE STATUS: (Check Only One Per Offense) |
|---|---|---|
| From: 1999/01/11  To: | From: 0110  To: | 1 [ ] ATTEMPTED [X] COMPLETED   2 [ ] ATTEMPTED [X] COMPLETED   3 [ ] ATTEMPTED [ ] COMPLETED |

### OFFENSE DATA

| NO. | STATUTORY BASIS (SEE CODE BELOW) | OFFENSE DESCRIPTION | LOCATION/ADDRESS | ON BOARD MILITARY INSTALLATION (YES/NO) |
|---|---|---|---|---|
| 1. | U | 90Z-COMMUNICATING A THREAT | HONCHO2 (IN FRONT OF BAR TENNESSEE) | NO |
| 2. | U | 90E-Drunkenness | HONCHO2 (IN FRONT OF BAR TENNESSEE) | NO |
| 3. | | | | |

**STATUTORY BASIS CODES:** (U) UCMJ  (F) Federal  (S) State  (L) Local  (X) Foreign

| WEATHER CONDITIONS: (Max 3) | | LIGHTING: | |
|---|---|---|---|
| [X] Clear  [ ] Cloudy  [ ] Rain  [ ] Foggy | [ ] Ice  [ ] Snow  [ ] Unknown  [ ] Other: ____ | [ ] Daylight  [ ] Dusk  [ ] Dawn | [X] Dark (Lighted)  [ ] Dark (Not Lighted)  [ ] Unknown |

### OFFENDER USED

[X] Alcohol
[ ] Drugs/Narcotics
[ ] Computer Equipment
[ ] Not applicable

### TYPE WEAPON/FORCE USED  (Max 3) (Enter in box an "A" if fully automatic weapon; "M" if manual; "S" if semi-automatic)

| | | | |
|---|---|---|---|
| [ ] Firearm (Not Listed) | [ ] Knife/Cutting Tool | [ ] Poison | [ ] Asphyxiation |
| [ ] Handgun | [ ] Blunt Object | [ ] Explosives | [ ] Unknown |
| [ ] Rifle | [ ] Motor Vehicle | [ ] Fire/Incendiary | [ ] None |
| [ ] Shotgun | [ ] Bodily Force (Hands/Feet) | [ ] Narcotic/Drug | [ ] Other (Specify) ____ |

### LOCATION OF OFFENSE (Enter 1,2,or 3 if multiple incidents occurred at different locations)

[ ] U.S. & Possessions    [X] Outside U.S. & Possessions

| | | |
|---|---|---|
| [ ] Exchange/Dept/Discount Store | [ ] Air/Bus/Train Terminal | [ ] Rental/Storage Facility |
| [ ] School (Elem,High)/College | [ ] Training/Service School | [ ] Lake/Waterway/Ocean |
| [ ] NCO Club/Officer Club/Bar | [ ] Training Area/Field/Woods | [ ] Contruction Site |
| [ ] Government/Public Building | [ ] Highway/Road/Alley/Sidewalk | [ ] Hospital/Clinic |
| [ ] BOQ/CBQ/Lodge/Hotel | [ ] Commissary/Grocery Store | [ ] Child Care Facility |
| [ ] Package/Liquor Store | [ ] Chapel/Church/Synagogue | [ ] Specialty Store/Concessionaire |
| [ ] Shoppette/Convenience Store | [ ] Commercial/Office Building | [ ] Quarters/Barracks/Residence/Berthing |
| [ ] Corrections Facility/Jail/Prison | [ ] Recreation Area/Park | [ ] Motor Pool/Parking Lot/Garage |

| |
|---|
| [ ] Dining Facility/Restaurant |
| [ ] Bank/Credit Union |
| [ ] Service/Gas Station |
| [ ] On Board Ship |
| [ ] On Board Aircraft |
| [X] Other (Specify) HONCHO2 (IN |
| [ ] Unknown |

### TYPE OF CRIMINAL ACTIVITY   (if larceny, forgery, pornography, gambling, drugs or weapons violation) (Max 3)

| | | |
|---|---|---|
| [ ] Buying/Receiving | [ ] Operating/Promoting/Assisting | [ ] Destruction/Vandalism |
| [ ] Cultivating/Manufacturing/Publishing | [ ] Possessing/Concealing | [ ] Harassment/Stalking |
| [ ] Distributing/Selling | [ ] Transporting/Transmitting/Importing | [ ] Other (specify) ____ |
| [ ] Exploiting Children | [ ] Using/Consuming | |

OPNAV 5527/1 JUN98        PREVIOUS EDITION IS OBSOLETE.        FOR OFFICIAL USE ONLY (When filled in)

S/N: 0107-LF-114-9800

GOVERNMENT EXHIBIT
10

# SECTION III. OFFENSE (Cont.)

**VEHICLE DESCRIPTION**

BURGLARY/B & E ONLY: ☐ Forced ☐ No Force ☐ # of Premises Entered

**VEHICLE STATUS**
☐ Suspect ☐ Stolen
☐ Recovered ☐ Target

YEAR | MAKE | MODEL

**STYLE**
☐ Sedan (2DR) ☐ Motorcycle ☐ Van
☐ Sedan (4DR) ☐ RV/Camper ☐ Boat
☐ Pickup ☐ Tractor Trailer ☐ Other:

COLOR | LICENSE PLATE # | STATE

VIN

OWNER NAME

OTHER IDENTIFYING MARKS

**METHOD OF ENTRY** *(Max 3)*
☐ Door Knob Twist
☐ Door Kicked In
☐ Door Open/Unlocked
☐ Door Pried
☐ Door Other
☐ Delivery
☐ Garage
☐ Bodily Force
☐ Sliding Door
☐ Door Type Other
☐ Lock Cut/Removed
☐ Lock Forced/Broken
☐ Lock Forced (Hasp)
☐ Lock Pried
☐ Lock Other

