LAW OFFICES
# TARPLEY & MORONI, LLP
A Law Firm including a Professional Corporation
American Life Building
137 Murray Boulevard, Ste 201
Hagåtña, Guam 96910-5104
Telephone: (671) 472-1539
Fax: (671) 472-4526



FILED
DISTRICT COURT OF GUAM
MAY - 2 2003
MARY L. M. MORAN
CLERK OF COURT

*Attorney for Plaintiffs*

UNITED STATES DISTRCIT COURT

TERRITORY OF GUAM

| | | |
|---|---|---|
| JERRY J. EDWARDS, | ) | CIVIL CASE NO. 02-00003 |
| Plaintiff, | ) | |
| v. | ) | **OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| SECRETARY OF THE NAVY, GORDON R. ENGLAND, | ) | |
| Defendant. | ) | |

The facts presented by the Defendant are basically accurate but incomplete. As shown by these facts, Mr. Edwards has brought this Title VII complaint because he believes he was debarred from an American military installations in Japan, because of a racially motivated recommendation made by the head of security at the Yokosuka military installation, Master Chief Moore.

As shown in Defendant's Statements of Facts, Edwards claim arises out of an incident that took place outside of a Yokosuka installation. What is not emphasized in defendant's statement is that at the time that Mr. Edwards was accosted by U.S. military police, he was completely off base and off-duty from his civilian job at the military installation. (Def. Ex 5) The military security officers, had no reason to be harassing Mr. Edwards, or

to even be concerned about his affairs. Nevertheless, even though he was a civilian, and was not on U.S. property, he was arrested by the shore patrol for holding an open bottle of beer. Nobody was hurt in the incident. No property was damaged.

The next day this incident came to the attention of Master Chief Moore. Without conducting any investigation or hearing, Master Chief Moore made a recommendation to his superiors that Mr. Edwards be permanently debarred from Yokosuka military installation. (Ex. A) His recommendation was ultimately adopted by Moore's superiors, and Mr. Edwards was debarred. Mr. Moore was employed as a civilian on the base. The debarment caused him to lose his employment. To make matters worst, the debarment was extended to cover other military installations throughout Japan. This made it impossible for Mr. Edwards to find work anywhere in Japan until the debarment was lifted some two years later.

It is Mr. Edwards' position that Master Chief Moore's determination to recommend debarment was racially motivated. There is just no other explanation as to why Master Chief Moore would make such a harsh recommendation for such a minor incident.

As it turns out, Moore had a reputation and a history of treating Blacks differently than Whites. His racist mentality explains his attitude towards Mr. Edwards, and the harsh action that he recommended. Attached is the declaration of Dennis Morgan, in which he explains that Moore had a long history of treating blacks differently than members of other races, and that Moore displayed a conspicuous racist attitude. This evidence is

sufficient to create an issue of fact and to entitle Edwards to present his case to a jury.

## Argument

Defendant cites various cases in its brief regarding the authority of a commanding officer to exclude individuals from a military installation. The cases are not relevant. None of the cases cited by defendant are Title VII cases. Most of the cited cases are 42 USC 1983 claims and conclude that due process does not require a commander conduct a hearing regarding a decision to deny a civilian access to a base. **Serrano Medina v. U.S., 709 F.2d 104 (C.A.Puerto Rico,1983)**

None of the cases suggest that the analysis of a title VII case regarding disbarment from a base, should be any different than any other Title VII case. In fact, the cases cited by Defendant recognize that the broad discretion given to base commanders does not authorize disbarment on arbitrary or discriminatory grounds. **Serrano Medina v. U.S., 709 F.2d 104 (C.A.Puerto Rico,1983).** ("Although appellant had no right to continued admission to the base, *he could not have been excluded for reasons that were patently arbitrary or discriminatory; for example, on the grounds of race or religion.*"); **Bridges v. Davis, 43 F.2d 970 (C.A.Hawaii 1971)** ("Any review of this discretion, *other than to determine whether the action was patently arbitrary or discriminatory*, is precluded by the logic of both Cafeteria Workers and Orloff.").

It is clear that in the Ninth Circuit, the requirements for defeating a motion for summary judgment in a Title VII case are

minimal. Only in extreme cases should summary judgment be granted to an employer. **Lam v. University of Hawaii, 40 F.3d 1551 (C.A.9 1994)** ("[w]e require very little evidence to survive summary judgment" in a discrimination case, "because the ultimate question is one that can only be resolved through a 'searching inquiry'--one that is most appropriately conducted by the factfinder, upon a full record."): **Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115 (C.A.9 2000)** ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."); **Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir.1996)** ("…very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder…").

Defendant contends that summary judgment should be granted because the base commander, Captain Wylie, reasonably relied on the recommendation of his subordinate, M.C. Moore, in determining that Edwards should be barred from base. Defendant argues that the Navy cannot be liable if a subordinate is motivated by prejudice, so long as the final decision maker is not. That is clearly not the law. The Ninth Circuit rejected this type of reasoning in **Lam v. University of Hawaii , 40 F.3d 1551 (C.A.9 1994)** a case involving discrimination at a university:

> The principal defendant in this case is the University, which has delegated to the faculty near-total control over hiring. The faculty, first in committee, then as a whole, reviews

applications, chooses the final candidates, and votes on whether to extend any candidate an offer of employment. The hiring process is therefore not insulated from the illegitimate biases of faculty members. Indeed, since the faculty is small--only fifteen members--and great emphasis is placed on collegiality and consensus decisionmaking, even a single person's biases may be relatively influential. That is particularly true where, as here, that person plays a significant role in the selection process and leads the fight pro or con with respect to a particular candidate. See Gutzwiller v. Fenik, 860 F.2d 1317, 1327 (6th Cir.1988) (two biased faculty votes sufficient to establish discriminatory employment decision in tenure process that required decisions at four separate levels).

