ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
EDWARD J. LYNCH
Special Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
JUL 1 8 2003
MARY L. M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| JERRY EDWARDS, | CIVIL CASE NO. 02-00003 |
| Plaintiff, | |
| v. | |
| GORDON ENGLAND, SECRETARY OF THE NAVY, | |
| Defendant. | |

### DEFENDANT'S TRIAL BRIEF

Pursuant to Local Rules 16.7b Defendant hereby submits its Trial Brief.

### I. INTRODUCTION

This is an employment discrimination action in which Plaintiff, JERRY EDWARDS (Edwards), a civilian employee of the Department of the Navy at Fleet Activities Japan, Yokosuka, Japan, (military base) has brought claims of Title VII Race Discrimination and Retaliation. Edwards was barred from then military base in accordance with local procedures because of an off-base altercation with military security forces. United States military bases in Japan have a individualized procedures for debarment from a particular installation by

order of the installations Commanding Officer. Each Commanding Officer's decision to ban an individual from a particular base is an individual decision of each commanding officer. It is an undisputed fact that the Commanding Officer Fleet Activities Japan barred Mr. Edwards from his base as a result of altercation off- base with military security forces. It is also undisputed by the parties that this incident when reviewed by other base or installation commanders resulted in his debarment from other military installations in Japan. This debarment effectively terminated his employment on the Morale and Welfare Department of Fleet Activities Yokosuka and limited his ability to obtain employment with any other military units in Japan.

The parties are in agreement that material facts demonstrate that removal from the base in Yokosuka was a decision made by the Commanding Officer of the base upon recommendation of the Security officer and Judge Advocate assigned to Fleet Activities Yokosuka.

The Plaintiff seeks relief from what he asserts was a systematic procedure where the inherent authority and discretion of the Commanding Officer granted under Title 10, United States Code, and Title 18, United States Code, Section 1382, to restrict access to installations under his control, was manipulated by the security officer for discriminatory purposes. The complaint couched the alleged violation in terms of an Title VII employment rights discrimination case as the Plaintiff was employed by the United States at the time of the incident. Neither

party alleges that debarment occurred as a result of any work place activity but the parties agree that the defacto result of the debarment was the loss of his employment at Fleet activities Yokosuka.

Plaintiff has not contacted defendant since attorney Ronald Maroni was permitted by this court to withdraw as a counsel for plaintiff. Defendant is unaware of any issues that plaintiff may bring as pro se plaintiff.

## II. FACTUAL BACKGROUND

At all times relevant to the matters, Plaintiff was employed by the United States Navy's Morale, Welfare and Recreation Department Fleet Activities, Yokosuka Naval Base Japan, as recreation aid assigned to the Thew Gymnasium. On or about January 1999, Commanding Officer, Captain James Wylie, United States Navy, Commander Fleet Activities Japan issued an order barring Edwards from Naval Base Yokosuka for two years. The basis of this order was a military base security (master at arms) investigation into an incident which occurred on 11 January 1999, wherein Plaintiff had been detained off-base by military shore-patrol. The detention off base was initiated when Mr. Edwards was observed with an open bottle of alcohol on the street in front of a local establishment. When confronted by shore patrol concerning the open container, which activity was in violation of Commander U.S. Naval Forces Japan (CNFJ) host tenant nation policy enacted as a result of heightened tensions caused by alcohol related

incidents between military personnel and host nation nationals, Plaintiff communicated a verbal threat towards the military shore-patrol officer. Plaintiff was detained and charged by military security forces with drunk and disorderly and communicating a threat. Plaintiff was retained in the custody of the United States military for violations of both United States regulatory violations and violations of Japanese law, in accordance with the bi-lateral treaty commonly known as the Status of Forces Agreement with Japan (SOFA). Plaintiff was never adjudicated by a Court for any offense because of the situs of the offense. The SOFA Agreement includes an agreement permitting the United States to handle misdemeanor offenses administratively as part of the foreign criminal jurisdiction agreement. Said Agreement covers both military and civilian employees working for the military in Japan. The SOFA provides among other things the authority for civilian U.S. nationals to be employed in Japan without the usual Japanese governmental approvals including work visas and are commonly known as SOFA status employees. Plaintiff employment status in Japan was pursuant to the SOFA agreement.