☐ Remain On Premise
☐ Tunneled
☐ Screen Cut
☐ Screen Pried
☐ Screen Removed
☐ Screen Other
☐ Window Broken
☐ Window Cut
☐ Window Open/Unlock
☐ Window Pried Open
☐ Window Removed
☐ Window Other
☐ Cut Hole in Wall
☐ Other:

**CONDITION OF PREMISE** *(Max 1)*
☐ Occupied
☐ Unoccupied
☐ Vacant (Temp. Unocc.)
☐ Vacant

**TOOLS USED** *(Max 3)*
☐ Bar/Pipe ☐ Pry Tool
☐ Bodily Force ☐ Saw/Drill
☐ Bolt Cutters ☐ Wire
☐ Chopping Tool ☐ Screwdriver
☐ Explosive ☐ Missile
☐ Gripping Tool ☐ Unknown
☐ Hammer ☐ Other:

## BIAS MOTIVATION

*(X) (All Hate/Bias Motivated Offenses Must be Reported to NCIS)*

| | | | |
|---|---|---|---|
| X None | Anti-Alaskan Native | Anti-Catholic | Anti-Agnostic |
| Anti-White | Anti-Asian | Anti-Islamic (Moslem) | Anti-Homosexual |
| Anti-Black | Anti-Pacific Islander | Anti-Protestant | Anti-Male Homosexual |
| Anti-Arab | Anti-Other Ethnicity/Origin | Anti-Multi-Religious Group | Anti-Female Homosexual |
| Anti-Hispanic | Anti-Multi-Racial Group | Anti-Other Religion | Anti-Heterosexual |
| Anti-American Indian | Anti-Jewish | Anti-Atheism | Anti-Bisexual |

## SECTION IV. PROPERTY (Use "Property" Addendum sheet for additional Property)

| CODE (a) | TYPE (b) | QTY | DESCRIPTION | MAKE/MODEL | SIZE | SERIAL # | COLOR | VALUE | S/U (c) | OWNER (d) | DISP (e) | # VEH. RECOVERED | DATE RECOVERED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |

### a. PROPERTY DESCRIPTION CODE

01 - Aircraft
02 - Alcohol
03 - Automobile
04 - Bicycle
05 - Bus
06 - Clothes/Furs
07 - Computer Hard/Software
08 - Consumable Goods
09 - Credit/Debit Cards
10 - Drugs/Narcotics
11 - Drug/Narcotic Equipment

12 - Farm Equipment
13 - Firearms
14 - Gambling Equipment
15 - Heavy Construction Equip.
16 - Household Goods
17 - Jewelry/Precious Metals
18 - Livestock
19 - Merchandise
20 - Money
21 - Negotiable Instruments
22 - Nonnegotiable Instruments

23 - Office-Type Equipment
24 - Other Motor Vehicles
25 - Purse/Handbag/Wallet
26 - Radio/TV/VCR
27 - Recording - Audio/Visual
28 - Recreational Vehicle
29 - Structures - Single Occupancy
30 - Structures - Other Dwellings
31 - Structures - Commercial/Bus.
32 - Structures - Industrial/Manuf.
33 - Structures - Public/Community

34 - Structures - Storage
35 - Structures - Other
36 - Tools - Power/Hand
37 - Trucks
38 - Vehicle Parts/Accessories
39 - Watercraft
77 - Other (Specify in Narrative Section)
88 - Pending Inventory
99 - Special Category

### b. TYPE PROPERTYLOSS/ETC. CODE

(1) None (4) Damaged/Destroyed (7) Stolen
(2) Burned (5) Recovered (8) Unknown
(3) Counterfeited/Forged (6) Seized/Impounded (9) Lost & Found

### c. S/U CODE
(S) SECURE
(U) UNSECURE

### d. OWNERSHIP CODE
(A) Federal Gov. (D) County Gov.
(B) State Gov. (E) Foreign Gov.
(C) City Gov. (F) Private/Personal

### e. DISPOSITION OF PROPERTY CODE
(E) Evidence (R) Return to Owner
(S) Safekeeping (O) Other

## SUSPECTED DRUG INVOLVEMENT

| DRUG TYPE (f) | EST. QUANTITY | MEASUREMENT (g) |
|---|---|---|
| | | |

### f. DRUG TYPE
(A) "Crack" Cocaine (G) Opium (M) Other Stimulants
(B) Cocaine (H) Other Narcotics (N) Barbiturates
(C) Hashish (I) LSD (O) Other Depressants
(D) Heroin (J) PCP (P) Other Drugs
(E) Marijuana (K) Other Hallucinogens (U) Unknown Drug
(F) Morphine (L) Amphetamines (X) Over 3 Drug Types

### g. TYPE DRUG MEASUREMENT

**WEIGHT**
(GM) Gram (ML) Milliliter
(KG) Kilogram (LT) Liter
(OZ) Ounce (FO) Fluid Ounce
(LB) Pound (GL) Gallon

**CAPACITY**

**UNITS**
(DU) Dosage Unit (Pills, etc.)
(NP) Number of Plants

## SECTION V. VICTIM

*(Use "Victim" Addendum sheet if more than one Victim)*

VICTIM # 1 | DD2701 ISSUED ☐ YES X NO

VICTIM RELATED TO OFFENSE #
● 1 ● 2 ○ 3 ○ 4 ○ 5 ○ 6 ○ 7 ○ 8 ○ 9 ○ 10

VICTIM RELATED TO SUSPECT #
○ 1 ○ 2 ○ 3 ○ 4 ○ 5 ○ 6 ○ 7 ○ 8 ○ 9 ○ 10

| LAST NAME (Include Jr., Sr., II, III. etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| MEBANE | DARNELL | CHARLES | 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 | E4 |

**BRANCH OF SERVICE:** ☐ ARMY ☒ NAVY ☐ AIR FORCE ☐ MARINE CORPS ☐ COAST GUARD ☐ OTHER:

**STATUS:** ☒ REG. (ACTIVE) ☐ RESERVE ☐ RETIRED ☐ NATIONAL GUARD ☒ FAMILY MEMBER ☐ CIVILIAN EMPLOYEE ☐ CIVILIAN (NO GOV. AFF.)