As other courts have recognized, discrimination at any stage of the academic hiring or promotion process may infect the ultimate employment decision. Roebuck v. Drexel Univ., 852 F.2d 715, 727 (3d Cir.1988). Accordingly, a plaintiff in a university discrimination case need not prove intentional discrimination at every stage of the decisionmaking process; impermissible bias at any point may be sufficient to sustain liability. Id.; Fields v. Clark University, 817 F.2d 931, 933-35 (1st Cir.1987) (where departmental recommendation important, evidence of sexist bias within sociology department sufficient to sustain liability under Title VII, even absent evidence of improper bias on the part of the ultimate deciding authority). Here, the purported bias allegedly had its ultimate impact at the faculty meeting stage.

It is Edwards' contention that Master Chief Moore was racially motivated, and that this prejudice caused him to recommend to Captain Wylie that Edwards be barred from base.

The declaration of Dennis Morgan is sufficient to create an issue of fact. Mr. Morgan personally witnessed M.S. More in his

capacity as a Naval Security officer treat blacks in a discriminatory manner. The evidence present by that declaration is considerably more than was presented in other cases, where the Ninth Circuit ruled that the evidence was sufficient to defeat summary jugment. See **Lam v. University of Hawaii, 40 F.3d 1551 (C.A.9 1994)**("There was also evidence that another white male professor had stated that, given Japanese cultural prejudices, [F the PALS director should be male. This evidence is, as a matter of law, sufficient to preclude the award of summary judgment for defendants."]

Dated this 2 day of May, 2003.

*Ron Moroni*
Ron Moroni

20 January 1999

MEMORANDUM

From: Assistant Security Officer, COMFLEACT, Yokosuka
To: Commander Fleet Activities, Yokosuka
Via: (1) Chief Staff Officer, COMFLEACT, Yokosuka

Subj: RECOMMENDATION OF DEBARMENT, ICO: MR. JERRY JEROME EDWARDS, 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, ADDENDUM TO RECOMMEDATION OF 7 OCTOBER 1998

Ref: (a) Recommendation of Debarment, ICO: Mr. Jerry Jerome EDWARDS, dated 7 October 1998

1. Recommend Mr. EDWARDS be permanently debarred from entering any facility or activity under the control of Commander Fleet Activities, Yokosuka and the outlying facilities of Ikego and Negishi.

2. Reference (a) was sumbitted in October 1998, however, it was determined EDWARDS would not be debarred at that time, as his last incident was almost a year old. However, on 11 January 1999, EDWARDS was again involved in an incident of drunk and disorderly conduct, and communicating a threat towards a member of the Fleet Shore Patrol.

3. <u>Additional background</u>. EDWARDS was hired in the late September 1998/early October 1998 timeframe, by the AMSEC Corporation and provided GS-12 equivalency status and an overseas (SOFA) identification card. AMSEC is a subsidiary of the Science Applications International Corporation from San Diego, California, subcontracted to SRF. However, when I checked with the local supervisor, it was revealed that although EDWARDS was hired and provided a SOFA status ID card, he has not yet worked a single day. The Supervisor stated EDWARDS had been hired on a part time basis for a job that has not yet been determined. Since that time, EDWARDS applied and was hired by MWR, without any local or other type background check being conducted. According to MWR, they did not request a background check because EDWARDS was already here in a SOFA status based on his employment at SRF. Consequently, EDWARDS, although released from the Navy with a less than honorable discharge because of repeated behavioral problems, has remained in Japan, with access to the base, and enjoying full privileges, including Exchange and Commissary.

"A"



Subj: RECOMMENDATION OF DEBARMENT, ICO: MR. JERRY JEROME EDWARDS, 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, ADDENDUM TO RECOMMEDATION OF 7 OCTOBER 1998

4. Furthermore, as a result of his 11 January 1999 incident, where he was drunk, disorderly, and uncooperative with Shore Patrol and Security personnel, and threatened a member of the Fleet Shore Patrol, he is being debarred ONLY for a period of two years.

5. Once again Mr. EDWARDS as clearly established (both on active duty and as a civilian employee) that he has difficulty with alcohol and the use of violence against others. It should be noted that these are the only incidents that we are currently aware of, we are not aware of all the incidents that led USS FIFE to their decision to administratively separate Mr. EDWARDS. If he were to have continued his active service with the disciplinary problems noted above, he would not have screened for continued overseas assignment. His personal conduct and continued association with the United States Navy and Government here in Japan, are not conducive to the maintenance of ambassadorship we are attempting to present to our host nation of Japan.

Very respectfully,

/s/
S. B. MOORE
MACM(SW)USN

Copy to:
Command Judge Advocate
Security Officer
Command Master Chief
File