### A. <u>Appellant's Complaint Fails to State a Sufficient Claim As To Any as to Any Constitutional Deprivations.</u>

It is assumed from Plaintiff's complaint, that he alleges a Title VII Employment Discrimination action based upon his loss of his SOFA employment status as a result of the decision of the Commanding Officer. The loss of his

economic interests in his on-base employment, however does not provide Plaintiff with a different standard or higher standard of review than any other order of a commanding officer baring an individual from his installation. The United States need merely show a rational basis for the actions taken by the Commanding Officer.

Plaintiff has never cited an employment action cognizable under Title VII. Edwards alleges that he suffered from unlawful discrimination when the Assistant Security Officer, Master Chief Master at Arms Moore recommended permanent debarment from military installations in Japan. Said recommendation was not followed. In fact, Edwards was treated less harshly than individuals similarly situated. Edwards has not establish a prima facie case of disparate treatment. Edwards must establish that:

 a. he was a member of a protected class;

 b. He suffered an adverse employment action and;

 c. similarly situated employees were more favorably treated. <u>Rutherford v Harris County</u>, 197 F.3d 173, 184 (5th Cir. 1999). First, Edwards has failed to allege an adverse employment claim. The Title VII provision applicable to federal employees provides that " ...all <u>personnel actions</u> affecting employees .... shall be made free from any discrimination based upon race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16 (emphasis added). Title VII was designed to address ultimate employment decisions, not to address every decision made by

employers that arguably might have some tangible effect upon those ultimate decisions". *Dollis v Rubin,* 77 F.3d 777,781-782 (5TH Cir. 1995). Actionable adverse actions, to be cognizable under Title VII, must be shown to have more than a mere intangible effect on a possible employment decision. The Plaintiff admits that the actions that led to the debarment were not related to his employment. Plaintiff acknowledges that the administrative action to remove him from the base was not related to actions on the job, but were related to law enforcement and international treaty obligations of the United States. The allegations of discrimination by Master Chief Moore, as a law enforcement security officer in Yokosuka, Japan, had only an indirect affect on the employment decision of his employer, the United States Navy. Law enforcement related recommendations are not usually cognizable under Title VII unless the Plaintiff can show a clear connection between the action of and his employment. Plaintiff must show how the actions of Master Chief Moore directly affected the employment decisions of the United States. Plaintiff has never shown an employment action cognizable under Title VII.

**B. Commanding Officer Has Descretion To Bar Individuals From His Installation.**

It is "well recognized that the commander of a military installation has and must have the broad authority and discretion to summarily exclude persons therefrom" *Cafeteria Restaurant Workers Union v. McElroy,* 367 U.S. 886, 893

(1961); *United States v. Gourley*, 502 F.2d 785, 786-87 (10th Cir. 1973). The term "summarily" has been interpreted to mean there is no requirement for a hearing or even notice to the barred individual before taking such action. *Tokar v. Hearne*, 699 F.2d 753, 756 (5th Cir.), *cert. denied*, 464 U.S. 844 (1983); *United States v. Jelinski*, 411 F.2d 476, 477-78 (5th Cir.), *cert. denied*, 396 U.S. 943 (1969). This extensive authority is not diminished when the individual had previously been routinely permitted to enter the base to take advantage of shopping privileges, etc. *Tokar,* 699 F.2d at 756, relying on *Cafeteria Workers*, 367 U.S. 886.