**DUTY STATION/EMPLOYER** *(INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.)*
USS CHANCELORSVILLE

UIC/RUC 21451 | WORK TELEPHONE 2432844

ADDRESS FPO AP 96662-1182 | CITY YOKOSUKA | STATE JAPAN | ZIP CODE

| DOB 1978/08/19 | **SEX** X Male / Female | **RACE** White / X Black / American Indian / Asian / Unknown | **ETHNICITY** Hispanic / Non-Hispanic / X Unknown | **RESIDENT STATUS** X Resident / Nonresident / Unknown |
|---|---|---|---|---|

POB BROOKLYN, NEW YORK

OPNAV 5527/1 JUN98 — PREVIOUS EDITION IS OBSOLETE. — FOR OFFICIAL USE ONLY (When filled in) — PAGE 2 OF 5 PAGES

S/N: 0107-LF-114-9600

## SECTION V. VICTIM (Cont.)

| TYPE OF VICTIM | | AGGRAVATED ASSAULT CIRCUMSTANCES (Max 2) | | INJURY TYPE (Max 5) | |
|---|---|---|---|---|---|
| [X] Individual | [ ] Religious Org'n | [ ] Argument | [ ] Assault on LE Officer | [X] None | [ ] Minor Injury |
| [ ] Business | [ ] Society/Public | [ ] Drug Dealing | [ ] Other Felony Involved | [ ] Broken Bones | [ ] Major Injury |
| [ ] Financial Institution | [ ] Other | [ ] Gangland | [ ] Other Circumstances | [ ] Poss. Int. Injuries | [ ] Loss of Teeth |
| [ ] Government | [ ] Unknown | [ ] Juvenile Gang | [ ] Unknown | [ ] Severe Laceration | [ ] Unconsciousness |
| [ ] Law Enforcement | | [ ] Lovers' Quarrel/Domestic | | | |

### RELATIONSHIP OF VICTIM TO SUSPECT (For multiple suspect's relationships, enter suspect's number in block)

| | | | | |
|---|---|---|---|---|
| [ ] Spouse | [ ] Grandparent | [ ] Stepsibling | [ ] Babysittee (Baby) | [ ] Employee |
| [ ] Com-Law Spouse | [ ] Grandchild | [ ] Other Family | [ ] Boy/Girl Friend (B/G Friend) | [ ] Employer |
| [ ] Parent | [ ] In-Law | [ ] Acquaintance | [ ] Child of B/G Friend | [ ] Otherwise Known |
| [ ] Sibling | [ ] Stepparent | [ ] Friend | [ ] Homosexual Relationship | [ ] Relationship Unknown |
| [ ] Child | [ ] Stepchild | [ ] Neighbor | [ ] Ex-Spouse | [ ] Stranger |

## SECTION VI. WITNESS/SPONSOR

*(Use "Complainant/Witness/Sponsor" Addendum sheet if more than one Witness/Sponsor.)*

TYPE/SEQUENCE #  [ ] WITNESS #  [ ] SPONSOR #

DD2701 ISSUED  [ ] YES  [ ] NO

| LAST NAME (Include Jr., Sr., II, III, etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| | | | | |

BRANCH OF SERVICE: [ ] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD [ ] OTHER:

STATUS: [ ] REG. (ACTIVE) [ ] RESERVE [ ] RETIRED [ ] NATIONAL GUARD [ ] FAMILY MEMBER [ ] CIVILIAN EMPLOYEE [ ] CIVILIAN (NO GOV. AFF.)

| DUTY STATION/EMPLOYER (INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.) | UIC/RUC | WORK TELEPHONE |
|---|---|---|
| | | |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

## SECTION VII. SUSPECT/ARRESTEE (Use "Suspect/Arrestee" Addendum sheet if more than one Suspect/Arrestee.)

TYPE/SEQUENCE #  [X] SUSPECT # 1  [ ] ARRESTEE #

SUSPECT/ARRESTEE RELATED TO OFFENSE #  ● 1 ● 2 ○ 3 ○ 4 ○ 5 ○ 6 ○ 7 ○ 8 ○ 9 ○ 10

INVOLVEMENT [X] PRINCIPAL [ ] ACCESSORY [ ] CONSPIRATOR [ ] SOLICITOR

| LAST NAME (Include Jr., Sr., II, III, etc.) | FIRST | MIDDLE | SSN/ALIEN REG.# | GRADE/RANK |
|---|---|---|---|---|
| Edwards | Jerry | Jerome | 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 | GS-12 |

BRANCH OF SERVICE: [ ] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD [X] OTHER:

STATUS: [ ] REG. (ACTIVE) [ ] RESERVE [ ] RETIRED [ ] NATIONAL GUARD [ ] FAMILY MEMBER [X] CIVILIAN EMPLOYEE [ ] CIVILIAN (NO GOV. AFF.)