In another case cited by plaintiff, *Tokar v. Hearne*, 699 F.2d 753 (5th Cir. 1983), the plaintiff tried to assert a "property interest" in her access privilege to the base from which she was barred. The Fifth Circuit affirmed that district court's denial of relief and in balancing the relative interests, found the government's interest overrode the plaintiff's lost opportunity to "save money" by using the base facilities. Likewise in *Medina v. United States*, 709 F.2d 104 (1st Cir. 1983), where the commander's barment action resulted in the loss of an base employment for the plaintiff, the interests of the government to control access were found to be weighty.

The Ninth Circuit has also reviewed the authority of a Commander to exclude individuals from his base. The court characterized the commander's power to bar as "the historically unquestioned power of a commander to exclude civilians from the area of his command." *United States v. Albertini*, 472 U.S. 675, 687, 105 S.Ct. 2897, 2905 (1985), citing *Cafeteria Workers*, 367 U.S. at 893, 81 S.Ct. at 1740. In the Ninth Circuit, review of a commander's decision to bar a civilian is extremely limited. *Bridges v. Davis*, 443 F.2d 1970 (9th Cir. 1971) (scope of review of a court is extremely limited regarding review of the discretion of the commander to exclude persons from his installation.) In the Ninth Circuit, the

- 7 -

Case 1:02-cv-00003   Document 34   Filed 07/18/2003   Page 7 of 12

*Cafeteria Workers* rule is not vague, but rather, very straight-forward and fundamentally clear. From the decision in *United States v. May*, 622 F.2d 1000, 1006 (9th Cir. 1980), <u>cert. denied, sub nom.</u>, the court stated that "the commanding officer of a military base has wide discretion as to whom he will exclude from the base, which will be disturbed only upon a showing that the grounds for exclusion were patently arbitrary and discriminatory." Again the Ninth Circuit in *United States v. Albertini*, 783 F.2d 1481, 1487 citing *United States v. May, supra.* stated: "The commander of Hickam Air Force Base, in the exercise of his unique control over the facility with which he was entrusted, was not required by due process to hold or give an opportunity for a hearing at the time he issued the bar letter to *Albertini*." It is clear that the Captain Wylie set forth nonarbitrary grounds as the basis for his bar order and therefore, is not subject to judicial review absent a clear showing by the plaintiff that Captain Wylie's actions were motivated by prejudice. The Tenth Circuit has also recognized that the "unique posture and ability of a commanding officer to comprehend internal threats to his command or to the loyalty and morale of his troops ...."" *Schneider v. Laird*, 453 F.2d 345, 347 (10th Cir. 1972). The recognition of this internal threat is of greater importance in foreign countries such as Japan, where the actions of individuals may be imputed to the United States affecting the foreign relations of the United States. Military officials need not first determine what actual harm may occur before imposing restrictions, including debarment from military installations when the actions can affect international relations.

    The Supreme Court has repeatedly recognized the authority of military commanders to enforce security and good order on their installations. Numerous cases have specifically upheld commanders' decisions to bar individuals from their respective installations, *Weissman*, 387 F.2d at 271; *Gourley*, 502 F.2d 785; *Schneider*, 453 F.2d at 347; *Brown*, 944 F.2d 732; *Greer*, 424 U.S. at 838;

Case 1:02-cv-00003  Document 34  Filed 07/18/2003  Page 8 of 12

*Cafeteria Workers*, 367 U.S. at 895; *Secretary of the Navy v. Huff*, 444 U.S. 453 (1980); *United States v. Albertini*, 472 U.S. 675, 687 (1985).

Specific statutory and regulatory provisions also support a commander's broad authority to regulate access to a base. For example, 18 U.S.C. § 1382 criminalizes unauthorized entry of an installation. Also each commander is authorized to grant or deny access to his installations, and to exclude or remove persons whose presence is unauthorized. In excluding or removing persons from the installation [however], he must not act in an arbitrary or capricious manner." 32 C.F.R. § 809a.1(b). Furthermore, Department of Defense Directive 5200.8, *Security of Military Installations and Resources*, ¶3.2.2, similarly states that an installation commander has the authority to "remov[e] from, or ... den[y] access to ... an installation or site ... individuals who threaten the orderly administration of the installation or site.