| DUTY STATION/EMPLOYER (INCLUDE DEPARTMENT/COMMAND/DIVISION/UNIT, etc.) | UIC/RUC | WORK TELEPHONE |
|---|---|---|
| SRF | 62758 | 243-6498 |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| PSC 473 BOX 11 FPO AP | Yokosuka | Japan | 96349 |

| HAIR COLOR | EYE COLOR | HEIGHT | WEIGHT | DOB | POB |
|---|---|---|---|---|---|
| BLK | BRN | 6' 1" | 175 | 1971/07/15 | Sanford, NC |

ALIAS (AKA)

| SEX | RACE | ETHNICITY | RESIDENT STATUS |
|---|---|---|---|
| [X] Male | [ ] White [ ] Asian | [ ] Hispanic | [ ] Resident |
| [ ] Female | [X] Black [ ] Unknown | [X] Non-Hispanic | [X] Nonresident |
| [ ] Unknown | [ ] American Indian | [ ] Unknown | [ ] Unknown |

## DESCRIPTION

| HAIR (Max 2) | HAIR STYLE (Max 2) | FACIAL HAIR (Max 3) | COMPLEXION (Max 2) | APPEARANCE (Max 3) | IDENTIFYING MARKS (Max 3) |
|---|---|---|---|---|---|
| [ ] Unknown | [ ] Unknown | [ ] Unknown | [ ] Unknown | [ ] Unknown | [ ] Unknown |
| [ ] Bald | [ ] Afro | [ ] Clean | [ ] Light | [ ] Dirty | [ ] Tattoo |
| [ ] Receding | [ ] Braided | [ ] Medium | [ ] Medium | [ ] Disguised | [ ] Scar |
| [X] Short | [ ] Bushy- | [X] Mustache | [X] Dark | [ ] Flashy | [ ] Mark |
| [ ] Collar | [ ] Crewcut | [ ] Goatee | [ ] Freckled | [ ] Military | LOCATION (Max 3) |
| [ ] Shoulder | [ ] Greasy | [ ] Lower Lip | [ ] Tanned | [ ] Unkempt | [ ] Eye (Left/Right) |
| [ ] Long | [ ] Recruit | [ ] Beard | [ ] Acne | [ ] Odorous | [ ] Face |
| [ ] Coarse | [ ] Ponytail | [ ] Sideburns | [ ] Pocked | [X] Neat | [ ] Scalp |
| [ ] Fine | [ ] Processed | [ ] Unshaven | [ ] Ruddy | [ ] Hat | [ ] Teeth |
| [ ] Thick | [ ] Straight | [ ] Other: | [ ] Clear | [ ] Cap/Hat | [ ] Hand (Left/Right) |
| [ ] Thinning | [ ] Curly | | [ ] Other: | [ ] Sunglasses | [ ] Foot (Left/Right) |
| [ ] Wiry | [ ] Wig | | | [ ] Glasses | [ ] Leg (Left/Right) |
| [ ] Other: | [ ] Part L/R | BUILD (Max 1) | | [ ] Gloves | [ ] Arm (Left/Right) |
| | [ ] Dreadlocks | [ ] Unknown | | [ ] Mask | [ ] Shoulder (L/R) |
| | [ ] Cornrow | [ ] Thin | | [ ] Other: | [ ] Hip (Left/Right) |
| | [ ] Other: | [X] Medium | | | [ ] Stomach |
| | | [ ] Heavy | | | [ ] Chest |
| | | [ ] Muscular | | | [ ] Back |
| | | | | | [ ] Neck |
| | | | | | [ ] Buttocks |
| | | | | | [ ] Other: |

DESCRIPTION

| DRESS (Max 3) | SPEECH (Max 2) | DEMEANOR (Max 3) |
|---|---|---|
| [ ] Unknown | [ ] Unknown | [ ] Unknown |
| [ ] Gang Attire | [ ] Accent | [X] Angry |
| [ ] Camouflage | [ ] Lisp | [ ] Apologetic |
| [ ] Swimwear | [X] Loud | [ ] Calm |
| [ ] Western Attire | [ ] Mumbles | [ ] Disordered |
| [ ] Ragged Attire | [ ] Quiet | [ ] Irrational |
| [ ] Athletic Attire | [ ] Rapid | [ ] Nervous |
| [ ] Business Attire | [ ] Slow | [ ] Polite |
| [ ] Navy Uniform | [ ] Stutters | [ ] Competent |
| [ ] AF Uniform | [ ] Other: | [ ] Stupor |
| [ ] Army Uniform | | [ ] Violent |
| [ ] Marine Uniform | | [ ] Obscene |
| [ ] CG Uniform | HANDS (Max 1) | [ ] Talkative |
| [ ] Police Uniform | [ ] Unknown | [ ] Other: |
| [ ] No Attire (Naked) | [X] Right Handed | |
| [X] Casual Attire | [ ] Left Handed | |
| [ ] Other: | [ ] Ambidextrous | |

## SECTION VII. SUSPECT/ARRESTEE (Cont.)

| TYPE OF ARREST | MULTIPLE CLEARANCE | ARRESTEE WAS ARMED WITH (X up to Two) | DISPOSITON OF JUVENILE |
|---|---|---|---|
| ☐ On View<br>☐ Summons/Cited<br>☐ Taken Into Custody<br>DATE ARRESTED: | ☐ Multiple<br>☐ Count: Arrestee<br>☐ Not Applicable | ☐ Unarmed ☐ Lethal Cutting Instrument<br>☐ Handgun ☐ Club/Blackjack/Brass Knuckles<br>☐ Rifle ☐ Other (specify)<br>☐ Shotgun | ☐ Handled Within Department<br>☐ Referred to Other Authority |

## SECTION VIII. ADDITIONAL POLICE OFFICERS  (Use Narrative Section for additional Police Officers) (Other than Reporting Official)

| 1. LAST ADEPOJU | FIRST OLUFEMI | MI A | 2. LAST CARNEY | FIRST DOUGLAS | MI J |
|---|---|---|---|---|---|
| GRADE/RANK E-5 | DUTY STATION/EMPLOYER CFAY SECURITY | BADGE # | GRADE/RANK E-5 | DUTY STATION/EMPLOYER CFAY SECURITY | BADGE # |

## SECTION IX. NARRATIVE  (WHO, WHAT, WHEN, WHERE, WHY, HOW)  (Use "Narrative" Addendum sheet if more space is required.)