### C. The Commanding Officer's actions were based upon workplace safety factors.

The material facts demonstrate that the U.S. Navy lacked any discriminatory motive and acted out of a legitimate concern for the workplace environment and the safety of its employees. The Commanding Officer was presented with an allegation that Edwards was drunk and disorderly and threatened a security officer. Edwards admitted such in the formal EEO hearing but argued that debarment from the base was too severe a penalty. The Commanding Officer was aware of other altercations with law enforcement personnel by Edwards as the result of a security screening to determine fitness for employment at the military installations in Japan. The commanding officer was faced with an employee that had consistently engaged in a pattern of offensive behavior. Based on these facts, and consistent with military policy, Edwards was barred from entry onto the installation for a period of two years based upon the incident.

The undisputed material facts that were establish during the administrative record indicate that the U.S. NAVY had a legitimate nondiscriminatory reason for its actions. *See Armfeild v. Runyon*, 902 F.Supp. 823, 826-27 (N.D. Ill. 1995). As such, Edwards must come forward with probative evidence establishing that the U.S. Navy's proffered reasons for the order prohibiting him from entering the base are false. Further he must establish a causal link demonstrating that discrimination was a motivating factor in the Commanding Officers action to debar him from the base for two years. It is interesting to note that the recommendation of the security officer was not implemented by the Commanding Officer. Master Chief Moore had recommended a permanent debarment based upon the record of Mr. Edwards which recommendation was not followed. Instead the Commanding Officer, executing his discretion, barred Mr. Edwards from entering the base for only two years.

**D. Edwards Can Not Present Any Evidence To Demonstrate Pretext.**

Edwards must prove that the reasons offered by the U.S. Navy, the off-base altercation, was a pretext for discrimination. The stated reason does not necessarily concern the correctness or desirability for the Commanding Officer's decisions, rather, it only concerns the issue of whether the Commanding Officer, and hence the U.S. Navy, honestly believes in the reason it offers. *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). EEO actions brought are not intended to limit the traditional authority of a base commander in determining who may have access to his installation -- they are only intended to prohibit deliberate discrimination in the employment process, or in personnel actions, within the commanding officer's discretionary authority as an employer. Here the action was not taken as an employer but as the Commanding Officer, the responsible party for good order and discipline upon his military

installation. It is not the province of courts to second-guess the military commanders judgment where he acted on ample legitimate justification. The security police report provided an ample basis for the Commanding Officer's decision, nothing more need be shown by the Government.

Edwards can not prove that the U. S. Navy's proffered reasons are false establishing any type of pre-text allegation, further, he can not establish any causal link demonstrating the allegations of discriminatory motive by Master Chief Moore with the actions of the Commanding Officer. *See Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997). The defendant alleges discrimination by the Master Chief Petty Officer Moore, the security officer. Master Chief Moore is not in a position of authority nor did he have any decision making authority under Navy regulations or the SOFA. In fact Captain Wylie disregarded the recommendations of Master Chief Moore on two occasions dealing with Edwards. Captain Wylie, U.S.N. disregarded the recommendation of Master Chief Moore in 1998 concerning his security clearance recommendation for employment on the base and agin in 1999 for disciplinary action in regards to the off-base altercation. In both cases the Commanding Officer exercised his authority to reduce recommended actions in favor of Mr Edwards.

Edwards only alleges that his offense of drunk and disorderly conduct was disproportionately punished by the two year debarment order. However, similar offenses resulted in 17 separate debarments for other individuals of all races and most were of a permanent debarment duration. (Plaintiff's complaint attachment 2).

//
//
//

Defendant is unaware of any evidentiary issues.  Defendant has not abandon any issues contained in Defendant's previous pleadings.  Defendant has not claimed attorney's fees in this matter.

Respectfully submitted,

LEONARDO M. RAPADAS
United States Attorney

BY: *Edward J Lynch*
EDWARD J. LYNCH
Special Assistant U.S. Attorney