SUMMARY OF EVENTS
WRITTEN BY: TOMMAS

On or about 0110, 11JAN99, CROTEAU (DISPATCHER) received a radio transmission from COLLINS(FSP) about an individual suspected of Communicating a Threat and being Drunk and Disorderly in front of BAR TENNESSE in HONCHO 1. TOMMAS(MP) and PEDRO(MP) were dispatched.

On or about 0114, 11JAN99, TOMMAS and PEDRO arrived in front of BAR TENNESSE and met with MEBANE(FSP) who verbally stated EDWARDS(SUBJECT) was being drunk and disorderly after MEBANE requested to see his IEDENTIFICATION CARD after noticing EDWARDS walking with an open beer bottle.

On or about 0115, 11JAN99, ADEPOJU(MP) arrived in front of BAR TENNESSEE during which time he overheard EDWARDS state to MEBANE "When I catch you in civilian clothes I'll kick your ass" or words to that effect.

On or about 0120, 11JAN99, TOMMAS placed EDWARDS under civilian detainment. Search incident to detainment was conducted ending with negative results. EDWARDS was handcuffed

## ENCLOSURE(S)  (List additional "Enclosures" in the Narrative Section)

| ENCL # | DESCRIPTION (List all Attached Supporting Documents i.e., Statements, Photographs, Sketches, etc.) |
|---|---|
| 1 | VOLUNTARY STATEMENT OF MEBANE (2 PAGES) |
| 2 | VOLUNTARY STATEMENT OF COLLIN (2 PAGES) |
| 3 | DD FORM 629 OF EDWARDS |

## SECTION X. REPORTING/APPROVING OFFICIALS

| REPORTING OFFICIAL (NAME, RANK, TITLE & SIGNATURE) | DATE | APPROVING OFFICIAL (NAME, RANK, TITLE & SIGNATURE) | DATE |
|---|---|---|---|
| *Richard S Tomm*<br>E-6 RICHARD S TOMMAS, PATROLMAN | 1999/01/11 | *Leonard Chapman*<br>E-8 LEONARD O CHAPMAN, OPERATIONS OFFICER | 11 JAN 99 |

## SECTION XI. ADMINISTRATIVE DISPOSITION  (ADMIN USE ONLY)

| VICTIM/WITNESS NOTIFICATION: (DD Form 2701 provided) | INCIDENT STATUS: | CLEARED EXCEPTIONALLY: | DATE CLEARED: |
|---|---|---|---|
| 0 # VICTIMS NOTIFIED   0 # WITNESSES NOTIFIED | ☐ UNFOUNDED<br>☐ CLEARED BY APPREHENSION<br>☐ CLEARED EXCEPTIONALLY | ☐ DEATH OF OFFENDER<br>☐ PROSECUTION DECLINED<br>☐ EXTRADITION DECLINED | ☐ REFUSED TO COOPERATE<br>☐ JUVENILE NO CUSTODY<br>☐ NOT APPLICABLE |

| REFERRED TO/ASSUMED BY: | DISTRIBUTION |
|---|---|
| NCIS Case #:<br>INVESTIGATIONS Case #:<br>LOCAL POLICE Case #:<br>OTHER (Specify) | ☐ COMMANDING OFFICER  ☐ MEDICAL/MENTAL HEALTH<br>☐ LEGAL OFFICER/SJA  ☐ DRUG & ALCOHOL (DAPA)<br>☐ FAMILY ADVOCACY  ☐ OTHER: _____<br>☐ EQUAL OPPORTUNITY |

OPNAV 5527/1 JUN98     PREVIOUS EDITION IS OBSOLETE.     FOR OFFICIAL USE ONLY (When filled in)     PAGE 4 OF 5 PAGES

S/N: 0107-LF-114-9600

INCIDENT REPORT ADDENDUM — NARRATIVE SECTION

INCIDENT NUMBER
994619300084

REPORT TYPE:
[X] INITIAL
[ ] SUPPLEMENTAL

This form is used with OPNAV 5527/1, "Incident Report" to record additional Narrative Information.

(double locked) and transported to MPHQ, FAY. EDWARDS refused to submit to EC/IR-5000 testing. EDWARDS also refused to provide an oral or written statement.

On or about 0147, 11JAN99, CARNEY(MP) met with COLLINS who stated on or about 0110, 11JAN99, while conducting foot patrol in HONCHO 1, he and MEBANE observed an unknown black male (later identified as EDWARDS) walking with an unknown Japanese female. COLLINS observed EDWARDS with a half full open beer bottle in his hand. COLLINS stated that MEBANE said "Hey shipmate, you're not allowed to have the bottle out on the streets, and I need to see your ID card," or words to that effect. COLLINS stated that EDWARDS replied "Fuck No! I'm not going to show you my ID. I'm a civilian, go fuck yourself" or words to that effect. COLLINS further stated that during the verbal confrontation EDWARDS stated to MEBANE "I'll see you out of uniform" or words to that effect.

On or about 0150, 11JAN99, PEDRO met with MEBANE who stated on or about 0135, 11JAN99, while patrolling HONCHO with COLLINS, they observed an unknown black male (later identified as EDWARDS) walking with an unknown Japanese female. COLLINS stated that EDWARD was in possession of an open beer bottle in his right hand. COLLINS further stated that he approached EDWARDS and informed him that he was not supposed to have an open beer bottle. COLLINS stated that EDWARDS replied that "I am not in the fucking Navy and I don't have to show you shit," or words to that effect. COLLINS further stated that he requested to see EDWARDS' ID card to which EDWARDS replied "No! If you were a man you'd take off your uniform and approach me like a man should," or words to that effect.

On or about 0210, 11JAN99, EDWARDS was released to FITZPATRICK (SRF CDO) via DD FORM 629.

NOTIFICATIONS:
WATCH SUPERVISOR: MA1(SW) ASMUS notified at 0110, 11JAN99
AOPS: MAC GRIFFIN notified at 0205, 11AN99
CDO: OSC EVELAND notified at 0210, 11JAN99
SRF CDO: CPO FITZPATRICK notified at 0220, 11JAN99

Additional Police Officers:
E-4 ARNOLD D FISHER
E-6 MANOLO V PEDRO

Additional Enclosures:
4 USE OF FORCE FORM ON EDWARDS

OPNAV 5527/1B JUN98     PREVIOUS EDITION IS OBSOLETE.     FOR OFFICIAL USE ONLY (When filled in)     PAGE 5 OF 5 PAGES
S/N: 0107-LF-114-5700

Case 1:02-cv-00003     Document 20     Filed 04/14/2003     Page 144 of 153

| INCIDENT REPORT ADDENDUM - NARRATIVE SECTION | INCIDENT NUMBER 994619300084 | REPORT TYPE: [X] INITIAL [ ] SUPPLEMENTAL |

This form is used with OPNAV 5527/1, "Incident Report" to record additional Narrative information.

(double locked) and transported to MPHQ, FAY. EDWARDS refused to submit to EC/IR-5000 testing. EDWARDS also refused to provide an oral or written statement.

On or about 0147, 11JAN99, CARNEY (MP) met with COLLINS who stated on or about 0110, 11JAN99, while conducting foot patrol in HONCHO 1, he and MEBANE observed an unknown black male (later identified as EDWARDS) walking with an unknown Japanese female. COLLINS observed EDWARDS with a half full open beer bottle in his hand. COLLINS stated that MEBANE said "Hey shipmate, you're not allowed to have the bottle out on the streets, and I need to see your ID card," or words to that effect. COLLINS stated that EDWARDS replied "Fuck No! I'm not going to show you my ID. I'm a civilian, go fuck yourself" or words to that effect. COLLINS further stated that during the verbal confrontation EDWARDS stated to MEBANE "I'll see you out of uniform" or words to that effect.

On or about 0150, 11JAN99, PEDRO met with MEBANE who stated on or about 0135, 11JAN99, while patrolling HONCHO with COLLINS, they observed an unknown black male (later identified as EDWARDS) walking with an unknown Japanese female. COLLINS stated that EDWARD was in possession of an open beer bottle in his right hand. COLLINS further stated that he approached EDWARDS and informed him that he was not supposed to have an open beer bottle. COLLINS stated that EDWARDS replied that "I am not in the fucking Navy and I don't have to show you shit," or words to that effect. COLLINS further stated that he requested to see EDWARDS' ID card to which EDWARDS replied "No! If you were a man you'd take off your uniform and approach me like a man should," or words to that effect.

On or about 0210, 11JAN99, EDWARDS was released to FITZPATRICK (SRF CDO) via DD FORM 629.

NOTIFICATIONS:
WATCH SUPERVISOR: MA1(SW) ASMUS notified at 0110, 11JAN99
AOPS: MAC GRIFFIN notified at 0205, 11AN99
CDO: OSC EVELAND notified at 0210, 11JAN99
SRF CDO: CPO FITZPATRICK notified at 0220, 11JAN99

Additional Police Officers:
E-4 ARNOLD D FISHER
E-6 MANOLO V PEDRO

Additional Enclosures:
4 USE OF FORCE FORM ON EDWARDS

## DEPARTMENT OF THE NAVY
### SECURITY DETACHMENT, FLEET ACTIVITIES, YOKOSUKA
PSC 473 BOX 15
FPO AP 96349-1104

Case Number: _9946193000 84_

The following report will be completed when force is used by Military Police to affect and maintain the apprehension of a person subject to the UCMJ.

### Person on Whom Force Was Used

_EDWARDS, JERRY JEROME_     _GS-12-CIV_     _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_     _SRF_
Name (Last, First Middle)     Rate     SSN     Command

Condition of Individual: ( ) Sober     (✗) Drinking     ( ) Drunk

Type of Force Used:  ( ) Night Stick     ( ) Fist
                ( ) Open Hand     (✗) Handcuffs
                ( ) Other (Specify) _____

### Injury Incurred by Individual

Type and Extent of Injury:

_NONE_

### Reason for Use Force

_APPREHENSION AND TRANSPORTATION_

### Witnesses

| Name | Rate | SSN | Command |
|------|------|-----|---------|
| _PEDRO, MANOLO_ ✓ | _AMH¹(AW)_ | _565 93 9879_ | _CFAY SECURITY_ |
| | | | |
| | | | |

_Richard S Tommas_
Signature of MP Using Force

Print: _TOMMAS, RICHARD_     _SM1_     _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_
          Name     Rate     SSN

Note: Sworn statements will be obtained from all witnesses. This from will accompany by all statements and will immediately be turned over to the duty section chief.

CFAY 5510/8 (Rev. 1-98)

_83_

DEPARTMENT OF THE NAVY

# VOLUNTARY STATEMENT

| 1. PLACE |
| --- |
| MPHQ, FAY |

| 2. DATE |
| --- |
| 11 JAN 99 / 0140 |

I, COLLINS DANIEL LLOYD/E-6-USN/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/USS KITTY HAWK make the following

free and voluntary statement to ADEJOJU, O/E-5-USN/CFAY SECURITY

~~CARLEY, DOUGLAS JOSEPH/PC2-USN/521233309/CFAY Security~~

whom I know to be _____
MILITARY POLICE

I make this statement of my own free will and without any threats or promises extended to me. I fully understand

that this statement is given concerning my knowledge of COMMUNICATING A THREAT/ DRUNK IN DISORDERS

For the purpose of identification, I am a _Male_, _white_, born on
_15 NOV 61_ in _Wichita Falls, TX_. I am _5'7"_ tall and weigh _185_ lbs.
I have _Red_ hair and _Brown_ eyes. I have the following identifying marks:
_appendix operation scar_. I currently reside at _USS Kitty Hawk_.
My home telephone number is _243_ -6085 and my work extension is _X6799_
My initials are _DE_

ON or about 0110, 11 Jan 99, while on foot patrol in Honcho #1, Yokosuka, Japan me and my partner observed a black male, and a Japanese National female walking down the Street. The male had a half full bottle of Beer in his hand, and appeared to be a service member. My Partner said something to the effect, Hey shipmate, you're not allowed to have the bottle out on the streets, I need to see your ID Card. He said Fuck NO, I'm not going to show you my ID, I'm a Civilian, go fuck yourself. Me and my partner talked about it for a few seconds and decided to Call Security. While my Partner was on the radio, he appeared to want to approach US, but the Japanese girl was holding him back.

During the confrontation, he relayed a threat to my partner saying "I'll see you out of uniform".

Within a couple minutes, Three patrol ~~men~~ cars showed up and took over. He was very rude and loud throughout the whole incident. DE Continued on page 2 DE

INITIALS: DE

84

PAGE OF 2

CONTINUATION STATEMENT OF: COLLINS, DANIEL LLOYD/E-4/SN/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/USS KITTYHAW.

( LAST -, FIRST , MIDDLE / RATE-BR / SSN - / COMMAND

DC End of Statement DC

The following statement consists of __2__ pages, hand written by _AMH1 Collins_ in the presence of _FC2 Carney_____ (MP), as we discussed its contents. I have been given the opportunity to make any changes I so desire. This statement is the truth to the best of my knowledge and belief.

Subscribed and sworn to before

me on _11JAN99_ , _0204_ .
   (Date)     (Time)

Daniel Lloyd Collins
       Printed Name

UCMJ ART. 136 (b)(1)
     Signature

Swearing Official Signature

_11JAN99_ , _0205_
  (Date)     (Time)

_11 Jan 99_ , _0203_
  (Date)     (Time)

Preparers
Initials: _DC_

DEPARTMENT OF THE NAVY

**VOLUNTARY STATEMENT**

1. PLACE

CFAY SECURITY DEPT

2. DATE

11 JAN 99

I, MCBANE, DARNELL CHARLES / E4-USN / 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 / USS CHANCELORSVILLE, make the following

free and voluntary statement to PEDRO / E6-USN / MILITARY POLICE,

whom I know to be _____.

I make this statement of my own free will and without any threats or promises extended to me. I fully understand

that this statement is given concerning my knowledge of COMMUNICATING A VERBAL THREAT

For the purpose of identification, I am a _____ BLACK _____, _____ MALE _____,

born on 1978 AUG 19 in BROOKLYN, NEW YORK. I am 72" tall and

weigh 175 lbs. I have BRN hair and BRN eyes. I have the following

identifying marks: TATTOO ON RT FOREARM. I

currently reside at USS CHANCELORSVILLE FPO AP 96662-1183. My home telephone number

is N/A and my work extension is _____. My initials

are DCM.

On or about 11, JAN 1999, APPROXIMATELY 0135. PO1 DANIEL AND I WAS

WALKING FROM THE A CLOB. WE CROSS-A-STREET ~~AND IN FRON~~ IN FRONT OF BAR-TENDENCY AND BEFORE ENTERING

THE HONCHO, WE SAW A BLACK-MALE WALKING WITH A JAPANESE WOMEN.

THE BLACK-MALE HAD AN OPEN ~~BOTTLE~~ BEER BOTTLE IN HIS RIGHT HAND.

I APPROACH THE MALE AND TOLD HIM HIS NOT SUPPOSE TO HAVE

AN OPEN BEER BOTTLE, HE TOLD ME HE IS NOT IN THE FUCKING

NAVY, THAT'S WHEN I ASKED FOR HIS I.D.. HE TOLD AGAIN HE

IS NOT IN THE FUCKING NAVY AND HE ~~DON'T~~ HAVE TO SHOW ME

SHIT. ~~HIS~~ THEN, I ~~ASKED~~ TOLD HIM WE NEED TO SEE I.D.

FOR ~~CLA~~ CLARIFICATION, HE TOLD ME "NO" AND HE SAID "IF I WAS

MAN TO TAKE MY UNIFORM AND FUCKING APPROACH HIM LIKE A MAN SHOULD.

THAT'S WHEN ~~HE'S GRI~~ HIS JAPANESE GIRLFRIEND HELD HIM BACK

FROM ~~APPROACHING US~~ CHARGING US, TELLING HIS GIRLFRIEND TO LET HIM

FUCKING GO. THAT'S WHEN I CALLED ~~IN~~ POLICE HEADQUARTER AND

TOLD THEM SITUATION AND TO BRING A LOT OF BACKDROP BECAUSE HE

INITIALS:

86

PAGE OF

I SAW THE THIS MAN WAS INTOXICATED. AND ~~PROBABLY WAS ABOUT~~

~~TO USE VI.~~ (DCM). I ALSO TOLD THE MILITARY POLICE THIS MAN WAS USING

a lot of ~~VIOLENCE~~ DCM PROFIENTY and THREATEN TO FIGHT ME.

DCM

No Further Entry

DCM

The following statement consists of _62_ pages, hand written by MEBANE, DARNELL C.
in the presence of _PEPEO, M.V_ (MP), as we discussed its contents. I have been
given the opportunity to make any changes I so desire. This statement is the truth to the
best of my knowledge and belief.

Subscribed and sworn to before

me on _11 Jan 99_ / _0220_ .
    (Date)      (Time)

UCMJ ART 136(b)(4)

_____
Swearing Official Signature

_11 Jan 99_ / _0220_
  (Date)      (Time)

MEBANE, DARNELL
Printed Name

_____
Signature

_11-JAN-99_ / _0219_
  (Date)      (Time)

Preparers



**DEPARTMENT OF THE NAVY**
COMMANDER FLEET ACTIVITIES
(YOKOSUKA, JAPAN)
PSC 473, BOX 1
FPO AP 96349-1100

I, James M. Wylie, under penalty of perjury pursuant to 28 U.S.C. 1746, do hereby declare as follows:

I am a Captain (O6) in the U.S. Navy and Commanding Officer of Fleet Activity Yokosuka, Japan. I have been in my current position since August 97. Briefly, my responsibilities include maintaining the good order, discipline, and welfare of over 25,000 U.S. Military and Civilian personnel assigned to Yokosuka Naval Base, Japan. These responsibilities extend into maintaining and fostering positive relationships with our host communities and foreign government. As Commander Fleet Activities, Yokosuka, I direct and manage 33 functional units with over 3,000 military, civilian, and local national personnel stretching throughout Japan's Kanto Plain. My activities' primary mission includes providing base support for 12 forward deployed Naval vessels and 42 tenant activities. Functional areas within my immediate control include mission support (port operations and ordnance), facilities management (master planning, maintenance and new construction), community support (Bachelor Housing, Family Service Center, and Morale, Welfare and Recreation), and command support (information technology, public affairs and personnel management).

I first became aware of incidents involving Mr. Edwards on or about 19 Oct 98 through a note I received from my Staff Judge Advocate.

On 20 January 2000, I debarred Mr. Jerry Edwards from Fleet Activities Yokosuka/Yokohama, the New Sanno Hotel, Tokyo and all other units, facilities or areas under my control because of his history of alcohol related instances and propensity for violent actions. Such behavior, whether on or off base, reflects poorly on our activity and diminishes our efforts to build strong relations with our host communities and government. Mr. Edward's debarment will remain in effect until 19 January 2001. The document I signed, ordering debarment is contained in Exhibit 4f, page 47 of the investigative report submitted by the Office of Complaint Investigations, Sacramento, California.

**GOVERNMENT EXHIBIT**

11

In arriving at my decision I considered my Legal Counsel's recommendations and Mr. Edward's history of offenses, which include:

| Dates | Offenses |
|---|---|
| 26 Dec 96 | Simple Assault |
| 13 Nov 97 | Simple Assault |
| 8 Oct 97 | Drunk Driving |
| 20 Jan 99 | Drunk & Disorderly/Communicating a Threat |

On 4 February 1999, I denied Mr. Edwards' appeal of the debarment order. I made my decision based on the fact that conclusive evidence existed that he was drunk and disorderly, admitted to asking an official base representative to enter into an altercation, and communicated a threat. Mr. Edwards did not provide any evidence to support retraction of the debarment order.

I was aware that Mr. Edwards was working for the Morale, Welfare and Recreation Department when I made the decision to order his debarment.

During the period September 1997 to the present, I have made the decision to order approximately 50 other individuals' debarment. The following charts reflects debarment numbers and offenses:

| Offenses | 1999 | 1998 | AA | C | A | U | AA | C | A | U |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  | 19 | 9 | 8 |  | 19 | 9 | 9 |  |
| Trespassing | 6 | 5 | 1 | 3 | 1 | 0 | 1 | 1 | 3 | 1 |
| Drugs | 3 | 5 | 0 | 2 | 2 | 1 | 0 | 1 | 0 | 2 |
| Aggravated assault | 5 | 9 | 1 | 1 | 1 | 6 | 0 | 4 | 0 | 1 |
| Larceny | 3 | 3 | 1 | 0 | 0 | 2 | 0 | 2 | 1 | 0 |
| Drunk and disorderly | 3 | 2 | 0 | 0 | 1 | 1 | 1 | 2 | 0 | 0 |
| Harassing comments | 0 | 4 | 0 | 0 | 1 | 3 | 0 | 0 | 0 | 0 |
| Destruction of Gov't property | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Sexual assaults | 0 | 2 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 |
| Terrorism | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| Miscellaneous | 3 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 0 | 0 |
| Total | 24 | 33 |  |  |  |  |  |  |  |  |
| AA= African American, C= Caucasian, A= Asian, U= Unknown | | | | | | | | | | |

I did not consider Mr. Edwards' race or color in making my decision. I was unaware of any prior EEO involvement by Mr. Edwards at the time of my decision.

I did not discriminate against Mr. Edwards because of his race, nor were any other prohibited or discriminatory factors considered in my decisions.

My race is Caucasian and my color is White.

END OF STATEMENT

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

Signed this 12 MAY day of 2000.

J.M. WYLIE
Captain, USN,
Commanding Officer
Command Fleet Activity, Yokosuka